UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JANE DOE, a minor, by and through her
mother and next friend, MOTHER DOE,

        CASE NO.: 1:23-cv-23004-JB

    Plaintiff,

    v.

ACADEMIR CHARTER SCHOOLS, INC.,
and SUPERIOR CHARTER SCHOOL
SERVICES, INC.,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND FOR SANCTIONS**

Plaintiff, JANE DOE ("Plaintiff" and/or "Jane"), by and through her undersigned counsel, respectfully submits her Motion for Default Judgment and for Sanctions against Defendants, ACADEMIR CHARTER SCHOOLS, INC. ("Defendant Academir") and SUPERIOR CHARTER SCHOOL SERVICES, INC. ("Defendant Superior") (collectively, "Defendants"), and in support states as follows:

**INTRODUCTION**

Plaintiff brings this motion to hold Defendants accountable for their egregious misconduct and attempts to defraud both the Plaintiff and this Court, which have undermined the integrity of these proceedings and materially obstructed the adjudication of Plaintiff's claims. Defendants have engaged in a persistent pattern of deceit and obstruction, including fabricating and falsifying evidence critical to Plaintiff's claims, committing perjury in depositions and sworn declarations, and making misrepresentations in discovery responses intended to mislead the Plaintiff and the Court.

1

Defendant's misconduct is further compounded given the serious nature of Plaintiff's claims and the abuse she experienced at the hands of the Defendants. Specifically, Plaintiff in this action is a minor child who is seeking damages under Title IX of the Education Amendments of 1972 ("Title IX") and Florida law for the sexual assault she suffered at her school at the age of five years old due to Defendants' negligent and unlawful conduct. As outlined in further detail below, there is clear and convincing evidence of Defendants' scheme to defraud the Plaintiff and this Court by engaging in abusive litigation practices intended to advance their position in the case.

## STATEMENT OF FACTS

1. On or about November 6, 2023, Plaintiff served her first set of discovery requests to Defendants. After conferring on Defendants' initial discovery responses, Defendants served their amended discovery responses to Plaintiff on January 22, 2024. *See* Exh. A through Exh. D.[1]

2. In response to Plaintiff's requests for production, Defendants agreed to produce all Title IX and sexual harassment policies and procedures in place during Plaintiff's enrollment. Defendants' interrogatory responses identified applicable policies by name, including Miami-Dade County School Board policies, the Charter School Management Agreement, and training by ADP, among others. *See* Exh. A at pp. 8-9; Exh. C at pp. 8-9.

3. Plaintiff's interrogatories asked Defendants to identify any changes made to their Title IX or sexual harassment policies within the past five (5) years and in response, both Defendants answered "None." *See* Exh. A at p. 9; Exh. C at p. 9.

4. Notably absent from Defendants' responses was any mention of dedicated Title IX or sexual harassment policies specific to either Defendant. Plaintiff, in good faith, believed the Defendants' representations and relied on them in litigating the case.

---

[1] Some of Plaintiff's exhibits filed in support of this motion have been redacted or limited to excerpts to protect the identity of Jane Doe.

5.     On May 8, 2024, Plaintiff deposed Defendant Superior's Rule 30(b)(6) corporate representative and Chief Executive Officer, Rolando Mir. Despite being designated as Defendant Superior's representative, during his deposition, Mr. Mir stated that he did not know whether Defendant Superior had Title IX policies, or whether Defendant Superior administered any Title IX training to its employees. *See* Exh. E at 34:23-35:12, 37:19-24.

6.     Mr. Mir repeatedly referenced Olivia Bernal as handling legal compliance for Defendant Superior and testified that Ms. Bernal would have knowledge of any such Title IX or sexual harassment policies. *See id*. at 25:3-13, 37:19-38:3. Even counsel for Defendant Academir deferred to Ms. Bernal's knowledge regarding Title IX policies. *See id.* at 40:2-18.

7.     On May 9, 2024, Plaintiff deposed Defendant Academir's Rule 30(b)(6) representative, Olivia Bernal. Ms. Bernal simultaneously serves as the Chief Operating Officer for both Defendant Academir and Defendant Superior. *See* Exh. F at 20:24-21:21.

8.     During her deposition, Ms. Bernal asserted that the Defendants had Title IX policies and procedures in place unique to the school and separate from Miami-Dade County School Board policies, information that had somehow never surfaced until the day of her deposition. *See id*. at 42:8-14; 47:2-19.

9.     Defendants had not previously disclosed the existence of any school sexual harassment or Title IX policies and, in fact, explicitly denied the existence of such policies through its verified discovery responses, which directly contradicted Ms. Bernal's testimony.

10.    Defendants led Plaintiff to believe these sexual harassment and Title IX policies did not exist for nearly six (6) months, only for Defendants to disclose their purported existence for the first time during Ms. Bernal's deposition.

11. During her deposition, Ms. Bernal described these Title IX policies as being found within a broader policy document titled "Fiscal Policies and Procedures." *Id*. at 46:9-23. Ms. Bernal claimed these documents were kept within compliance binders in the offices of each respective school campus principal. *See id*. at 45:13-25, 46:9-23.

12. Ms. Bernal could not recall when these policies were created, who created them, or any details about their origin, casting serious doubt on their authenticity. *See id.* at 51:6-16.

13. Despite knowing nothing about the origin of the documents, when asked about revisions that have been made to the policies, Ms. Bernal testified that the policy documents were last edited in August of 2022 by herself, Xenia Mir, and Esther Mir. *See id.* at 50:12-15, 52:7-24. This testimony also plainly contradicted the verified interrogatory responses provided by the Defendants, which stated no revisions had been made to any such policies within the past five years.

14. At one point during Ms. Bernal's deposition, she appeared to be reading from a document while describing the Defendants' Title IX procedures. When Plaintiff's counsel asked what she was reading from, Ms. Bernal initially testified that she was reading her notes, only to state just moments later that she was actually reading from the Defendants' Fiscal Policies and Procedures document referenced earlier. *See id*. at 68:22-69:24.

15. Astonishingly, when Plaintiffs' counsel asked Ms. Bernal to show the document that she was reading to her videoconferencing camera, Ms. Bernal revealed neither her own notes nor Defendants' Fiscal Policies and Procedures, but rather the Miami-Dade County Public Schools Title IX Manual, making it evident that Ms. Bernal had been reading Miami-Dade County policies and attempting to pass them off as Defendants' policies. This meant that Ms. Bernal had blatantly

4

lied under oath when Plaintiff's counsel previously asked Ms. Bernal what document she was reading from. *See id.* at 71:23-72:19.

16. Ms. Bernal further testified that she had conducted at least five (5) Title IX investigations in her role and even stated she conducted one roughly six months prior involving sexual allegations with a first-grade student. Again, Defendants failed to disclose any of these investigations in its discovery responses, failed to provide any of the documents pertaining to the investigations, and explicitly denied their existence. *See id.* at 124:20-125:9, 126:24-127:16).

17. After the conclusion of Ms. Bernal's deposition, Plaintiff requested that Defendants produce the Title IX policy documents if they indeed existed. Rather than attempt to remedy or correct Ms. Bernal's false testimony, the Defendants doubled down on the misconduct and claimed the documents would not be available until the following week because the documents needed to be scanned by campus personnel.

18. On or around May 13, 2024, Defendants provided a .pdf file titled "Title IX Policies and Procedures: Sex-Based Discrimination and Sexual Harassment Handbook" (marked as Exhibit G), which included comprehensive Title IX and sexual harassment procedures never before disclosed.

19. Upon a review of the .pdf document properties, the metadata appeared to show that the document was created using Microsoft Word for Microsoft 365 on Friday, May 10, 2024, at 10:38 PM, just one day after Ms. Bernal's deposition, which raised serious questions about the document's authenticity.

20. The document was also inconsistent with Ms. Bernal's testimony, as it (1) was not scanned as Defendants had described and was instead created in electronic format using Microsoft Word, and (2) contained a functional link to an online Title IX reporting form, a feature that Ms.

5

Bernal explicitly testified Defendants had not yet implemented and was merely a plan Defendants hoped to implement later within the year. *See* Exh. F at 52:25-54:6.

21. Plaintiff's counsel brought these concerns regarding the authenticity and creation of the documents to the attention of Defendants' counsel, again presenting the Defendants with an opportunity to correct their conduct. Defendants failed to provide any meaningful explanation as to why the Title IX policies had not been disclosed or produced in discovery, nor a justification for the glaring inconsistencies in the sworn testimony.

22. Plaintiff also requested that Defendants provide the original electronic files for the Title IX policies for further verification of the documents.

23. In response, on or around May 16, 2024, Defendants did not produce the original electronic files of the Title IX policy documents and instead produced scanned copies of several ancillary documents, such as a copy of an email discussing the online Title IX complaint form and a copy of the Title IX complaint form.

24. All of the documents appeared to be printed and scanned, which incidentally caused the files to lack critical metadata and, therefore, rendered them impossible to authenticate.

25. Among these documents was a .pdf document titled "Electronic Manual File Metadata Creation and Modification" (marked as Exhibit H). This document contains suspicious screenshot images of document metadata pertaining to a Microsoft Word (.docx) file, which purports to show a document creation date of August 2022. *See* Exh. H at pp. 1-2. The Defendants represented this metadata as being from the Title IX manual document at issue and used the metadata to corroborate their claims regarding the document's legitimacy and creation date.

26. However, the Defendants' production of screenshot images rather than the original electronic file, was highly unusual and heightened Plaintiff's concerns regarding possible tampering.

27. In light of the late production of the documents and the concerns regarding their authenticity, Plaintiff requested that Defendants sign declarations affirming the authenticity and completeness of the Title IX documents.

28. Again, Defendants were presented an opportunity to correct their false representations and chose instead to re-affirm the accuracy and authenticity of the newly-produced documents under oath in a sworn declaration.

29. Defendants signed a declaration that stated, in relevant part, that "I affirm that all produced documents are accurate and complete and that no documents have been altered, backdated, or otherwise manipulated in any way that would misrepresent their authenticity or the timeline of their creation and modification." Exh. J; Exh. K.

30. In an abundance of caution, Plaintiff also requested that the Defendants produce the original electronic files and accompanying metadata for all versions of the Title IX manual document(s) to examine the document properties contained within the files.

31. On or around June 7, 2024, the Defendants produced additional .docx files of the Title IX manual documents. In the message providing the electronic files, Defendants' counsel stated that:

> "To help ameliorate any concerns, our client has also provided the screenshots attached with the metadata they could access on their system. As you will see, the original was created in 2022----not the dates incidental to the deposition. I was not present at the depositions, but my understanding is that Academir/Superior built off the original created in 2022 when making the 2023-2024 version."

Exh. L.

32. After reviewing the newly produced .docx electronic file document properties and the document properties shown in the metadata images produced by Defendants, it appeared to Plaintiff that there were discrepancies between the two documents in characteristics such as word count, character count, paragraph count, and line count. Plaintiff's suspicion was that the Defendants may have taken an unrelated document created in 2022, renamed the document title to the Title IX manual file name, and then taken screenshots of the metadata to mislead Plaintiff and the Court into believing Defendants' false claims.

33. Shortly thereafter, Plaintiff retained Jim Stafford, a highly trained forensic expert, to analyze the documents produced.

34. Mr. Stafford conducted his examination and created a report attached hereto as Exhibit M. Mr. Stafford concluded that, other than the page count field, the images of metadata produced by Defendants purporting to represent the Title IX manual did not match any of the metadata contained in the Defendants' Title IX policies. Further, Mr. Stafford concluded that none of the electronic files indicated a creation date prior to May 9, 2024, the date of Ms. Bernal's 30(b)(6) deposition.

35. Mr. Stafford's report confirmed Plaintiff's suspicions that (1) Defendants recently created the "Title IX Policies and Procedures: Sex-Based Discrimination and Sexual Harassment Handbook" document and the supporting electronic files in May of 2024; (2) Defendants had backdated and misrepresented the Title IX policy documents to make it seem as if the Defendants had Title IX policies in effect at the item of Plaintiff's enrollment; and (3) Defendants manufactured both electronic files titled "Original Electronic Manual File Metadata Creation and Modification.pdf" and "Document Properties.docx" and used the doctored evidence to mislead the Plaintiff and the Court into believing that the metadata set forth therein pertained to the document

titled "Title IX Policies and Procedures: Sex-Based Discrimination and Sexual Harassment Handbook," a claim that is demonstrably false.

36. Ultimately, Defendants fabricated and misrepresented several pieces of crucial evidence that were produced to Plaintiff, and doubled-down on the authenticity of those documents, despite knowing that the documents had been manipulated and that Plaintiff would be misled as a result.

## **LEGAL STANDARD**

The Court has "an inherent power to regulate litigation and sanction the parties, as well as their counsel, for abusive practices." *BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19-CV-60505, 2021 U.S. Dist. LEXIS 36562, at *14 (S.D. Fla. Feb. 25, 2021). This includes the inherent power to sanction a party for perpetuating a fraud upon the Court. *See Gyasi v. M/V "Andre,"* No. 0723282-CIV, 2008 U.S. Dist. LEXIS 3380, at *6 (S.D. Fla. Jan. 16, 2008). "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

"Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224-25 (11th Cir. 2017). "When ordering a sanction of default judgment, the Court should find by clear and convincing evidence that (1) a defendant acted in bad faith, (2) the plaintiff was prejudiced by this conduct, and (3) lesser

9

sanctions would not adequately serve the goals of punishment and deterrence." *Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1295 (S.D. Fla. 2015).

"Sanctions based upon a court's inherent power, including dismissal, are most often invoked where a party commits perjury or destroys or doctors evidence." *Oniha v. Delta Airlines*, No. 1:19-cv-05272, 2021 U.S. Dist. LEXIS 205141, at *11 (N.D. Ga. Sep. 13, 2021) (quoting *Access Innovators, LLC v. Usha Martin, LLC*, No. 1:09-cv-2893-TCB, 2010 U.S. Dist. LEXIS 152303, at *1 (N.D. Ga. Apr. 28, 2010)) (cleaned up). "Submitting a false discovery document—or fabricating evidence—has been referred to as 'the most egregious misconduct which justifies a finding of fraud upon the Court.'" *Salgam v. Advanced Software Sys.*, Civil Action No. 1:18-cv-00029, 2020 U.S. Dist. LEXIS 205360, at *10-11 (E.D. Va. July 2, 2020) (quoting *Davis v. Crescent Elec. Co.*, No. CIV 12-5008, 2016 U.S. Dist. LEXIS 53241, 2016 WL 1625291, at *3 (D. S.D. Apr. 21, 2016)).

## MEMORANDUM OF LAW

### I. Defendants Have Engaged in a Pattern of Egregious Misconduct and Defrauded the Court

"Fabricating evidence and willfully providing false answers during discovery are without doubt abusive litigation practices that justify the sanction of dismissal with prejudice." *Kenno v. Colorado's Governor's Office of Info. Tech.*, Civil Action No. 19-cv-00165-MEH, 2021 U.S. Dist. LEXIS 121893, at *55 (D. Colo. June 30, 2021) (quoting *Archibeque v. Atchison, T. & S.F. Ry.*, 70 F.3d 1172 (10th Cir. 1995)). As described herein, the Defendants in this case have engaged in these same abusive litigation practices and engaged in a scheme to defraud Plaintiff and the Court.

The Defendants' actions throughout this litigation have demonstrated a flagrant disregard for the judicial process and a deliberate attempt to deceive both the Plaintiff and the Court. From perjury during depositions and in sworn declarations, to the production of falsified documents, the

Defendants have engaged in a consistent pattern of egregious misconduct designed to obstruct justice and prejudice the Plaintiff. For the reasons described further herein, Plaintiff respectfully requests that Defendants be sanctioned.

### A. **Defendants Committed Perjury in Depositions and Sworn Declarations**

Defendants have provided materially false statements throughout the course of this action and withheld critical information and documents, including (1) providing false testimony during the depositions of the Defendants' Rule 30(b)(6) corporate representatives, Rolando Mir and Olivia Bernal, (2) providing several false statements in verified discovery responses, (3) failing to disclose critical documents and denying their existence for nearly six months, and (4) providing false statements in sworn declarations. The Defendants' false and misleading actions were calculated to mislead the Plaintiff and the Court, and have meaningfully prejudiced the Plaintiff in the pursuit of her claims.

During the deposition of Olivia Bernal, Defendant Academir's corporate representative, Defendant Academir repeatedly perjured itself. Ms. Bernal claimed that Defendants had Title IX policies and procedures separate and distinct from those of Miami-Dade County Public Schools. This statement was later proven to be false, despite Defendants' efforts to manufacture evidence to support Ms. Bernal's claim. Ms. Bernal read from a document during her deposition and claimed that she was reading from her notes, then just moments later, that she was reading from Defendants' Title IX policies. Both of these statements were revealed to be false in her deposition. Ms. Bernal also claimed that Defendants' Title IX policies were part of a broader policy document titled "Fiscal Policies and Procedures," which was also not true. Each of these statements were materially false and were made under oath.

11

These statements also indicated that Defendants' initial discovery responses were false and perjurious as well. Defendants' discovery responses failed to identify any Title IX policies beyond Miami-Dade County School Board policies and denied making any revisions to Title IX policies within the past five (5) years. Defendants swore to the accuracy of these responses under oath, only to blatantly contradict the statements and allege an alternative set of facts nearly six (6) months later, in which Defendants had comprehensive Title IX policies that were regularly revised by Defendants' corporate officers, including Ms. Bernal.

As if these misrepresentations were not enough, Defendants also signed sworn declarations affirming the authenticity of the produced documents relating to Title IX and certifying that no backdating or manipulation had taken place. Defendants signed these declarations, falsely asserting under oath that all produced documents were accurate, complete, and unaltered. These declarations were intended to mislead the Plaintiff and the Court and were aimed at concealing the truth about the fabricated Title IX policies. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (confirming district court's entry of default judgment against defendant who committed perjury during depositions, even though defendant clarified the statements under questioning by the district judge before trial started).

### B. **Defendants Fabricated and Falsified Evidence During Discovery**

In addition to perjurious testimony, the Defendants produced fabricated documents during discovery in an attempt to legitimize their false claims. The Defendants created the document titled "Title IX Policies and Procedures: Sex-Based Discrimination and Sexual Harassment Handbook" following Ms. Bernal's deposition and backdated the document to make it seem as if the Defendants had Title IX policies in effect at the time of Plaintiff's enrollment. The Defendants have failed to provide a meaningful explanation for this late and prejudicial disclosure, their false

statements in discovery responses, or why the document itself was inconsistent with Ms. Bernal's description. This misconduct was furthered by the Defendants' falsification and backdating of their purported Title IX policies and their manufacturing of document metadata in an attempt to mislead Plaintiff and the Court.

The forensic analysis conducted by Plaintiff's expert witness, Jim Stafford, corroborates the fabrication and manipulation of the documents produced by Defendants. Mr. Stafford determined that none of the Title IX documents produced by Defendants had evidence of being created prior to May of 2024. Mr. Stafford also analyzed two files produced by Defendants, a .pdf file titled "Electronic Manual File Metadata Creation and Modification" and a .docx titled "Document Properties." Both documents contained images of metadata that Defendants claimed was from the Title IX policies manual and included a creation date of August 2022. However, Mr. Stafford's analysis and report demonstrated that these metadata screenshots did not correspond to a single one of the files produced by the Defendants. For instance, the electronic file for the Defendants' Title IX policies manual, which was titled "TITLE IX POLICIES AND PROCEDURES,docx," listed different counts for lines, paragraphs, words, and characters compared to the screenshotted metadata provided by Defendants. This discrepancy alone unequivocally establishes that the Defendants falsified or manufactured the document properties as part of a calculated effort to legitimize the Title IX policies manual and mislead both the Plaintiff and the Court.

Although Plaintiff cannot say with certainty the manner in which the Defendants manipulated or manufactured the aforementioned documents, this information is not necessary to sanction the Defendants for their fabrication. In *Pope*, the defendant in a sexual harassment case moved to sanction the plaintiff because the plaintiff fabricated a handwritten note, which she had

13

alleged the defendant wrote. *Pope v. F. Express Corp.*, 138 F.R.D. 675, 677 (W.D. Mo. 1990), *aff'd in relevant part*, 974 F.2d 982 (8th Cir. 1992). Although it was not evident who wrote the note or how it was manufactured, the Court nonetheless found sufficient evidence to warrant sanctions because "[c]lear and convincing evidence has been presented that plaintiff knowingly advanced a document which she knew was not what she represented it to be." *Id.* at 683. Similarly, here, there is clear and convincing evidence that the Defendants advanced documents and knowingly misrepresented them in an attempt to defraud Plaintiff and the Court.

Based on the forensic analysis and the significant discrepancies identified, there is clear and convincing proof that the Defendants have fabricated and manipulated evidence to falsely claim that the Title IX policies existed since August 2022. The deliberate creation and submission of falsified documents and metadata alone constitutes egregious misconduct and warrants severe sanctions.

## II. Defendants' Intentional Deception and Bad Faith Conduct Has Prejudiced Plaintiff

The Defendants have engaged in a deliberate pattern of misconduct more than sufficient to meet the bad faith standard necessary to invoke the Court's inherent authority. Defendants' misconduct includes perjury, the production of falsified evidence, and the signing of misleading declarations. "In determining whether a party acted in bad faith, a court should primarily assess the 'conduct and motive of a party.'" *Mabinty Aluko v. Carnival Corp.*, No. 1:20-cv-21047, 2021 U.S. Dist. LEXIS 255714, at *35 (S.D. Fla. July 19, 2021) (quoting *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006)). In assessing the Defendants' conduct, it is evident that the Defendants had a motive to manipulate the record evidence in their favor by making it seem as if they had taken proper measures to protect students like Jane in the form of Title IX policies. This

conduct has been specifically designed to prejudice the Plaintiff in pursuing her claims and has compromised her ability to litigate the case fairly.

"The submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation. The prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009); *see also McDowell v. Seaboard Farms*, No. 95-609-CIV-ORL-19, 1996 U.S. Dist. LEXIS 19558, at *5 (M.D. Fla. Nov. 4, 1996) (finding bad faith based on the plaintiff's fabrication of a diary and his subsequent testimony regarding the alleged authenticity of the diary)).

The prejudice experienced by Plaintiff is only amplified by the significance of the fabricated documents and false statements in the case. "'Federal courts have held that the need for sanctions is heightened when the misconduct relates to the pivotal or linchpin issue in the case' and that such a nexus 'militates heavily in favor of the severe sanction of default.'" *See Access Innovators, LLC v. Usha Martin, LLC*, No. 1:09-cv-2893, 2010 U.S. Dist. LEXIS 152303, at *9 (N.D. Ga. Apr. 28, 2010) (quoting *Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007)).

Not only do the Title IX and sexual harassment policies determine whether the Defendants complied with federal Title IX guidelines generally, but they also significantly impact the Defendants' handling of Plaintiff's sexual assault allegations, i.e., whether the Defendants deviated from their complaint and investigation procedure under Title IX or whether there were any procedures in place at all. The Defendants' use of this evidence to support their claimed defenses

and put themselves in a more favorable position constitutes a recognized form of fraud on the Court. *See, e.g.*, *Andreus v. Glob. Resorts Grp.*, Corp., No. 19-cv-23993, 2020 U.S. Dist. LEXIS 66103, at *8 (S.D. Fla. Apr. 14, 2020) (describing a party's use of fabricated evidence to support its claims as the key distinguishing fact that causes conduct to be deemed a fraud on the court).

Even if Defendants were truthful and did indeed have the purported Title IX policy documents in their possession, this would nonetheless constitute severe discovery misconduct, as Defendants did not produce critical documentary evidence and made false statements under oath regarding the existence of the documents in Defendants' discovery responses. *See Qantum Communs. Corp. v. Star Broad.*, Inc., 473 F. Supp. 2d 1249, 1277 (S.D. Fla. 2007) (finding that a defendant engaged in bad faith conduct sufficient to warrant default judgment where the defendant committed perjury in his deposition and failed to disclose key documents in response to discovery requests); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1049 (8th Cir. 1991) (finding dismissal as a sanction was warranted where a plaintiff repeatedly concealed a material fact by making false statements in depositions and in pleadings).

### III. Defendants' Actions Warrant Severe Sanctions and the Entry of Default Judgment is Necessary to Properly Address Defendants' Misconduct

The Defendants' intentional deception and bad faith conduct throughout this litigation require severe sanctions to properly address the prejudice and harm caused to the Plaintiff and to uphold the integrity of the judicial process. The Defendants' actions go beyond mere negligence and reflect a calculated effort to obstruct justice and mislead both the Plaintiff and the Court. The seriousness of the Defendants' actions warrants the entry of a default judgment to appropriately sanction their behavior, as no lesser sanction can adequately deter future misconduct by Defendants.

"[C]ourts routinely find monetary fines to be insufficient when a party engages in misconduct as severe as doctoring or destroying evidence." *Oniha v. Delta Airlines*, No. 1:19-cv-05272, 2021 U.S. Dist. LEXIS 205141, at *20 (N.D. Ga. Sep. 13, 2021) (citations omitted). The need for significant sanctions is heightened even further when a party uses the evidence to advance its position in litigation. *Vargas v. Peltz*, 901 F. Supp. 1572, 1582 (S.D. Fla. 1995) (finding that case-ending sanctions are especially appropriate "where a party manufactures evidence which purports to corroborate its substantive claims").

"When a party fabricates a document or provides false evidence relating to a key issue in a case, courts have made clear that the appropriate sanction is the ultimate sanction of dismissal." *Access Innovators, LLC v. Usha Martin, LLC*, No. 1:09-cv-2893, 2010 U.S. Dist. LEXIS 152303, at *9 (N.D. Ga. Apr. 28, 2010). Otherwise, "[t]o permit the fabrication of spurious corroborating evidence without the imposition of a harsh responsive sanction would constitute an open invitation to abuse of the judicial system of the most egregious kind." *Asia Pac. Agric. & Forestry Co. v. Sester Farms, Inc.*, No. 3:12-CV-936, 2013 U.S. Dist. LEXIS 125988, at *27 (D. Or. July 1, 2013).

Given the egregious nature of the Defendants' actions, the entry of a default judgment is the only appropriate sanction to address the harm caused and to deter similar misconduct in the future. The Defendants' actions have already interfered with Plaintiff's ability to litigate her claims, as the Defendants' falsification of evidence reasonably calls into question the veracity of all previous information and documents put forth by Defendants. Issuing a lesser sanction, such as monetary sanctions alone or the preclusion of the introduction of evidence, would incentivize parties like the Defendants to engage in this egregious misconduct. *See Stonecreek-AAA, LLC v. Wells Fargo Bank N.A.*, No. 1:12-cv-23850, 2014 U.S. Dist. LEXIS 189048, at *10 (S.D. Fla. May 13, 2014) (finding that striking fabricated evidence as a sanction and allowing the case to continue

was inadequate and "would send a dangerous message to attorneys and parties"). Defendants cannot reasonably be permitted to commit a fraud upon the Court and simply proceed in the case unaffected. A default judgment will uphold the integrity of the judicial process and ensure Plaintiff is not subject to further prejudice.

Should the Court not be inclined to enter a default judgment against the Defendants, Plaintiff requests that the Court sanction the Defendants by (1) instructing the jury regarding Defendants' attempt to fabricate favorable evidence and to consider the misconduct in evaluating Defendants' credibility, (2) precluding Defendants from entering any of the Title IX or sexual harassment policies into evidence or using the policies at trial, and (3) entering an award of attorney's fees and costs incurred in addressing the Defendants' misconduct. *See Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1301–1302 (S.D. Fla. 2007) (sanctioning a party by instructing the jury on the party's spoliation and procurement of false evidence and its impact on the party's credibility).

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court impose the following sanctions against the Defendants:

   a. entering a default judgment against the Defendants;

   b. awarding attorney's fees and costs to the Plaintiff incurred in addressing the conduct herein;

   c. instructing the jury that the Defendants fabricated documents and that the jury should consider the Defendants' misconduct in evaluating the Defendants' credibility;

   d. precluding Defendants from entering any of the Title IX or sexual harassment policies into evidence or using the policies at trial; and

e.  granting Plaintiff any other relief that the Court deem just and proper.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for the Plaintiff has conferred with counsel for the Defendants in a good faith effort to resolve the issues raised by this motion and has been unable to do so.

Dated:  Miami, Florida  
        July 2, 2024,

**DEREK SMITH LAW GROUP, PLLC**  
*Counsel for Plaintiff*

*/s/ Kyle T. MacDonald*  
Kyle T. MacDonald, Esq.  
Florida Bar No.: 1038749  
Derek Smith Law Group, PLLC  
520 Brickell Key Drive, Suite O-301  
Miami, FL 33131  
Tel: (305) 946-1884  
Fax: (305) 503-6741  
Kyle@dereksmithlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on July 2, 2024, on all counsel of record identified on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

**SERVICE LIST**

**FREEMAN MATHIS & GARY, LLP**

Christopher T. Lawson, Esq.
Florida Bar No.: 1025196
Julie B. Karron, Esq.
Florida Bar No.: 14683
FREEMAN MATHIS & GARY, LLP
2502 N. Rocky Point Drive, Suite 550
Tampa, Florida 33607
Tel: (813) 774-6363
Fax: (833) 330-0369
julie.karron@fmglaw.com
chris.lawson@fmglaw.com

*Counsel for Defendant Academir Charter Schools, Inc.*

**GARRISON, YOUNT, FORTE & MULCAHY, LLC**

Scott P. Yount, Esq.
Florida Bar No.: 0021352
GARRISON, YOUNT, FORTE & MULCAHY, LLC
601 Bayshore Blvd., Suite 800
Tampa, Florida 33606
Phone: 813-275-0404
Fax: 813-275-0304

*Counsel for Defendant Superior Charter School Services, Inc.*