UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JANE DOE, a minor, by and through her
mother and next friend, MOTHER DOE,

          Plaintiff,

v.

ACADEMIR CHARTER SCHOOLS, INC.,
and SUPERIOR CHARTER SCHOOL
SERVICES, INC.,

          Defendants.
_____/

CASE NO.: 1:23-cv-23004-JB

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AND FOR SANCTIONS

Plaintiff, JANE DOE ("Plaintiff" and/or "Jane"), by and through her undersigned counsel, respectfully submits this Reply in Support of her Motion for Default Judgment and for Sanctions against Defendants, ACADEMIR CHARTER SCHOOLS, INC. ("Defendant Academir") and SUPERIOR CHARTER SCHOOL SERVICES, INC. ("Defendant Superior") (collectively, "Defendants"), and states as follows:

### INTRODUCTION

Defendants' Response [D.E. 41] fails to controvert the substantial evidence of document fabrication and misconduct raised by Plaintiff's Motion for Default Judgment and for Sanctions and fails to address multiple instances of sanctionable conduct entirely. Instead, Defendants try to muddy the waters and obfuscate the issues before the Court by introducing a litany of issues not relevant to Defendants' fabrication of evidence and their attempts to perpetrate a fraud on Plaintiff and the Court. To the extent Defendants address the pertinent issues at all, they attempt to refute Plaintiff's expert report by reiterating the deposition testimony of their own employees and offering a single conclusory declaration from an unknown lay witness—neither of which

1

meaningfully controvert the clear and convincing evidence of fraud and misconduct outlined in Plaintiff's Motion.

As described in further detail herein, the deficiencies contained in Defendants' Response include: (1) failing to rebut or even address the forensic evidence of document falsification, including the significant discrepancies in the file size, character counts, line counts, and other metadata characteristics of the Title IX documents clearly outlined in Plaintiff's expert witness report; (2) failing to reasonably justify their misconduct in neglecting to disclose or produce the purported Title IX policy documents for more than six (6) months, concealing information material to Plaintiff's claims, and providing false statements under oath; and (3) failing to offer sufficient evidence to support their positions, such as an expert witness report to rebut the Plaintiff's forensic analysis or sworn declarations from Defendants' or their counsel to corroborate their claims. For these reasons and those set forth below, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Default Judgment and for Sanctions.

## ARGUMENT

### I. Defendants Have Failed to Disprove the Substantial Evidence of Document Fabrication and to Address Key Instances of Misconduct

#### A. Defendants Have Failed to Rebut Plaintiff's Forensic Evidence

Defendants' Response ("Defs.' Resp.") fails to meaningfully address the most pertinent issues before the Court and leaves Plaintiff's evidence of egregious misconduct uncontroverted. The most damaging example of this is the Defendants' unconvincing attempt to misconstrue the forensic evidence of the Defendants' falsification of documents. Defendants contend that Mr. Stafford, Plaintiff's expert witness, "bases his conclusions on his review of the Metadata of the documents which accurately shows that the PDF document was created recently." Defs.' Resp., p. 2. Defendants further argue that the recent creation of the PDF files "does not mean that the source

documents themselves were not in existence prior to the subject incident." *Id.* The glaring problem with this argument, even if believed, is that it addresses only one aspect of Mr. Stafford's report and ignores the forensic evidence of discrepancies between the Title IX Word document files produced by Defendants and the corresponding metadata put forth by Defendants in an attempt to verify when the policies were created. These variations are a separate and distinct issue from the creation dates of the PDF documents that Defendants continuously rely on in their attempts to challenge the evidence of fabrication.

These discrepancies include significant differences in the file size, character count, line counts, and other metrics, which provide compelling evidence of Defendants' fabrication. *See* D.E. 34-13, p. 5. Defendants fail to offer any explanation to the Court as to why the document properties do not match the crucial metadata on which they rely to claim these documents were created in August of 2022. This failure to address the discrepancies is fatal to Defendants' response, effectively admitting these allegations by failing to rebut them. Even worse, Defendants have submitted the fabricated evidence to the Court in an exhibit. The images shown in Defendants' Exhibit B [D.E. 41-2, p. 3], show the very fabricated metadata analyzed in Mr. Stafford's report. Defendants fail to address this evidence entirely, and have now presented the fabricated evidence before the Court in support of their response.

The evidence Defendants put forth to rebut the evidence of fabrication is wholly insufficient. Defendants failed to retain an expert witness and instead, provided their own unqualified evaluation of Plaintiff's expert witness report. Indeed, Defendants readily admit that they are not "computer expert[s]" and "not versed in metadata or how to transfer documents in order to ensure that metadata remains intact." Defs.' Resp. ¶ 11. Despite Defendants' admission that they lack basic knowledge regarding metadata and the preservation of evidence, Defendants urge the Court to reject the expert witness testimony of Mr. Stafford and instead, rely on

3

Defendants' unsupported and unqualified statements, such as "every time the document is opened, it changes the date on the document as if the document were 'modified.'" *Id*. ¶ 10. Defendants fail to even provide any authority for these unsupported claims and, in the same breath, question the qualifications of Mr. Stafford, a recognized expert who has provided evidence before state and federal courts alike. Defendants' failure to controvert Plaintiff's forensic evidence of document falsification alone is sufficient for the Court to impose sanctions against Defendants. *See Stonecreek-AAA, LLC v. Wells Fargo Bank N.A.*, 2014 U.S. Dist. LEXIS 189048, at *8 (S.D. Fla. May 13, 2014) (finding that even if testimonial evidence was insufficient to impose sanctions, uncontroverted expert testimony regarding falsification of evidence alone was sufficient).

In support of their response, Defendants offer the declaration of Habib Hasbun, an unknown third-party IT consultant who evidently provides services to Defendants. Mr. Hasbun, a lay witness with no known expert witness qualifications, offers a short and conclusory declaration affirming the accuracy of the documents produced by Defendants. Not only does Mr. Hasbun lack the qualifications to rebut Mr. Stafford's expert witness report given that he is an unknown lay witness, but he also fails to offer any analysis which could support such a rebuttal. In fact, there is no mention of the significant evidence of fabrication outlined in Mr. Stafford's report. Instead, Mr. Hasbun simply offers that the document reflects a creation date of August 10, 2022, on Ms. Bernal's computer system, a statement that is not necessarily in dispute.

The relevant inquiry, which neither Mr. Habsun nor Defendants can explain, is why the metadata characteristics of the document shown in Defendants' Exhibit B [D.E. 41-2] do not match any of the Title IX documents Defendants have produced. The reason is that Defendants falsified and misrepresented the document in an attempt to verify their claims that the Title IX policies were in place prior to Plaintiff's enrollment. Importantly, this is also assuming the veracity of

Defendants' highly questionable claims that the creation dates of the electronic files, which include various PDF and Word documents, are all incorrect due to some unknown technical issue.

Defendants attempt to draw the Court's attention to several irrelevant issues in their response, including references to the sexual harassment trainings provided by the payroll provider, ADP. Plaintiff's motion makes no reference to these trainings, as they have no immediate bearing on the Title IX policies at issue and the corresponding evidence of fabrication. Plaintiff has indeed questioned the authenticity of the certificates following the filing of the instant motion, and for good reason. Not only have Defendants demonstrated their willingness to fabricate documents, but Defendants also conveniently omit that in response to a subpoena Plaintiff served on ADP, Inc., the issuer of the certificates produced by Defendants, a company representative stated they had no record of Defendants ever accessing or utilizing the training for which the certificates were issued. Plaintiff continues to investigate this issue and has not raised the matter in her motion, yet Defendants use it as yet another attempt to obfuscate the evidence before the Court.

Notably, in support of their response Defendants attached several training certificates from ADP, LLC that they had not previously produced during discovery, despite Plaintiff having requested the documents, representing yet another instance of Defendants withholding evidence without explanation. Defendants' repeated non-disclosures in this manner continue to force Plaintiff to expend time and resources to simply determine whether evidence is being concealed.

Defendants seemingly argue that Plaintiff's expert witness must physically inspect Defendants' computer system and that Plaintiff's expert should not have relied "upon printouts and documents which do not display the accurate metadata." Defs.' Resp. ¶ 14. While Plaintiff did request access to the computer systems when suspicions of the fabrication arose, this inspection was not necessary when the Defendants put forth the fabricated evidence in discovery. Plaintiff is under no obligation to view the very same fabricated documents on the Defendants' computer

5

system and give Defendants further opportunities to stall and further manipulate the evidence presented in the case. Defendants provide no explanation as to why such an inspection would remedy the evidence of falsification in the document metadata and, again, appear to ignore the evidence of discrepancies in the Word documents. Defendants also fail to realize that forensic analysis of electronically stored information contained in digital files is a recognized method of authenticating documents consistent with the Federal Rules.

  **B. <u>Defendants Have Failed to Reasonably Justify Their Misconduct and Repeated Misrepresentations</u>**

  Defendants put forth a number of unconvincing justifications for their misconduct in withholding documentary evidence, making false statements under oath, and failing to disclose material information. Even when viewed in the best light, Defendants' assertions defy common sense and are contradicted by the record evidence. Defendants' attempt to downplay the evidence of document falsification and misconduct, and ultimately fail to articulate any reasonable explanation for their actions. Defendants show disregard for their obligations under the Federal Rules of Civil Procedure and this Court by characterizing them as simple issues of credibility. Neither Defendants nor their counsel introduce any new sworn testimony to support their position beyond the single conclusory declaration provided by their third-party IT consultant, which fails to provide any meaningful explanation or analysis. Defendants' failure to convincingly explain or rebut the evidence of misconduct is fatal to their position and should result in sanctions.

  Another "strong indicator" of Defendants' bad faith intent is the Defendants' "ever-shifting explanations for failing to produce the relevant discovery materials." *See Costa v. Datapro, Inc.*, 2011 U.S. Dist. LEXIS 153266, at *20 (S.D. Fla. Aug. 5, 2011) (entering sanction of default where a party's explanations for withholding essential documents "lack[ed] evidentiary support in the record and contradict[ed] common sense"), *report and recommendation adopted*, 2011 U.S. Dist.

LEXIS 159798 (S.D. Fla. Aug. 26, 2011). As to why Defendants stated under oath in interrogatories that no Title IX investigations had ever been conducted, Defendants claim that the "confusion stems from the deponent's understanding of what constitutes an official Title IX investigation, which impacted Defendants' responses to Plaintiff's initial discovery requests as well as Ms. Bernal's deposition testimony." Defs.' Resp. ¶ 12. This assertion is absurd given that Defendants have claimed that Ms. Bernal is the Defendants' designated Title IX coordinator and the drafter of the Title IX policies at issue. *See* D.E. 34-6 at 49:22-25, 119:14-16. Yet, Defendants ask the Court to believe that Ms. Bernal did not understand what a Title IX investigation is. This also would not explain the false interrogatory responses given that they were prepared with the assistance of counsel, who cannot colorably claim to have simply misunderstood the term.

To justify the false statements regarding revisions made to the Title IX policies, Defendants retroactively add qualifiers to their responses, stating the interrogatory responses indicated no revisions had been made because there "were no **substantive** revisions to policy," but admitting that there were "minor changes including updating the date, etc." Defs.' Resp. ¶ 19. As an initial matter, the request unequivocally asked for all revisions to policies. *See* D.E. 34-1, p. 10; D.E. 34- p. 10. Defendants did not limit their response to "substantive" changes and most certainly cannot do so now through their response. Defendants also fail to recognize that these changes were, in fact, substantive by any measure. Defendants' Title IX policy designated new Title IX coordinators, added new reporting mechanisms, including an electronic Google form submission, and altered the individuals responsible for handling and investigating Title IX complaints. Again, Defendants expect the Court to accept that these purported changes, which ultimately impacted the sexual assault of a five-year-old child, were non-substantive and, therefore, did not need to be disclosed in a Title IX action.

7

Defendants attempt to justify their misrepresentations by arguing that Defendants' Title IX policies were based primarily on the Title IX policies of Miami-Dade County Public Schools ("MDCPS"), and that because of the similarity, Defendants were relieved of any duty to disclose and produce the policies. Specifically, Defendants contend that they simply "cut and pasted" MDCPS policies and made "the document more specific to Academir." Defs.' Resp. ¶ 10. These statements by Defendants are equally implausible as they are prejudicial to the Plaintiff. Defendants ask the Court to accept their assertions that Defendants' Title IX policies were in effect since at least August of 2022, yet were not included or referenced in school handbooks, were never distributed to students, were never published online, and were never included in the Defendants' Board of Director meeting minutes, which would have been required to approve the purported policies. Even assuming the truth of Defendants' far-fetched assertions, Defendants would still not have been relieved of their duty to disclose and produce the policies in discovery.

Defendants further claim that this adaptation from MDCPS policies explains Ms. Bernal's false statements and that her testimony was simply "taken out of context." Defs.' Resp. ¶ 9. Defendants include several pages of testimony from Ms. Bernal, none of which explains the very simple fact that Ms. Bernal unequivocally stated she was reading from a document titled "Fiscal Policies and Procedures" containing Defendants' Title IX policies and described that as being distinct from MDCPS policies. *See* D.E. 34-6 at 68:22-69:24. It was not until Ms. Bernal was forced to show that she was reading from the MDCPS Compliance Manual, and her false statements were exposed that she began attempting to conflate the two documents. *See id*. at 71:23-72:19. Defendants ***have never*** produced this purported "Fiscal Policies and Procedures" document containing Title IX policies and even now, fail to explain why Defendants' Title IX policies do not match this description. Defendants ask that the Court ignore these inexplicable discrepancies, in addition to the forensic evidence of document fabrication, and simply allow the case to proceed without incident.

8

## II. The Uncontroverted Evidence of Defendants' Misconduct Warrants Severe Sanctions

The severity of Defendants' misconduct—fabricating evidence, providing false testimony, and deliberately obstructing the discovery process—warrants the imposition of the most stringent sanctions available. This pattern of misconduct has significantly prejudiced Plaintiff by delaying the discovery process and preventing Plaintiff from obtaining critical evidence needed to support her claims. These actions have been taken in bad faith and required Plaintiff to expend significant resources to uncover the truth. Defendants' refusal to address the core discrepancies in the evidence further underscores their intent to avoid accountability for their actions. *See Gonzalez v. Bus. Representation Int'l, Inc.*, 248 F.R.D. 644, 646 (S.D. Fla. 2008) (entering sanction of dismissal and finding evidence of bad faith where a party failed to provide "sworn testimony that satisfactorily explains his failure to disclose").

In their response, Defendants correctly note that in *Patterson*, the Eleventh Circuit held that fraud between the parties does not constitute fraud on the court. *Patterson v. Lew*, 265 F. App'x 767, 769 (11th Cir. 2008). In *Patterson*, the Court described a party's failure to disclose information or a party's acts of perjury as not being sufficiently egregious to constitute a fraud on the court. *Id.* at *769. Plaintiff does not dispute this notion. However, the Defendants' conduct in this case goes well beyond simple perjury or failure to disclose information in a discovery response, as the Defendants have repeatedly engaged in sanctionable conduct, including falsifying and manipulating evidence related to Defendants' Title IX compliance, making repeated misrepresentations in deposition testimony and sworn affidavits to mislead Plaintiff, and withholding documents and information material to Plaintiff's claims without explanation. Defendants' persistent pattern of misconduct "covers the full range of litigation abuses" sufficient

9

to warrant the harsh sanction of default judgment.[1] *See Vargas v. Peltz*, 901 F. Supp. 1572, 1581–1582 (S.D. Fla. 1995).

Defendants further attempt to minimize their conduct and describe their disregard for the rules as "credibility issues best decided by a jury rather than on a motion for sanctions." Defs.' Resp., p. 15. In support of their argument, Defendants rely on *Suppa*, a case where the court declined to enter the sanction of dismissal against a plaintiff for intentionally concealing prior medical treatment. *See Suppa v. Costa Crociere S.p.A.*, No. 07-60526-CIV, 2008 U.S. Dist. LEXIS 27853, at *5 (S.D. Fla. Apr. 7, 2008). Defendants' reliance is entirely misplaced, as in *Suppa*, the court determined that the misstatements and concealment of facts did not "have such a direct effect" on the plaintiff's claims or "go to the heart of her case." *Id.* In stark contrast, the Defendants' repeated misrepresentations and falsification of evidence go directly to the Plaintiff's claims in the handling and investigation of her sexual assault under Title IX.

In this case, Defendants' intentional deception and bad faith conduct have demonstrated a blatant disregard for their obligations to the Court and have prevented Plaintiff from fairly litigating this matter. The imposition of severe sanctions in the form of a default judgment is the only appropriate remedy to address the egregious nature of Defendants' misconduct and to deter future violations. Accordingly, Plaintiff respectfully requests that the Court grant her Motion for Default Judgment and for Sanctions to hold Defendants accountable for their actions.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that her Motion for Default Judgment and for Sanctions be granted.

---

[1] Defendants' request for attorney's fees and costs pursuant to Rule 37(a)(5)(B) included in their Response lacks justification and should be denied. Notably, evaluating Defendants' conduct under Rule 37 would also result in the imposition of sanctions, even in the absence of bad faith. *See Sosa v. Carnival Corp.*, No. 18-20957-CIV, 2018 U.S. Dist. LEXIS 204933, at *4-5 (S.D. Fla. Dec. 4, 2018).

Dated:  Miami, Florida  **DEREK SMITH LAW GROUP, PLLC**
July 29, 2024,  *Counsel for Plaintiff*

*/s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.
Florida Bar No.: 1038749
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Kyle@dereksmithlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on July 29, 2024, on all counsel of record identified on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

## SERVICE LIST

**KELLY KRONENBERG**

Julie B. Karron, Esq.
Florida Bar No.: 1025196
KELLY KRONENBERG
10360 West State Road 84
Fort Lauderdale, Florida 33324
Phone: 954-370-9970
Fax: 954-382-1988
Email: jkarron@kellykronenberg.com

*Counsel for Defendant Academir Charter Schools, Inc.*

**GARRISON, YOUNT, FORTE & MULCAHY, LLC**

Scott P. Yount, Esq.
Florida Bar No.: 0021352
GARRISON, YOUNT, FORTE & MULCAHY, LLC
601 Bayshore Blvd., Suite 800
Tampa, Florida 33606
Phone: 813-275-0404
Fax: 813-275-0304

*Counsel for Defendant Superior Charter School Services, Inc.*