UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JANE DOE, a minor, by and through
Her mother and next friend, MOTHER DOE,
     Plaintiff,

v.                                Case No.: 1:23-CV-23004

ACADEMIR CHARTER SCHOOLS, INC.,
and SUPERIOR CHARTER SCHOOL
SERVICES, INC.,
     Defendants.

_____/

**DEFENDANT ACADEMIR CHARTER SCHOOL, INC.'S MOTION FOR FINAL
SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

     Defendant, Academir Charter Schools, Inc. ("Academir" or "Defendant"), by and through

their undersigned counsel, pursuant to Rule 56 of the Fed. R. Civ. P. and Rule 56.1 of the Local

Rules for the U.S. District Court Southern District of Florida, hereby file this Motion for Final

Summary Judgment as to Counts I, III, V, VII, and IX, and in support thereof states as follows:

## I.    **Executive Summary**

     On August 9, 2023, Jane Doe, by and through her Mother and next friend (hereinafter

"Jane" or "Plaintiff") filed a complaint asserting as against Academir: deliberate indifference to

sexual harassment; retaliation; negligence; negligent failure to train; and negligent supervision,

based upon a single instance of alleged student-on-student sexual harassment between two five-

year-old kindergarten students allegedly occurring on January 20, 2023 (hereinafter "Alleged

Incident"). On the date of the incident, Jane reported to three separate school employees that

another student made a verbal comment made to her. Defendant responded immediately and

notified both children's parents on the same day that Plaintiff reported the Alleged Incident.

     When Jane returned from school on January 20, 2023 (which Mother Doe recorded on or

around the following day), she told Mother Doe that she was kissed and licked by her classmate,

the alleged 5-year-old perpetrator ("L.R.") in the classroom under the table. On January 21, 2023, Jane's parents sent a text message to Jane's kindergarten teacher, Ms. Chaudry, and for the first time asserted that Jane was physically touched. Ms. Chaudry met with Jane's parents on the next school day, which was Tuesday, January 24, 2023. On that same day both L.R. and Jane advised the school counselor that the incident was merely a verbal comment.  At no time did Jane's parents ever report to the school that the incident was alleged to have occurred on more than one occasion.

Defendant immediately launched an investigation, which included a review of the classroom surveillance footage which confirmed that the children were constantly supervised and that no inappropriate contact occurred. Father Doe made a police report on January 25, 2023, which contained no reference to any Alleged Incident and merely stated that the father wanted L.R. removed from the class.  Upset that the school would not remove L.R. from the class and would not disclose the surveillance, during that same week, Jane did not attend class Thursday and Friday and Jane's parents withdrew Jane from Academir and moved her to another school.

At no time has Jane been evaluated by a physical or mental health provider to obtain treatment for the Alleged Incident. The only mental health provider Jane ever saw was the Plaintiff's own expert, for the purpose of litigation. In fact, Jane Doe has suffered no damage. Since the Alleged Incident, Jane's parents testified that Jane has received no medical or psychological treatment. Additionally, both of Jane's parents admit that she has not suffered any decline in grades or behavioral issues because of the alleged incident.

Critically absent from Plaintiff's Complaint or the evidence submitted in this case, is any indication or evidence of actions which Defendant could have taken to prevent the Alleged Incident. There is not a scintilla of evidence to establish:

1) That Defendant had any actual notice or reason to believe that Jane would be subjected to the Alleged Incident;

2) That L.R.'s conduct was foreseeable;

3) That there were any prior issues with Defendant's personnel that would rise to the level of negligent hiring or training;

4) That the Alleged Incident was sufficiently severe, pervasive and objectively offensive; 5) That any sexual harassment occurred;

6) That Jane was denied an educational opportunity or benefit;

7) That Defendant breached any duty to Jane or that any causation or damages exist; or

8) That Defendant could have taken any steps to prevent the Alleged Incident.

## MEMORANDUM OF LAW

### II.   SUMMARY JUDGMENT STANDARD

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure which states that courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). Inferences shall be construed in favor of the nonmovant only if they are reasonable, justifiable, and legitimate inferences that flow rationally from the underlying facts. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996). When a party fails to prove an essential element of a claim that they have the burden of proving, then "an entry of summary judgment is required." *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

### III.   LEGAL ARGUMENT

#### A.  No Deliberate Indifference to Sexual Harassment or Retaliation Under Title IX

Plaintiff alleges two different types of violations of Title IX against Defendant: (1) deliberate indifference to sexual harassment and (2) retaliation. Both claims fail for multiple reasons.

##### 1.  No Actual Notice

In the summary judgment context, Plaintiff must demonstrate "actual notice" sufficient to alert the official of the possibility of the Title IX plaintiff's harassment. *School Bd. of Broward County, Fla.*, 604 F. 3d at 1254 (quoting *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1989); *J.F.K. v. Troup County School Dist.*, 678 F. 3d 1254, 1255-56 (11th Cir. 2012).

Binding case law is clear that "the **substance of that actual notice must be sufficient to alert the school official of the possibility** of the Title IX plaintiff's harassment." *School Bd. of Broward Cnty.*, 604 F.3d at 1256. (Emphasis added). To be clear, the standard is "exacting," "rigorous," and "hard to meet." *Id.* (*quoting Hill v. Cundiff*, 797 F.3d 948, 975 (11th Cir. 2015). The standard for imposing liability is actual knowledge, rather than what the school or its employees knew or should have known. *Gebser*, 524 U.S. at 274. This case concerns only so-called "post-assault" or "post-harassment" claims, where a school is sued for its deliberate indifference in responding to her own notice that another student sexually assaulted or harassed her. See, e.g., *School Bd. of Broward Cty.*, 604 F.3d at 1254-1263.

Jane's parents admit that prior to the Alleged Incident, they never made a complaint or report to Academir of any concerns involving L.R. Their reports (occurring between January 21, 2023 and January 25, 2023) alleged only one singular Alleged Incident. Academir was not on prior notice of the potential for this type of incident between kindergarten children and never received complaints regarding issues concerning training and supervision of employees. Jane's parents admit that they did not make a formal written complaint of sexual harassment. While Jane reported a single Alleged Incident, there was no notice of conduct that rose to the level of sexual harassment and no notice of any acts or omissions of Academir employees.

Jane cannot demonstrate that Academir had actual knowledge that L.R. was subjecting her to sexual harassment prior to January 20, 2023, and even once the Alleged Incident was reported starting on January 21, 2023, there were no allegations of any conduct that was sufficiently severe and pervasive or occurred with any regularity to rise to the level of notice of potential harassment. Jane's parents admit that they have no evidence that the alleged conduct was as a result of Jane's gender. Jane cannot show that Academir had any policy or custom of not fully investigating

harassment allegations or treating complaints of female students any differently than those of males. Jane has no evidence that Academir had actual knowledge of the alleged violations.

Actual notice may only be satisfied in a few ways where evidence of notice is clear: (1) if it were shown that Defendant had knowledge that L.R. was actually harassing Jane; (2) if they actually knew of instances of sexual harassment by L.R. toward other students sufficient to alert Defendant of the possibility of L.R. sexually harassing Jane; or (3) in some circumstances, "lesser harassment may still provide actual notice of sexually violent conduct..." See *Doe v. School Bd. of Broward County, Fla.*, 604 F. 3d, 1248 ,1258, (11th Cir. 2010) (citing *Williams v. Bd. of Regents of the Univ. Sys. of Ga*., 477 F. 3d 1282, 1294 (11th Cir. 2007)(teacher accused of harassing plaintiff was accused in two prior instances of sexually harassing students); *see also J.F.K*. 678 F. 3d at 1260; *M.Q. v. Peenix City Bd. of Ed*., 2013 WL 4009187 *6 (M.D. Ala. 2013)(citing *Doe* and *J.F.K*., supra). Notably, no lesser prior harassment has been asserted in this case and at the time of Jane's parents' report of the incident, it was only regarding a singular incident that occurred on January 20, 2023. Plaintiff cannot establish that Defendant had actual knowledge of L.R.'s behavior that constituted sexual harassment as between two five-year-olds, which was so severe, pervasive and objectively offensive as to deprive Jane of educational opportunities.

The record evidence establishes that there were no prior incidents between Jane and L.R., and L.R. had no history of behavioral issues or similar issues with other children. There is no evidence which would serve to have put Defendant on notice of the potential of this conduct under Title IX. *See Davis v. DeKalb County Sch. Dist*., 233 F. 3d 1367, 1373 (11th Cir. 2000) (no evidence of actual notice of harassment, even where prior complaint alleged "incidental touching"); compare *Doe*, 604 F. 3d at 1259 (two prior complaints, viewed collectively, provided actual notice to the principal of a pattern of sexual harassment and a series of related allegations);

*Baynard v. Malone*, 268 F.3d 228, 238 n. 9 (4th Cir. 2001) (actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to students **based on prior complaints** by other students.. Accordingly, this case is devoid of any facts substantiating that the "actual notice" requirement has been met.

### 2.   No Deliberate Indifference to Sexual Harassment in Violation of Title IX

In *Williams*, the 11th Circuit applied *Davis* and held a plaintiff seeking recovery predicated on student-on-student sexual harassment must prove the following elements:

First, the defendant must be **a Title IX funding recipient**…Second, an **'appropriate person' must have actual knowledge** of the alleged discrimination or harassment…Third, a funding recipient is liable for student-on-student harassment only if the funding recipient **acts with deliberate indifference to known acts of harassment** in its programs or activities…Fourth, the discrimination must be '**so severe, pervasive, and objectively offensive** that it effectively **bars the victim's access to an educational opportunity or benefit**…*Williams*, 477 F.3d at 1282. (*emphasis added*); *see also Davis Next Friend La Shonda D.,* 526 U.S. at 629–630.

The US Supreme Court defined the deliberate indifference standard as "**an official decision by the recipient** [of federal funds] **not** to remedy the violation." *Williams*, 477 F.3d at 1282. (emphasis added); *Wills v. Brown Univ.*, 184 F.3d 20, 26 (1st Cir.1999); *Davis*, 526 U.S. at 643-45. "The Supreme Court has noted that **deliberate indifference means** more than ordinary negligence and **probably more than gross negligence**." *Wyke v. Polk Cnty. Sch. Bd.*, 898 F. Supp. 852 (Fla. M.D. 1995)(quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989))(Emphasis added). "Examples of deliberate indifference include 'no effort whatsoever either to investigate or to put an end to the harassment" as well as a "fail[ure] to respond,' a lack of instruction to school personnel on how to respond to peer sexual harassment and a lack of a policy on the issue." *Rodriguez v. Alpha Inst. of S. Florida, Inc.*, 10-80714-CIV, 2011 WL 5103950 (S.D. Fla. 2011) (quoting *Davis*, 526 U.S. at 654). Essentially, a **school must "officially decide not to remedy the violation to rise to the level of deliberate indifference**." *Kocsis v. Fl. State Univ. Bd of Trustees*, 788 F. App'x 680, 684 (11th Cir. 2019) (Emphasis added). *See School Bd. of Broward Cnty.*, 604

F.3d at 1259 (quoting *Gebser*, 524 U.S. at 290) ("Title IX's premise 'is an official decision by the recipient not to remedy the violation.").

In *Davis*, the U.S. Supreme Court set forth the standard of liability for damages under Title IX as a result of peer-on-peer harassment. *Davis Next Friend La Shonda D.,* 526 U.S. at 643-45. Where, as here, the harassment complained of does not flow directly from an official policy of the school system, **no liability for damages will attach unless** the [school] itself is **'deliberately indifferent to known acts** of student-on-student sexual harassment.'" *Id.* at 646-47. (Emphasis added). The Court explicitly stated that this standard would not be satisfied by theories based upon agency principles, vicarious liability, or constructive notice. *Gebser*, 524 U.S. 274 at 283. "In an appropriate case, there is no reason why courts, on a motion…for summary judgment…could not identify a response as not 'clearly unreasonable' as a matter of law." *Id*

In similar cases, courts have consistently found no Title IX liability where a school takes reasonable actions in response to allegations of student-on-student sexual harassment. In *KF's Father v. Marriott*, 2001 WL 228353 (S.D. Ala. 2001), the court found no liability where the school separated elementary-age girls after a sexual assault, even after a second sexual incident occurred. In *Vaird v. Sch. Dist. of Philadelphia*, 2000 WL 576441 *2 (E.D. Pa. May 12, 2000), no liability was found, despite two sexual assaults involving young children the school kept in same room *and* further "bothering" occurred. In *Wilson v. Beaumont Independent Sch. Dist*., 144 F.Supp.2d 690, 691 (E.D. Tex. 2001), the court concluded that the school was not deliberately indifferent to harassment between students where child was forced to have anal sex and school did not immediately notify the parents. In *Wilson*, the court concluded that **plaintiff failed to show that defendants were deliberately indifferent because the teacher questioned the two**

**students about the incident and separated them** and held that **while the remedy in hindsight might appear insufficient**, it is clear that **some action was taken**. *Id*.

After learning of the singular Alleged Incident, Academir took prompt and appropriate actions, including:

 a) **Separation of Students**: They immediately separated the children within the classroom.
 b) **Review of Surveillance Footage**: The school reviewed footage to confirm nothing inappropriate had occurred.
 c) **Classroom Transfer Offer**: Academir offered to move Jane to a different classroom for her comfort.
 d) **Interviews**: They interviewed Jane multiple times on the day she reported the Alleged Incident and had the school counselor interview both children.
 e) **Parental Communication**: The school held several meetings with Jane's parents; advised L.R.'s parents and communicated with L.R.'s parents.
 f) **Disciplinary Action**; a disciplinary referral was issued to L.R.

These actions demonstrate that Academir was not deliberately indifferent, as they conducted reasonable responses to the situation. Under Title IX standards, deliberate indifference requires a failure to act that is "clearly unreasonable in light of known circumstances." *See Davis v. Monroe Cnty. Bd. of Educ*., 526 U.S. 629, 631-32 (1999) (multiple victims of same perpetrator); *Doe v. Bibb Cnty. Sch. Dist*., 688 F. App'x 791, 796 (11th Cir. 2017) (victim can show actual knowledge through prior similar acts of discrimination).

"Known circumstances" that may put a school on notice of potential liability include:

 a) **Prior Harassment**: Instances of prior harassment against the same victim.
 b) **Similar Instances**: Previous similar harassment involving different victims.
 c) **Pattern of Misconduct**: A history of sexual misconduct by the alleged perpetrator.

*Id*. Cases such as *Davis* and *Doe* illustrate that a school's liability is often tied to their knowledge of prior similar acts. In this instance, since Academir acted diligently and there were no prior reports of harassment, the Plaintiff cannot demonstrate that Academir's actions were clearly unreasonable, thus undermining any claim of deliberate indifference.

### 3.   Failure to Follow Title IX Policy Is Not Deliberate Indifference

Academir cannot be deemed 'deliberately indifferent' even in circumstances where regulatory requirements were not complied with or procedural failures occurred. See *Saphir v. Broward Cnty. Pub. Sch*., 744 F. App'x 634, 639 (11th Cir. 2018) (school failed to interview all relevant witnesses, and alleged victim); *see also Broward*, 604 F.3d at 1260); *Davis*, 233 F.3d at 1373-74 (school failed to take written statements or record meetings as required by district policy); *Karasek v. Regents of Univ. of Cal*., 956 F.3d 1093, 1107-08 (9th Cir. 2020) (school **failed to enact a Title IX policy or to follow its own sexual harassment policy**); *Sanches v. Carrolton-Farmers Branch Indep. Sch. Dist*., 647 F.3d 156, 169-70 (5th Cir. 2011); *Gebser*, 524 U.S. at 291-92; *Doe v. Samford Univ*., 29 F.4th 675, 688 (11th Cir. 2022) (school failed to comply with U.S. Department of Education Title IX regulations).

Academir's response to the Alleged Incident is far from what the Eleventh Circuit has deemed deliberate indifference. Notably, in *Williams* this Court found deliberate indifference when a university took nearly eleven months to investigate a reported gang rape. *Williams,* 477 F.3d at 1282. Similarly, in *Hill*, a school district was deemed deliberately indifferent because it failed to assist a student "in any way" after she was sodomized because of a school's botched "rape bait" scheme to catch the accused. *Hill*, 797 F.3d at 973. In *Stinson*, the court found deliberate indifference where a school official took no action after witnessing several male students violently drag a female into abandoned building, where the female reported it as rape and the school failed to conduct any investigation at all. *Stinson v. Maye*, 824 F. App'x 849, 858-60 (11th Cir. 2020).

### 4.   No Severe, Pervasive and Objectively Offensive Conduct

To establish the "severe, pervasive, and objectively offensive" standard in a Title IX claim, courts must consider the broader context surrounding the alleged harassment, including the **ages of both the harasser and the victim**, as well as the dynamics of their interactions. *Davis* 526 U.S.

at 652. A "**single instance** of sufficiently severe one-on-one peer harassment" **cannot have such a systemic effect** in light of "the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." *Id*. at 652–53 (emphasis added); *see also*, *School Board of Miami-Dade County*, 403 F. Supp. 3d at 1257-58 (S.D. Fla. 2019) **Single or isolated instances of alleged harassment are insufficient to satisfy the "severe and pervasive" element** of this claim. *See Hill*, 797 F.3d at 973 (emphasis added) (citing *Williams*, 477 F.3d at 1298); *Camara v. Brinker Intern.*, 2004 WL 5561676, at *4 (S.D. Fla. Dec. 13, 2004) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)). In *Davis*, the student was subjected to numerous acts of sexual touching which led to a conviction of criminal sexual misconduct. *Davis*, supra. In *Murrell*, a disabled female student was repeatedly sexually assaulted by a fellow student on school grounds. *Murrell v. School District No.1, Denver*, 186 F.3d 1238, 1242-44 (10th Cir. 1999). As *Davis* teaches, it is crucial to remember that the students involved here, were 5-year-old kindergartners. After interviewing Jane and L.R., and speaking with L.R.'s parents, it became clear to Defendant that L.R. was parroting vulgar language he heard at home, quite probably without really understanding what he was saying. *See Manfredi v. Mount Vernon Board of Education*, 94 F.Supp.2d 447, 454 (S.D. N.Y. 2000).

If a funding recipient does not engage in harassment directly, it may not be liable for damages under Title IX *unless* its deliberate indifference subjects its students to harassment; that is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. *Davis.*, 526 U.S. at 645 (emphasis added). School administrators continue to enjoy the flexibility they require and will be deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances. *Id*. at 648.

The Supreme Court has applied a more rigorous standard when a Title IX plaintiff seeks damages against funding recipients for student-on-student harassment. *Sauls v. Pierce Cty. Sch. Dist.,* 399 F.3d 1279, 1284 (11th Cir. 2005); *see also Davis*, 526 U.S. at 650–53. The Court explained **student-on-student harassment will rise to the level of actionable discrimination under Title IX only if the harassment is "sufficiently severe**." *Davis*, 526 U.S. at 650 (*emphasis added*); *see also Hawkins v. Sarasota County Sch. Bd*., 322 F.3d 1279, 1285 (11th Cir. 2003); *Sauls v. Pierce Cnty. Sch. Dist*., 399 F.3d 1279, 1284 (11th Cir. 2005). As this Court recently explained, "[o]nly in 'unique' circumstances--**when sexual assaults were part of a "continuous series of events" constituting a larger scheme--have we found a single sexual assault incident sufficient to satisfy Title IX**". A.*P. v. Fayette Cnty. Sch. Dist*., No. 21-12562, 2023 WL 4174070 at *6 (11th Cir. June 26, 2023) (emphasis added) (citing *Hill*, 797 F.3d at 972-73; *Williams*, 477 F.3d at 1297-98); *see also Stinson*, 824 F. App'x at 849 (concerning a case where a middle school female student was gang raped by three male students).

In *Hill*, the Eleventh Circuit emphasized that the stringent requirement for proving actual knowledge of severe, pervasive, and objectively offensive harassment protects school districts from liability for isolated incidents of immature behavior among students. This high burden ensures that schools are not financially and operationally overwhelmed by occasional misconduct, which is often a part of growing up. *Hill*, 797 F. 3d at 969. In *Davis* 526 U.S. at 632 a series of sexual harassment incidents occurring over several months and the school received multiple reports but failed to take effective action, leading to a significant drop in academic performance and the writing of a suicide note. The court found that the school's inaction in the face of ongoing harassment constituted deliberate indifference, contrasting with the more isolated nature of incidents typically associated with younger students. *Id.* at 634.

In contrast to the circumstances in *Davis*, Jane did not experience a pattern of sexual harassment, nor did Jane suffer academically as a result of the Alleged Incident. *See Davis* 526 U.S. at 632 The entirety of the Plaintiff's complaint centers on a singular event that took place on January 20, 2023, which is consistently referred to as "the sexual assault" throughout the complaint Pl. Compl. ¶ 2, ¶ 15–17. Additionally, both of Jane's parents testified that by the end of her kindergarten year, her grades had significantly improved compared to the beginning of the year. This further underscores that Jane did not face the ongoing, pervasive harassment that characterized the situation in Davis. The lack of a repeated pattern of harassment and the absence of academic decline highlight that the circumstances surrounding Jane's case do not rise to the level of severity and pervasiveness required to establish a Title IX claim. Thus, the Defendant's response to the singular event aligns with the legal standards set forth in similar cases.

### 5.  No Claims or Evidence of Further Harassment

The standard for deliberate indifference requires that the plaintiff be subjected to further harassment. *Williams*, 477 F.3d at 1296. In that case, the court found that a cycle of discrimination and deliberate indifference over more than a year constituted pervasive harassment, involving a series of incidents *before* and after the key event. *Davis*, 526 U.S. at 644. Similarly, Davis v. Monroe County Board of Education, 526 U.S. 629 (1999), underscores the importance of ongoing harassment in establishing a claim. Moreover, the deliberate indifference standard demands more than mere negligence; it requires a clear failure to act in a way that results in harm, which courts should be cautious about second-guessing the disciplinary decisions made by school administrators. *Stinson as next friend of K.R. v. Montgomery County Bd. of Educ.*, 365 F. Supp. 3d 1233, 1239 (M.D. Ala. 2019) (quoting *Davis*, 526 U.S. at 648).

In this case, there are no allegations that Jane experienced any further harassment following the Alleged Incident. Notably, it was only after Jane withdrew from Academir that she claimed the incident occurred twice. Without evidence of further harassment or a systemic pattern of discrimination, the claims against the Defendant do not meet the threshold for Title IX liability.

**6.   Plaintiff Not Barred from Educational Opportunity or Benefit**

The Plaintiff has not provided sufficient evidence to demonstrate that Academir's response to the Alleged Incident resulted in Jane being "denied access" to or effectively barred from any educational program or activity. According to *Hawkins*, to establish that a plaintiff was barred from an educational opportunity, they must show a "concrete negative effect" and the conduct must be severe enough to create a "systemic" effect that denies equal access to educational programs or activities. *Hawkins*, 322 F.3d at 1289. In *Hawkins*, the court found no educational impact when the victims admitted to faking illness to avoid school, despite not experiencing a decline in grades or behavioral changes observed by teachers. *Id*. *Hawkins*, 322 F.3d at 1289.

The Plaintiff also fails to allege that she was systemically barred from returning to Academir or that she was at risk of being denied an education due to the Defendant's actions or inactions. There are no specific allegations or evidence showing an inability to access her education. Moreover, the Plaintiff does not assert that any actions taken by Academir either caused her to experience harassment or made her more vulnerable to it. There is no demonstration of educational deprivation in this case. In fact, the testimony from Jane's parents indicates that Jane's grades improved by the end of her kindergarten year, with no decline observed. This evidence further supports the conclusion that Jane was not denied access to educational opportunities, reinforcing that the claims do not meet the criteria necessary for a Title IX violation.

**7.   No Evidence of Gender Oriented Conduct**

The Eleventh Circuit in *Hawkins* held that gender discrimination must be more widespread than a single instance of one-on-one peer harassment and the effects of the harassment must touch the whole or entirety of an educational program or activity. *Hawkins v. Sarasota County School Bd.*, 322 F. 3d 1279, 1289 (11th Cir. 2003) "Whether gender-oriented conduct rises to the level of actionable [Title IX] harassment ... depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, **the ages of the harasser and the victim** and the number of individuals involved." *Hill* 797 F. 3d at 972 (emphasis added). A Title IX claim must include an allegation of discrimination based on sex. Here there is no indication of conduct based on gender, to fall within the perimeters of Title IX. Plaintiff's parents testified that they have no evidence that the Alleged Incident was based on Jane's gender.

### 8.  No Liability for Not Conducting Appropriate Investigation

Academir cannot be held liable for failing to conduct what Plaintiff deems an appropriate investigation. *Doe v. Bibb Cty. Sch. Dist.* 126 F. Supp. 3d 1366, 1378-79 (M.D. Georgia 2015). In *Doe*, the court addressed a situation where a student was raped in the bathroom by seven male students after being released into their custody by a teacher. *Bibb* alleged that the district's actions *before* and after being put on notice about her rape constituted deliberate indifference and argued, "that the School District abdicated its investigatory responsibility under Title IX by not continuing to investigate what actually happened in the restroom, i.e., whether it was consensual, after the [local police's] conclusion that [the girl] recanted." *Id*. at 1377. The court held that the district's conduct in this regard did not amount to deliberate indifference, as "**a funding recipient cannot be held liable simply because it did not conduct an appropriate investigation** (even if such conduct could expose it to potential administrative action by the DOE)." *Id*. at 1378-79.

The situation in *Bibb* was egregious as it involved a gang rape of a student, but like in Jane's instant action, the theory of liability is that Academir violated Title IX through its conduct *following* the Alleged Incident. *See id*. In *Bibb*, liability against the school district did not rise to deliberate indifference for failure to conduct an appropriate investigation. Analogous to Jane's Alleged Incident, deliberate indifference cannot be imputed to Defendant simply for not conducting an appropriate investigation after the alleged incident. *See id*.

**B.  No Retaliation in Violation of Title IX**

Plaintiff's retaliation claim fails as Plaintiff cannot identify any retaliatory action taken by Academir.  Under Title VII, "the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse ... action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1363 (11th Cir. 2007). Plaintiff cannot establish a prima facia case of retaliation as there is no "adverse action" and no causal relation between the reporting of the Alleged Incident and any "adverse action".

The most clear-cut example of student-on-student harassment that could trigger a damages claim under Title IX involves a direct, overt physical denial of access to school resource. *Davis* 526 U.S. at 650-651. The court in *Hawkins* emphasized that **discrimination must be more widely spread than a single instance of one-on-one peer harassment, *and* the effects of the harassment must touch the whole or entirety of an educational activity**. *Hawkins,* 322 F. 3d at 1279-1289. In *Hawkins*, the court found that although the harassment involved objectively offensive touching over several months, it did not rise to the level of severity, pervasiveness, and objectivity necessary to demonstrate a systemic effect on the victims' equal access to education. The court concluded that there was no concrete and negative impact on the victims' ability to receive an education or to enjoy equal access to educational programs. *Id*.  The court also

contrasted this situation with other cases where a systemic effect was evident, highlighting that the absence of such an effect is crucial in determining liability. In the current case involving Jane, there is no indication of a systemic impact on her educational experience. The evidence shows that she did not suffer any concrete negative effects, further supporting the conclusion that the claims do not meet the threshold established in cases like *Davis* and *Hawkins* 322 F. 3d at 1289. The court contrasted this case with other cases that demonstrated a "systemic effect." *Id*. at fn. 13. Those examples included examples where the "victim":

> 1. alleged a drop in grades and left a suicide note;
>
> 2. was a physically disabled student who was sexually battered and assaulted on multiple occasions resulting in self-destructive suicidal behavior and eventually caused her to leave school and caused her to enter a psychological hospital. *Id*. *Murell v. School District No. 1, Denver Colorado*, 186 F.3d, 1238 (10th Cir. 1999); and
>
> 3. Was repeatedly harassed and intimidated by several boys from seventh to ninth grade. She was diagnosed with depression and withdrew from school.

*Vance v. Spencer County Public School District*, 231 S.3d, 353 (5th Cir. 2000). The court noted that while such serious consequences may not always be necessary to find liability, **the effect on the ability to receive an education must be real and demonstrable**. *Id*.

Jane's retaliation claim is fundamentally flowed because it is based upon the same alleged omissions that support her claims of deliberate indifference and negligence. As seen in *Kramarski v. Village of Orland Park,* 2002 WL 1827637, *11 (N.D. Ill. 2002), retaliatory conduct must have a clear nexus to the original complaints, and mere continuation of prior conduct does not suffice. Similarly, in *McDonnell v. Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996), the court dismissed a retaliation claim that merely addressed the continuation of the same underlying harassment.

In this case, Academir took no materially adverse action against Jane. Notably, her parents removed her from the school in the same week the incident was reported, indicating that any alleged retaliation occurred after Jane's withdrawal. While Jane was still enrolled, there were no

actions taken by school officials that could be considered materially adverse to her protected expression. Therefore, the foundation of her retaliation claim does not hold, as it fails to demonstrate any specific adverse action linked to her complaints.

### C. Plaintiff Cannot Establish Negligence

To properly state a claim for negligence, the plaintiff must allege and prove the following elements: (1) the existence of a legal duty; (2) a breach of that duty; (3) causation; and (4) damages. *Abad v. G4S Secure Sols. (USA), Inc*., 293 So. 3d 26 (Fla. 4th DCA 2020). It is well-settled that school officials are neither insurers of the students' safety, nor are they strictly liable for any injuries which may occur. *See Collins v. School Bd. of Broward Co*., 471 So. 2d 560, 563 (Fla. 4th DCA 1985). In this case, the Plaintiff cannot prove a valid claim of negligence because the alleged conduct between kindergarten children was not foreseeable, and there was no reason for the Defendant to anticipate the Alleged Incident. Additionally, there is no allegation that any breach of duty on the part of the Defendant was the cause of the Alleged Incident. Without establishing these critical elements, the Plaintiff's negligence claim fails to meet the necessary legal standards.

The Plaintiff has not demonstrated that Jane suffered *any* damages as a result of Defendant's actions. Instead, the Plaintiff relies on an "alleged failure to comply" with Title IX. As noted in *Palmer ex rel. Palmer*, No. 3:05CV218/MCR, 2005 WL 3338724, at *5 (N.D. Fla. 2005), such an alleged failure to comply with the regulations does not establish the necessary actual notice and deliberate indifference necessary for a Title IX damages claim.

### D. No Negligence Based Upon Subsequent Investigation

Where there is no further sexual abuse *after* a report of abuse is made, **a negligence claim based on the adequacy of the investigation and response to the report of sexual abuse cannot be upheld**. *See State, Dept. of Health and Rehab. Services v. L.N. By and Through Negron*, 624

So. 2d 280, 281 (Fla. 3d DCA 1993). Jane does not allege any further activity after the report of the Alleged Incident. The harm suffered by Jane as a result of Defendant's alleged failure to investigate is vague and conclusory. *See, e.g., Intl. Security Mgmt. Grp., Inc. v. Rolland*, 2018 WL 6818442, \*11 (Fla. 3d DCA 2018) (directed verdict where Plaintiff did not demonstrate how failure to properly investigate contributed in any way to his asserted injury). Similarly, here, in addition to lack of foreseeability and lack of damages, Jane fails to establish a claim for negligence based upon the "manner" of investigation by Defendant.

### E.  Negligent Supervision Resulting in Alleged Sexual Harassment is Not Recognized

A claim of negligent supervision requires that Jane demonstrate the existence of an underlying wrong committed by an employee, which must be based on an injury resulting from a tort recognized under common law. *Scelta v. Delicatessen Support Services, Inc*., 57 F. Supp. 2d 1327, 1348 (Fla. M.D. 1999); *Williams v. Feather Sound, Inc*., 386 So. 2d 1238, 1239–40 (Fla. 2d DCA 1980).

"**Florida does <u>not</u> recognize a common law cause of action for sexual harassment**." *Scelta*, 844 F. Supp. at 1327 (emphasis added); *see Vernon v. Medical Mgmt. Assoc. of Margate*, 912 F.Supp. 1549, 1563–64 (S.D. Fla. 1996) (dismissing claims for negligent retention and negligent supervision where underlying misconduct alleged was merely sexual harassment). Therefore, Jane's negligent supervision claim fails as a matter of law, as Florida courts do not recognize a common law action for negligent supervision in cases where the allegedly negligent act resulted in sexual harassment.

Even if the negligent supervision claim were not precluded, it is fundamentally based on an employer's negligence in *knowingly* retaining a dangerous employee whom the employer knew or should have known was likely to cause harm. *See Belizaire v. City of Miami*, 944 F. Supp. 2d

1204, 1215 (S.D. Fla. 2013) (citing *Watson v. City of Hialeah*, 552 So. 2d 1146 (Fla. 3d DCA

1989)). This standard requires proof that the employer had <u>actual or constructive notice of an</u>

<u>employee's unfitness</u> *and* <u>failed to investigate</u> or take corrective action. *See Cruz*, 842 F. Supp. 2d

at 135. Jane has not demonstrated that Academir was aware of L.R.'s propensities or that any

employees were unfit, which undermines the claim. See W*illis v. Dade County Sch. Bd*., 411 So.

2d 245, 246 n1 (Fla. 3d DCA 1982). Undisputedly, Academir had no prior knowledge of concerns

regarding L.R. or previous harassment of Jane. Consequently, there is no evidence to support

actual or constructive notice of an employee's unfitness or failure to supervise children effectively.

### F.  Negligent Failure to Train Claim Fails

Jane asserts that Academir had a duty to adequately train staff on recognizing, preventing

and addressing student-on-student sexual harassment, handling reports of such incidents, and

informing victims of their rights under Title IX. She alleges that a breach of these duties led to the

Alleged Incident. However, to establish a claim for negligent training, the conventional elements

of "duty, breach, causation, and damages must be shown in negligent training claims." *Wynn v.*

*City of Lakeland*, 727 F. Supp. 2d 1309 (M.D. Fla. 2010). Plaintiff must allege that she was

**harmed as a result of an employer's failure to adequately train** an employee. *Clary v. Armor*

*Corr. Health Servs., Inc*., No. 13-90, 2014 WL 505126, *4-5 (M.D. Fla. Feb. 7, 2014) (emphasis

added). Jane's negligent failure to train claim fails for lack of an underlying common law tort

recognized in Florida. *Scelta*, 57 F.Supp.2d at 1348. The Plaintiff fails to provide any evidence

supporting the claim that the Academir inadequately trained its employees, which *resulted* in the

Alleged Incident. In fact, surveillance footage from the date of the Alleged Incident, shows both

Jane and L.R. were under direct supervision by Academir staff, with the teacher present and in full

control of the classroom at the time and place of the Alleged Incident.

### G. Punitive Damages Are Not Recoverable

Jane improperly seeks punitive damages against Academir, which are not available under a private cause of action under Title IX. *Barnes v. Gorman*, 536 U.S. 181, 188 (U.S. 2002); Pl. Compl. Pg. 33. Since punitive damages are not allowed in breach of contact cases, **punitive damages are not available in Title IX cases**. *Id.* (Emphasis added); *see also* Restatement (Second) of Contracts § 355; *Mercer v. Duke University*, 50 Fed. Appx. 643, 645 (4th Cir. 2002). **Punitive damages are not available in a case involving a violation of Title IX**. *Doe v. School Board of Miami-Dade County*, F. Supp. 3d 1241, 1269 (Fla. S.D. 2019) (citing *Barnes*, 536 U.S. at 181). Plaintiff cannot recover punitive damages for the alleged violation of Title IX. *Id.*

On Jane's supplemental state law claims, a defendant can only be held liable for punitive damages if the trier of fact finds, based on clear and convincing evidence, that the defendant engaged in intentional misconduct or gross negligence. FLA. STAT. § 768.72(2). Plaintiff "must plead specific acts committed by a defendant" and not merely allege "conclusory allegations to recover punitive damages." *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001). Jane fails to assert a factual basis that demonstrates intentional and willful misconduct or gross negligence. Without such specific allegations or proof, her claim for punitive damages lacks the necessary foundation. Therefore, the claim for punitive damages should either be stricken or summary judgment should be granted in favor of the Defendant regarding punitive damages.

### IV.   <u>CONCLUSION</u>

Plaintiff cannot meet her burden of proof against Academir and there are no genuine issues of material fact at to Counts I, III, V, VII, and IX. Additionally, punitive damages are improperly alleged. Defendant is therefore entitled to final summary judgment on all counts as a matter of law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed through the CM/ECF Portal, which furnished same via electronic mail delivery on September 24, 2024, to Kyle T. MacDonald, Esq., Derek Smith Law Group, PLLC, 701 Brickell Avenue, Suite 1310, Miami, FL 33131, at kyle@dereksmithlaw.com (Attorneys for Plaintiff) and Scott Yount, Esq. and Julie McHaffie, Esq., Garrison, Yount, Forte & Mulcahy, LLC, 601 Bayshore Blvd., Suite 800, Tampa, FL 33606 at syoung@garrisonyount.com; jmchaffie@garrisonyount.com   (Attorneys for Superior Charter School Services, Inc.)

<div style="margin-left:40%">

KELLEY KRONENBERG
/s/ Julie B. Karron
**JULIE B. KARRON, ESQ.**
Fla. Bar No.:  14683
10360 West State Road 84
Fort Lauderdale, FL  33324
Telephone: (954) 370-9970
Facsimile: (954) 382-1988
Attorneys for Academir Charter Schools, Inc.
jkarron@kelleykronenberg.com

</div>