UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JANE DOE, a minor, by and through
Her mother and next friend, MOTHER DOE,

    Plaintiff,

v.                                                                                                        Case No.: 1:23-CV-23004

ACADEMIR CHARTER SCHOOLS, INC.,
and SUPERIOR CHARTER SCHOOL
SERVICES, INC.,

    Defendants.
_____/

**DEFENDANT ACADEMIR CHARTER SCHOOL, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, Academir Charter School West Primary Learning Center, operated by Academir Charter Schools, Inc. ("Academir"), by and through its undersigned counsel, and pursuant to Rule 56 of the Fed. R. Civ. P. and Rule 56.1 of the Local Rules for the U.S. District Court Southern District of Florida, hereby files their Statement of Material Facts in support of its Motion for Final Summary Judgment, and in support thereof state as follows:

**EXHIBITS**

Exhibit A: Plaintiff's Complaint filed on August 9, 2023 (See also D.E. 1)
Exhibit B: Deposition of Hira Chaudry taken on May 15, 2024
Exhibit C: Deposition of Susie Bello taken on May 13, 2024
Exhibit D: Deposition of Mother Doe (Plaintiff) taken on August 26, 2024 and August 28, 2024
Exhibit E: Deposition of Melissa Valladares taken on May 15, 2024
Exhibit F: Declaration of Susie Bello dated September 23, 2024
Exhibit G: Accident/Incident Report dated January 20, 2023
Exhibit H: Student Case Management Student Services Form January 24, 2023
Exhibit I: Student Referral Form dated January 20, 2023
Exhibit J: Deposition of Father Doe (Jane's father) taken on August 26, 2024

1

## STATEMENT OF MATERIAL FACTS

1. This case arises out an alleged sexual assault ("Alleged Incident") between students occurring in a school classroom at Academir Charter School West in Miami, Florida. (Exhibit A, Plaintiff's Complaint ¶ 1). (Undisputed)

2. The Alleged Incident was purportedly committed upon Jane Doe ("Plaintiff"), who was 5 years old at the time. (Exhibit A, Plaintiff's Complaint ¶¶ 1, 5). (Undisputed)

3. The alleged assailant was L.R., who was a fellow kindergarten student around the same age and in the same class as Plaintiff at the time of the Alleged Incident. (Exhibit A, Plaintiff's Complaint ¶ 14). (Undisputed)

4. Plaintiff alleges in her complaint that the minor child L.R. "kissed Jane on the mouth and licked her chest, genitals, and buttocks, all without Jane's consent and against her will." (Exhibit A, Plaintiff's Complaint ¶ 14). (Undisputed)

5. On January 20, 2023, Jane's kindergarten teacher Ms. Hira Chaudry ("Chaudry") was present in the classroom at all times during school hours. (Exhibit B, Chaudry, Dep. Tr., 34: 1–16; Exhibit F, Bello Declaration ¶ 27).

6. On the same day Jane's physical education teacher Ms. Rosemaire Mortazavi ("Mortazavi") reported to Ms. Chaudry that Jane told her that L.R. had said some sexually inappropriate things to Jane. (Exhibit B, Chaudry, Dep. Tr., 23: 18–23.)

7. Academir's Principal Susie Bello ("Bello") testified that on the same day, Ms. Mortazavi spoke to L.R. about what he had said to Jane. (Exhibit C, Bello, Dep. Tr., 71: 15–24).

8. When Ms. Chaudry picked up Jane from PE, she spoke to Jane who reported that "L.R. told her he wants to lick her tetas and touch her cuca". (Exhibit B, Chaudry, Dep. Tr., 23: 1–15).

2

9. Ms. Chaudry asked Jane if she could tell her when it happened or where, and Jane didn't remember. (Exhibit B, Chaudry, Dep. Tr., 24: 1–7).

10. Ms. Chaudry asked Jane "Did he touch you? Did he touch you anywhere" and Jane said "No. No." (Exhibit B, Chaudry, Dep. Tr., 25: 6-8).

11. That same day around dismissal time, Ms. Chaudry brought Jane to Jane's former pre-kindergarten teacher, Ms. Zoley Castellon ("Castellon"), to speak to Jane in her first language, Spanish. (Exhibit B, Chaudry, Dep. Tr., 25: 3–10; 27: 15-17).

12. Ms. Chaudry wanted to confirm that Jane had not been touched, so she asked another teacher Ms. Castellon to ask Jane in Spanish if L.R. touched her and Jane confirmed to Ms. Castellon that L.R. did not touch her. (Exhibit B, Chaudry, Dep. Tr., 25: 11–25).

13. Ms. Castellon advised that she spoke with Jane and asked her what happened, and Jane repeated the same thing- in response to being asked if she had been touched or bothered, Jane told Ms. Castellon "No. No. No." (Exhibit B, Chaudry, Dep. Tr., 25: 18-25).

14. L.R. told Ms. Mortazavi that he was sorry and that he was simply repeating words that he had heard at home. (Exhibit C, Bello, Dep. Tr., 71: 15–24).

15. During dismissal that day, Ms. Chaudry met with L.R.'s mother about the comments he had made to Jane. (Exhibit B, Chaudry, Dep. Tr., 28: 1–9).

16. Ms. Chaudry asked L.R. why he said that to Jane, and he said he heard it at home. (Exhibit B, Chaudry, Dep. Tr., 30: 10-25).

17. L.R.'s mother confirmed that L.R. would have heard those comments at home. (Exhibit C, Bello, Dep. Tr., 71: 15–24).

18. Also, on the same day of the Alleged Incident, Ms. Castellon called Jane's mother to inform her in Spanish of what Jane told Ms. Chaudry. (Exhibit A, Plaintiff's Complaint ¶ 19; Exhibit B, Chaudry, Dep. Tr., 29: 2–14).

19. According to Jane's mother, when Jane's mother took Jane home from school, Jane allegedly told her mother that L.R. "licked her tits and her butt" and "kissed her on the mouth." (Exhibit D, Mother Doe, Dep. Tr., 7: 7–10). (Undisputed)

20. The first time that any individual employed by Academir was told that something physical had happened between Jane and L.R. was when Jane's mother messaged Ms. Chaudry requesting a meeting. (Exhibit B, Chaudry, Dep. Tr., 33: 3–23; Exhibit F, Bello Declaration ¶ 12).

21. On January 24, 2023, Mother Doe, Father Doe, Ms. Chaudry and Assistant Principal Ms. Melissa Valladares ("Valladares") had a meeting at the school to discuss the Alleged Incident. (Exhibit A, Plaintiff's Complaint ¶ 24, Exhibit F, Bello Declaration ¶ 15, Exhibit E, Valladares, Dep. Tr., 63: 5-13).

22. Jane's mother reported that L.R. touched her under the table and licked her and Ms. Chaudry assured Mother Doe and Father Doe that she was vigilantly watching the class and was circulating the room and there was no free time that day for something like that to occur. Ms. Chaudry showed Mother Doe and Father Doe where Jane sat in proximity to the teacher's desk and that if it happened in her classroom someone would have said something, and that Jane sits elbow to elbow with another student and was wearing jeans that day and there would have been witnesses. (Exhibit B, Chaudry, Dep. Tr., 33: 12-23; 34: 5-12; 35: 15-22).

23. Mother Doe and Father Doe requested to see the video footage of the class on the date the Alleged Incident occurred and demanded that the children be separated. (Exhibit A, Plaintiff's Complaint ¶ 26, Exhibit F, Bello Declaration ¶ 19). (Undisputed)

24. Ms. Valladares and Ms. Chaudry stated they would review the video footage within the next day and would speak with Mother Doe and Father Doe afterwards. (Exhibit A, Plaintiff's Complaint ¶ 31). (Undisputed)

25. On January 24, 2023, Academir's student counselor Ms. Stephanie Ruiz ("Ruiz") questioned Jane about the details of the Alleged Incident and shortly thereafter Ms. Ruiz called Jane's mother and advised her that Jane had described the Alleged Incident as being purely verbal. (Exhibit A, Plaintiff's Complaint ¶ 32-33; Exhibit B, Chaudry, Dep. Tr., 38: 3–23). (Undisputed)

26. On January 24, 2023, Ms. Ruiz had a meeting with L.R. to discuss the Alleged Incident and was told by L.R. that he had heard it from home and repeated it. (Exhibit B, Chaudry, Dep. Tr., 38: 7-12).

27. On January 24, 2023, Ms. Ruiz completed the Student Case Management Student Services Form, (Exhibit H; Exhibit F, Bello Declaration ¶ 16 Exh. 2).

28. As a result of the verbal comment, L.R. was issued a referral which remains on his permanent record, and this is the only issue he had at Academir. (Exhibit C, Bello Dep. Tr., 76: 16-25; 97: 1-8; Student Case Management Referral, Exhibit I, Exhibit F, Bello Declaration ¶ 17 Exh. 3).

29. At no time did Jane, Mother Doe or Father Doe ever report to the school that the Alleged Incident occurred on more than one occasion. (Exhibit F, Bello Declaration ¶ 29).

30. On or around January 24, 2023, Ms. Valladares and Ms. Ruiz spoke with Father Doe and Ms. Valladares advised him that they had reviewed the cameras and that at no point did she see L.R. make any type of contact towards Jane at any point during their instructional period at school on January 20, 2023. (Exhibit E, Valladares, Dep. Tr., 78: 1-14).

31. On January 25, 2023, Jane's father showed up to the school and spoke with Ms. Valladares. Jane's father was very upset and used a lot of inappropriate language in from of children and other staff members. Ms. Valladares advised Jane's father that he could not see the video because of the privacy of the students. (Exhibit E, Valladares, Dep. Tr., 79: 2-12).

32. Ms. Valladares listened to an audio recording on January 25, 2023, that was played by Father Doe, in which Jane alleged a physical touching. Ms. Valladares did not understand that recording to be a complaint of sexual harassment because it was an isolated incident of a student making a verbal comment to another student, based upon the statements that the school obtained from the employees that interviewed Jane and L.R. (Exhibit E, Valladares, Dep. Tr., 81: 2-10, 21-25; 82: 1-5).

33. On or around January 25, 2023, Ms. Bello advised Jane's father that she had reviewed the relevant security footage and that the footage showed nothing remarkable and the children's interaction was merely verbal. (Exhibit A, Plaintiff's Complaint ¶ 39-40, Exhibit F, Bello Declaration ¶ 19). (Undisputed)

34. Academir conducted an investigation into the Alleged Incident. The investigation took place between the first report that the Alleged Incident was physical on January 21, 2023, through January 31, 2023, when Jane was officially withdrawn from Academir. (Exhibit F Bello Declaration ¶¶ 12, 30). The investigation by Academir included:

   a) January 20, 2023: Jane reports the Alleged Incident and three school employees interviewed Jane, Exhibit F, Bello Declaration ¶10;
   b) January 20, 2023: Ms. Castellon calls Mother Doe to advise of the Alleged Incident, Exhibit B, Chaudry Dep. Tr., 27: 17-22; Exhibit D, Mother Doe, Dep. Tr. Vol. 1, 7: 17-18;
   c) January 20, 2023: completion of an Accident/Incident Report which is signed by L.R.'s mother and Mother Doe, Exhibit G; Exhibit C Susie Bello, Dep. Tr., 101: 10-18; 102: 1-2; Exhibit F, Bello Declaration ¶11, Exhibit A;
   d) January 20, 2023: meeting with Ms. Chaudry and L.R.'s mother, Exhibit B, Chaudry Dep. Tr., 27: 17-22;

e) January 21, 2023: Mother Doe sends text message to Hira Chaudry advising that the Alleged Incident was physical and not just verbal Dep. Tr. 33: 8-16;
f) January 24, 2023: in person meeting with Ms. Chaudry, Ms. Valladares and Mother Doe and Father Doe, Exhibit E, Valladares, Dep. Tr., 79: 2-12.
g) January 24, 2023: full review of the classroom surveillance from January 20, 2023, Exhibit E, Valladares, Dep. Tr., 70: 20-25; 71:1-17; Exhibit F, Bello Declaration ¶ 22;
h) January 24, 2023: Ms. Ruiz meets with L.R.; Exhibit C Bello, Dep. Tr., 96: 12-18; 100: 19-25;
i) January 24, 2023: Ms. Ruiz meets with Jane; Exhibit C Bello, Dep. Tr., 100: 19-25;
j) January 24, 2023: Student Services Form completed by Ms. Ruiz regarding incident, Exhibit H; Exhibit C Bello, Dep. Tr., 93: 21-22; 94 1-3;
k) January 24, 2023: Ms. Ruiz, and Ms. Valladares conduct call with Father Doe, Exhibit F, Bello Declaration ¶18;
l) January 20, 2023: Disciplinary Student Case Management Referral form for L.R.; Student Case Management Referral, Exhibit I; Exhibit C Bello, Dep. Tr., 97: 1-8; 98: 7-20; Exhibit F, Bello Declaration ¶ 17;
m) January 25, 2023: in person meeting with Ms. Valladares and Father Doe, Exhibit E, Valladares, Dep. Tr., 79: 2-12.
n) January 25, 2023: telephone call with Ms. Bello and Father Doe; Exhibit C Bello, Dep. Tr., 103: 1-11; 123: 15-24; Exhibit F, Bello Declaration ¶ 19;
o) January 25, 2023: Academir has in person meeting with the Miami Dade County Police Exhibit C Bello, Dep. Tr., 125:10-25; 126: 1-19; Exhibit F, Bello Declaration ¶ 21.

(See Exhibit F Bello Declaration, supra).

35. Academir's investigative findings were that: Jane stayed consistent with her story that it was a verbal comment; in no way did Jane indicate to Academir that anybody actually touched her or that L.R. toucher her; Ms. Bello watched the video footage and observed that the class was in order, the students were testing and there were test dividers up and everyone was sitting in their chairs orderly and there was order in the class; Jane was wearing jeans; Jane's desk was situated close to the teacher's desk; there was no reason to believe that anything other than a verbal comment was made; the counselor spoke with Jane and Jane told the counselor the same thing; and Jane consistently told four adults that the Alleged Incident was only verbal. (Exhibit C Bello, Dep. Tr., 109: 14-25; 110: 1-12; 113: 12-15; Exhibit F, Bello Declaration).

36. On January 25, 2023, Mother Doe and Father Doe contacted law enforcement. (Exhibit A, Plaintiff's Complaint ¶ 43; Exhibit J, Father Doe, Dep. Tr., 43: 11–20). (Undisputed)

37. Jane's father requested that law enforcement remove L.R. from the classroom, but they informed him that they lacked the authority to do so. (Exhibit A, Plaintiff's Complaint ¶ 44; Exhibit J, Father Doe, Dep. Tr., 48: 19–25). (Undisputed)

38. On January 31, 2023, Mother Doe and Father Doe contacted the Florida Department of Children and Families to report the Alleged Incident. (Exhibit A, Plaintiff's Complaint ¶ 63). (Undisputed)

39. On January 31, 2023, Mother Doe and Father Doe withdrew Jane's enrollment at Academir and transferred her to another school. (Exhibit A, Plaintiff's Complaint ¶ 68-69). (Undisputed)

40. Jane, Mother Doe and Father Doe had never made a complaint or report to Academir about any issues involved L.R. prior to this Alleged Incident. (Exhibit J, Father Doe, Dep. Tr., 18: 8–23, 19: 8–11; Exhibit D, Mother Doe, Dep. Tr., 29: 10–14). (Undisputed)

41. Jane never reported any other instances of inappropriate behavior at Academir, aside from the Alleged Incident. (Exhibit J, Father Doe, Dep. Tr., 19: 12-21; 20: 9-20). (Undisputed)

42. Before the Alleged Incident, Jane never reported feeling unsafe at Academir and never reported that she was left alone, without adults present. (Exhibit J, Father Doe, Dep. Tr., 19: 12-21; 20: 9-20; 21: 16-19). (Undisputed)

43. In fact, Academir had no notice of any issues concerning improper or inadequate training, hiring or supervision of employees, as it had never received any complaints about its employees' training or supervision. (Exhibit F, Bello Declaration ¶¶ 8-9).

44. Even after this Alleged Incident, Mother Doe and Father Doe did not make a formal sexual harassment complaint with Academir. (Exhibit J, Father Doe, Dep. Tr., 65: 14–24; Exhibit D, Mother Doe, Dep. Tr., 37: 19–23; 38 1–8). (Undisputed)

45. Mother Doe and Father Doe never took Jane to receive any medical or psychological treatment as a result of the Alleged Incident. (Exhibit J, Father Doe, Dep. Tr., 13: 12–25; Exhibit D, Mother Doe, Dep. Tr., 44: 16–22). (Undisputed)

46. As a result of the Alleged Incident, Jane grades have not declined, in fact they have improved, nor has she suffered from any behavioral issues. (Exhibit D, Mother Doe, Dep. Tr., 45: 8–19; Exhibit J, Father Doe, Dep. Tr., 80: 8–14). (Undisputed)

47. As a result of the Alleged Incident, Mother Doe and Father Doe have not incurred any medical expenses and the family's health insurance has not paid for anything. (Exhibit J, Father Doe, Dep. Tr., 13: 1-4). (Undisputed)

48. Both Mother Doe and Father Doe admitted that they do not believe that the handling of the Alleged Incident by Defendant Academir was based on Jane's gender. (Exhibit D, Mother Doe, Dep. Tr., 44: 4–14; Exhibit J, Father Doe, Dep. Tr., 79: 17–22). (Undisputed)

Dated: September 24, 2024

Respectfully Submitted,

**KELLEY KRONENBERG**

/s/ Julie B. Karron
**JULIE B. KARRON, ESQ.**
Fla. Bar No.: 14683
10360 West State Road 84
Fort Lauderdale, FL 33324
Telephone: (954) 370-9970
Facsimile: (954) 382-1988
Attorneys for Defendant, Academir Charter Schools, Inc.
jkarron@kelleykronenberg.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed through the CM/ECF Portal, which furnished same via electronic mail delivery on September 24, 2024, to Kyle T. MacDonald, Esq., Derek Smith Law Group, PLLC, 701 Brickell Avenue, Suite 1310, Miami, FL 33131, at kyle@dereksmithlaw.com (Attorneys for Plaintiff) and Scott Yount, Esq. and Julie McHaffie, Esq., Garrison, Yount, Forte & Mulcahy, LLC, 601 Bayshore Blvd., Suite 800, Tampa, FL 33606 at syoung@garrisonyount.com ; jmchaffie@garrisonyount.com  (Attorneys for Superior Charter School Services, Inc.)

/s/ Julie B. Karron
Florida Bar. No.: 14683