# Office of Civil Rights Compliance
# *Title IX Sexual Harassment Manual*

## Procedures Related to Reports of Sexual Harassment



Miami-Dade County Public Schools
The School Board of Miami-Dade County, Florida

Ms. Perla Tabares Hantman, Chair
Dr. Steve Gallon III, Vice Chair
Dr. Dorothy Bendross-Mindingall
Ms. Susie V. Castillo
Dr. Lawrence S. Feldman
Dr. Martin Karp
Dr. Lubby Navarro
Dr. Marta Pérez
Ms. Mari Tere Rojas

Ms. Maria Martinez, Student Advisor

**SUPERINTENDENT OF SCHOOLS**
Mr. Alberto M. Carvalho

**Contact Information**

**District Title IX Coordinator**
Office of Civil Rights Compliance
155 N.E. 15th Street, Suite P104E
Miami, Florida 33132
Phone: 305 995-1580
Fax: 305 995-2047
E-mail: crc@dadeschools.net

**Table of Contents**

I.   Introduction
     A.    Purpose
     B.    M-DCPS Office of Civil Rights Compliance
     C.    Title IX
     D.    Title IX Coordinator
     E.    Training
     F.    Definitions
           1. Complainant
           2. Respondent
           3. Recipient
           4. Sexual Harassment
              a) *Quid pro quo*
              b) *Unwelcome conduct, severe, pervasive, and objectively offensive*
              c) *Sexual Assault, Dating Violence, Domestic Violence and/or Stalking*
           5. Statutory Rape
           6. Consent
           7. Incapacitated
           8. Scope of Education Program or Activity
           9. Deliberate Indifference
           10. Actual Knowledge
           11. Supportive Measures
           12. Formal Complaint
           13. Relevant Evidence
           14. Inculpatory Evidence
           15. Exculpatory Evidence
           16. Days
           17. Party
           18. Preponderance of Evidence

II.  Title IX Team Roles
     A.    District Title IX Coordinator
     B.    Investigators
           1. Deputy Title IX Coordinators
           2. CRC Investigators
           3. School Title IX Liaisons
     C.    Decision-Makers
     D.    Appellate Decision-Makers
     E.    Informal Resolution Process Facilitator

F.   Evaluating Bias and Conflicts of Interest

III.   Sexual Harassment Reporting Procedures
A.   Reporting Sexual Harassment
B.   Employee Reporting Responsibilities
C.   Additional Steps for Employees Who Receive a Report of Sexual Harassment

IV.   Initial Grievance Procedures
A.   Initial Steps in Response to Allegations of Sexual Harassment
B.   Supportive Measures Offered to the Complainant and Respondent, as Needed, to Ensure Equal Access to the Educational Program or Activity
C.   Emergency Removals

V.   Formal Grievance Process
A.   Formal Complaints
B.   Notice of Allegations
C.   Advisors
D.   Formal Complaint Dismissal
    1.   Mandatory Dismissals
    2.   Discretionary Dismissals
E.   Informal Resolution Process
F.   Investigations
    1.   Timelines
    2.   Law Enforcement Investigations
    3.   Notice of Rights
    4.   Notice of Investigative Interview
    5.   Interactions with FERPA
    6.   Interviews and Investigation
    7.   Refusals to Participate in Investigations or Cross-Examination
    8.   Investigative Reports
    9.   Review of Evidence and Draft Report by Parties
    10. Transmission to Decision-Maker

G.   The Decision-Making Process
    1.   Written Question and Answer Process for M-DCPS K-12 Programs
    2.   Hearings for Students in M-DCPS Adult and Career Technical Education Programs
    3.   Dissemination of Written Determinations

H.   Appeal Procedures

       1. Grounds for Appeal
       2. Appellate Decision-Making
       3. Notice of Appeal Outcome
I.      Discipline
       1. Student Discipline
       2. Employee Discipline
       3. Remedies
J.      Retaliation
K.      Recordkeeping

I.    **Introduction**

  A.    **Purpose**

The Miami-Dade County Public Schools (M-DCPS) Office of Civil Rights Compliance (CRC) *Title IX Sexual Harassment Manual* is designed to outline the procedures for prompt and equitable resolutions of Complaints alleging sexual harassment or related retaliation.  These are all expressly prohibited by Miami-Dade County School Board Policy and Title IX of the Education Amendments of 1972 (Title IX).

  B.    **M-DCPS Office of Civil Rights Compliance (CRC)**

The District's Title IX Coordinator, located in the CRC, is authorized to coordinate the School Board's response to allegations of sexual harassment and related retaliation.[1]  The Title IX Coordinator and Deputy Title IX Coordinators from the CRC Office work with school site Title IX Liaisons to receive reports and Complaints of sexual harassment, provide notice of such Complaints, offer supportive measures and promptly investigate formal Complaints.  CRC works with schools and work sites to coordinate the implementation of effective remedies related to sexual harassment.   CRC provides connections to counseling and guidance on reporting to law enforcement and the Florida Department of Children and Families. CRC also provides training on recognizing, preventing and responding to all forms of discrimination and harassment including sexual harassment.

CRC strives to ensure that all members of M-DCPS value and respect each other's contributions and opinions without regard to gender, race, social or ethnic background, or any of the protected categories

  C.    **Title IX**

Title IX of the Education Amendments of 1972 (Title IX) states:

> *No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.*

As a school district receiving federal financial assistance, Title IX applies to M-DCPS including its schools, educational program and activities.

---

[1] As applicable, the procedures contained in this Manual also apply to allegations of retaliation against an individual for activities related to a report of sexual harassment.

D.    **Title IX Coordinator**

The District's Title IX Coordinator is located in the Office of Civil Rights Compliance (CRC) at:

155 N.E. 15th Street, Suite P104E
Miami, FL  33132
(305)995-1580
(305) 995-2047 (facsimile)
crc@dadeschools.net

All applicants for employment, employees of all collective bargaining units, students, and parents or legal guardians of the School Board are notified by School Board Policies and this *Title IX Sexual Harassment Manual* that the School Board does not discriminate on the basis of sex in the education program or activity that it operates, and that it is required not to discriminate in such a manner.  Inquiries about the application of Title IX may be referred to the District's Title IX Coordinator, the Assistant Secretary of the United States Department of Education, or both.

E.    **Training**

The District's Title IX Team, including the Title IX Coordinator, along with any School Title IX Liaisons, Investigators, Decision-Makers, District-appointed Advisors, and Informal Resolution Process Facilitators, must receive training on the definition of sexual harassment as used in this procedures manual, the scope of the District's education program or activity, how to conduct an investigation and implement the grievance procedures, appeals, and informal processes (as applicable), and how to serve impartially including by avoiding pre-judgment of the facts at issue, conflicts of interest and bias.

Title IX training materials will be published on CRC's website at http://hrdadeschools.net/civilrights.

Additionally, all Board employees will be trained concerning their obligation to report sexual harassment to their Principal, Work Site Supervisor and/or the District's Title IX Coordinator (using the Title IX Coordinator's contact information listed in this Manual).

F.   **Definitions**

1. **Complainant** is defined as an individual (employee, student, applicant, or other third parties attempting to participate in an education program or activity under the substantial control of the School Board) who is alleged to be the victim of conduct that could constitute sexual harassment. Parents and guardians who have a legal right to act on behalf of students may do so, including by filing a formal Complaint. A third party, including a parent or guardian, who makes a report of conduct that could constitute sexual harassment on behalf of another individual does not become a Complainant.

2. **Respondent** is defined as an individual who has been alleged to be the perpetrator of conduct that could constitute sexual harassment.

3. **Recipient** refers to elementary and secondary schools, as well as postsecondary institutions, that are recipients of Federal financial assistance. For purpose of Title IX sexual harassment regulations, the U.S. Department of Education uses the phrase "elementary and secondary schools" interchangeably with "local educational agencies" (or "LEAs" or "K-12").

4. **Sexual Harassment** is defined as conduct on the basis of sex that satisfies one or more of the following definitions:

   a) *Quid pro quo is when an employee of the recipient conditions the provision of an aid, benefit, or service of the recipient on an individual's participation in unwelcome sexual conduct;*

   b) *Unwelcome conduct is conduct determined by reasonable person to be so **severe, pervasive and objectively offensive** that it effectively denies a person equal access to the recipient's education program or activity; or*

   c) *"**Sexual assault**" as defined by 20 U.S.C. 1092(f)(6)(A)(v) ("Clery Act") is an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation; "**Dating violence**," as defined by 34 U.S.C. 12291(a)(10) is violence committed by a person who is or who has been in a social relationship of a romantic or intimate nature with the Complainant.*

*The existence of such a relationship shall be determined based on the Complainant statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship;* **"Domestic violence,"** *as defined by 34 U.S.C. 12291(a)(8) is defined as a crime of violence committed by a former or current spouse or intimate partner of the Complainant; by a person with whom the Complainant shares a child in common; by a person who is cohabitating with, or has cohabitated with, the Complainant as a spouse or intimate partner; by a person literally situated to a spouse of the Complainant under the domestic or family violence laws of Florida, or by any other person against an adult or youth Complainant who is protected from that person's acts under the domestic or family violence laws of Florida; or* **"Stalking"** *as defined in 34 U.S.C. 122919(a)(30) is defined as engaging in a course of conduct directed at a specific person that will cause a reasonable person to fear for the person safety or the safety of others or suffer substantial emotional distress.*

5. **Statutory rape** is sexual intercourse with a person who is under the statutory age of consent as defined by state law.  In Florida, the age of consent for sexual activity is 18. [2]

6. **Consent** refers to words or actions that a reasonable person would understand as agreement to engage in the sexual conduct at issue. A person may be incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. A person who is incapacitated is not capable of giving consent.  Under Florida Statutes, Section 794.011, the specific definition of consent in relation to sexual battery is intelligent, knowing and voluntary consent; does not include coerced submission; and shall not be deemed or construed to mean the failure by the alleged victim to offer physical resistance to the offender.

7. **Incapacitated** refers to the state where a person does not understand and/or appreciate the nature or fact of sexual activity due to the effect of drugs or alcohol consumption, medical condition, disability, or due to a state of unconsciousness or sleep.

---

[2] The age of consent to engage in sexual conduct in Florida is 18.  Engaging in sexual conduct with a person under 18 years of age may constitute a crime.  Regardless of whether sexual conduct constitutes sexual harassment or a crime, the District's *Code of Student Conduct* prohibits sexual conduct on school grounds and may prohibit sexual conduct off campus when it causes a substantial disruption to the school environment.

8. **Scope of education program or activity** is defined to include the locations, events or circumstances within the United States, over which the District exercises substantial control. The school must have substantial control over both the Respondent and in the context in which the sexual harassment occurs.

9. **Deliberate Indifference** is defined as a response to sexual harassment that is clearly unreasonable in light of the known circumstances.

10. **Actual Knowledge** is defined as notice of sexual harassment or allegations of sexual harassment to a District's Title IX Coordinator or any official of the district who has the authority to institute corrective measures on behalf of the recipient or to any employee of an elementary or secondary school.  Once a school receives notice, it must respond and take action whether a formal Complaint is filed or not.

11. **Supportive Measures** are defined as non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent before or after the filing of a formal Complaint or where no formal Complaint has been filed. Such measures are designed to restore or preserve equal access to the District's education program or activity without unreasonably burdening the other party, including measures design to protect the safety of all parties or the District's educational environment, or deter sexual harassment. Supportive measures may include counseling, extension of deadlines or other course related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work locations, increased security and monitoring of certain areas of the campus, or other similar measures deemed appropriate under the circumstances.

12. **Formal Complaint** is defined as a document filed by a Complainant or signed by the Title IX Coordinator alleging sexual harassment against a Respondent and requesting that the school district investigate the allegations of sexual harassment.  The Title IX Coordinator may sign and therefore initiate a formal Complaint in the event that the Complainant does not, but the Title IX Coordinator will consider the Complainant's wishes and other attending circumstances in exercising that authority.

13. **Relevant Evidence** is defined as evidence that has value in proving or disproving a fact at issue. Evidence of the Complainant's sexual behavior or predisposition may not be deemed relevant unless it is:  1) offered to prove that someone other than the Respondent committed the conduct alleged, or 2) concerns specific incidents of the Complainant's sexual behavior with respect to the Respondent and is offered to prove consent.

14. **Inculpatory Evidence** is evidence that tends to establish a Respondent's responsibility for alleged sexual harassment.

15. **Exculpatory Evidence** is evidence that tends to clear or excuse a Respondent from allegations of sexual harassment.

16. **Days** as used in this manual, means business days (i.e. days that the School Board is open for normal operating hours) unless expressly stated otherwise.

17. **Party** refers to a Complainant or a Respondent.

18. **Preponderance of Evidence** is the greater weight of evidence or evidence which makes an allegation more than likely true.

II.    **Title IX Team Roles**

A.    **District Title IX Coordinator**

The District's Title IX Coordinator is generally responsible for:

- Training Investigators, Decision-Makers and Appellate Decision-Makers
- Receiving reports related to sexual harassment
- Offering supportive measures
- Making initial fact assessments
- Informing Complainants of the process for filing a formal Complaint
- Reviewing formal Complaints to determine whether they meet the definition of sexual harassment
- Providing Notice of Allegations contained in a formal Complaint of sexual harassment
- Helping investigators develop an investigation strategy
- Guiding timeline compliance, recordkeeping
- Acting impartially, by avoiding pre-judgment of the facts at issue, conflicts of interest, and bias
- Monitoring implementation and efficacy of supportive measures and remedies
- Supervising all facets of the grievance process pertaining to any report of sexual harassment

The Title IX Coordinator is authorized to coordinate the School Board's response to allegations of sexual harassment and related retaliation. The Title IX Coordinator delegates tasks to Deputy Title IX Coordinators as appropriate.[3]  The Title IX Coordinator and Deputy Title IX Coordinators work with school site Title IX Liaisons to receive reports and Complaints of sexual harassment, provide notice of such Complaints, offer supportive measures and promptly investigate Complaints.  CRC works with administrators to coordinate the implementation of effective remedies related to sexual harassment.

---

[3] Throughout this Manual, the term "Title IX Coordinator" refers to the District's Title IX Coordinator or any member of the Title IX Team to whom the Title IX Coordinator delegates a task of the Title IX Coordinator under this Manual.

B.   **Investigators**

Deputy Title IX Coordinators, CRC Investigators, and Title IX Liaisons cooperate on investigations of Title IX sexual harassment Complaints. Investigators are generally responsible for:

- Investigating formal Complaints of sexual harassment
- Conducting thorough, reliable and prompt investigations
- Acting impartially, by avoiding pre-judgment of the facts at issue, conflicts of interest, and bias
- Reviewing the M-DCPS *Title IX Sexual Harassment Manual* to ensure that all evidence has been gathered for Decision-Makers
- Understanding relevant evidence
- Providing the investigative report to the Title IX Coordinator and Decision-Maker
- Any tasks related to reports and Complaints of sexual harassment as delegated by the Title IX Coordinator or their Principal

1.   **Deputy Title IX Coordinators**

More specifically, Deputy Title IX Coordinators assist the District Title IX Coordinator with duties such as:

- Any tasks related to reports and Complaints of sexual harassment as delegated by the Title IX Coordinator

2.   **CRC Investigators**

CRC Investigators assist with duties such as:

- Investigating formal Complaints of sexual harassment using the procedures in this Manual

- Providing the parties and their Advisors with all evidence and considering their written responses prior to completion of the investigative report

- Drafting an investigation report that fairly summarizes all relevant evidence

3.     **School Title IX Liaisons**

Additionally, School site Title IX Liaisons are Assistant Principals who have been trained and are responsible for:

- Facilitating reporting of allegations of sexual harassment
- Facilitating implementation of supportive measures
- Facilitating the flow of information between the school site and the District's Title IX Office with regard to all grievance procedures
- Any tasks related to reports and Complaints of sexual harassment as delegated by the Title IX Coordinator and/or their Principal

C.     **Decision-Makers**

Decision-Makers are responsible for:

- Receiving the investigative report and evidence from the investigator
- Reviewing evidence to determine relevance
- Facilitating a question and answer process for the Complainant and Respondent that consists of relevant evidence only
- Explaining any decision to exclude a question as not relevant
- Basing their determination of responsibility only on statements of parties or witnesses who submitted to the question and answer process, but not drawing inferences about the determination of responsibility based solely on a party's or witness's absence from the question and answer process
- Using the definitions contained within this Manual and applicable School Board Policies to render a decision based on the relevant evidence presented
- Providing the parties with a written determination regarding the Respondent's responsibility or non-responsibility for sexual harassment

D.     **Appellate Decision-Makers**

Appellate Decision-Makers are responsible for:

- Understanding the pertinent definitions, procedures, bases for the finding of responsibility or non-responsibility, and grounds for dismissal and appeal
- Responding to the appeal in a timely manner
- Coordinating any follow up procedures necessary to resolve the grounds for appeal
- Providing the parties with a written determination on the appeal

E.   **Informal Resolution Process Facilitators**

Informal Resolution Process Facilitators are responsible for conducting the informal resolution process offered by the Title IX Coordinator and mutually agreed to by the parties after a formal Complaint has been filed.  They serve as neutral facilitators between the parties trained on: the definition of sexual harassment as provided in this Manual; how to conduct informal resolution processes; and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, or bias; and how to keep the informal resolution process confidential from the rest of the Title IX Team until a formal agreement is reached.

Informal Resolution Process Facilitators are also responsible for drafting agreements mutually agreed to by the parties once a resolution is reached and having both parties voluntarily sign the agreement.  Informal resolution is not permissible with regard to Complaints alleging sexual harassment by an employee against a student.

F.   **Evaluating Bias and Conflicts of Interest**

All members of the Title IX Team must ensure the investigation and decision-making processes are free from conflict of interest and bias, as these may be grounds for an appeal on the case.  Every member of the Title IX Team should assess for any bias or conflicts of interest before and during the Title IX process. Circumstances that tend to demonstrate <u>bias</u> include:

- **Direct**: an interest directly tied to the parties, their family or career
- **Indirect**: the interest of a group, person or business of one of the parties is or was closely connected (e.g. a friend of a friend, or a previous relationship between those close to a member of the Title IX team or a party)
- **Financial**: monetary gain or loss based on the outcome of the investigation
- **Non-financial**: favoritism or prejudice resulting from friendship, animosity, or other personal involvement with another person or group

A <u>conflict of interest</u> is when a member of the Title IX Team is in a position to derive personal benefit from actions or decisions made in their official capacity.

If a member of the Title IX Team believes they may have a conflict of interest or bias, it should be brought to the attention of the Title IX Coordinator promptly (i.e. before taking any action on a case if possible).  If the Title IX Coordinator has a conflict of interest or bias, the Assistant Superintendent of Human Capital Management must be notified for assignment of the matter to a Deputy Title IX Coordinator with direct reporting to the Assistant Superintendent of Human Capital Management, and the Title IX Coordinator must refrain from involvement in the specific matter.

III.   **Sexual Harassment Reporting Procedures**

A.   **Reporting Sexual Harassment**

All persons should report sexual harassment as soon as they become aware of it. Any person may report sexual harassment (whether or not the person reporting is the alleged victim of conduct that constitutes sexual harassment) to any employee of the District.  However, persons are strongly encouraged to report allegations of sexual harassment to an employee who has the authority to institute corrective measures, such as the school Principal or the District Title IX Coordinator, in person, by mail, by telephone, or by electronic-mail, or by any other method that results in the verbal or written report being received by those persons.

The District's Title IX Coordinator is located in the Office of Civil Rights Compliance (CRC) at:

155 N.E. 15th Street, Suite P104E
Miami, FL  33132
(305)995-1580
(305) 995-2047 (facsimile)
crc@dadeschools.net

The Complainant's identity must be kept confidential from the Respondent until a formal Complaint is filed or if a particular supportive measure requires the Complainant's identity to be shared with the Respondent (e.g. a no-contact order). If the Respondent is the Principal or Work Site Supervisor, the reporter should contact the Title IX Coordinator directly.

All Principals and Work Site Supervisors (or designees) must promptly notify the District Title IX Coordinator (or designee if the Coordinator is unavailable) and the Title IX Liaison at their work location about a report of sexual harassment reported to them.  All employees who make a report to the CRC Office should keep a record of the date, time, method, and person receiving the report.

**Please note that all M-DCPS employees are mandatory reporters pursuant to federal Title IX regulations.**

A person may pursue criminal charges simultaneously with filing a formal Complaint.  A person does not need to wait until the Title IX investigation is complete before contacting law enforcement.  Questions or complaints relating to Title IX may also be addressed to the Assistant Secretary of the U.S. Department of Education at any time.

B.     **Employee Reporting Responsibilities**

Any School Board employee who has independent knowledge or receives an allegation or report of conduct that might constitute sexual harassment must **promptly** relay that information to the Principal, Work Site Supervisor, or District Title IX Coordinator or the designees for those individuals.  Principals and Work Site Supervisors (or their designees) must **promptly** notify the District Title IX Coordinator (or designee if the Coordinator is unavailable) and the Title IX Liaison at their work location about a report of sexual harassment reported to them.  All employees who make a report to the CRC Office should keep a record of the date, time, method, and person receiving the report.  A School Board employee who fails to promptly report an incident of sexual harassment of which the employees is aware may be subject to disciplinary action, up to and including termination.  All persons should report sexual harassment as soon as they become aware of it.

C.     **Additional Steps for Employees Who Receive a Report of Sexual Harassment**

1.     Ensure the safety and well-being of the Complainant.
2.     If there is an emergency, call 911.
3.     If you suspect child abuse or neglect, immediately call the Florida Department of Children and Families (DCF) Abuse Hotline at 1-800-96-ABUSE (1-800-962-2873) or submit a report online at https://reportabuse.dcf.state.fl.us/Child/ChildForm.aspx
4.     Notify the Principal and the Title IX Liaison or Work Site Supervisor that a report has been made to the Title IX Coordinator if you have not made the report the report directly to them.
5.     If the report involves an allegation of sexual harassment by an adult against a student or indicates allegations of a Level 3 or higher under the Code of Student Conduct, notify Schools Police at 305-995-COPS.
6.     **Always call the M-DCPS Office of Civil Rights Compliance and speak to the Title IX Coordinator or a Deputy Title IX Coordinator regarding any allegation of sexual harassment.**

IV.   **Initial Grievance Procedures**

M-DCPS is committed to promptly and equitably resolving Complaints alleging sexual harassment. The District will treat both Complainants and Respondents equitably.

At all stages of the grievance process, all members of the Title IX Team as described above, shall assess whether a conflict of interest or bias exists.  Should a member of the Title IX Team identify a conflict of interest or bias, they shall notify the Title IX Coordinator promptly (i.e. before taking any action on a case if possible).  If the Title IX Coordinator has a conflict of interest or bias, the Title IX Coordinator's immediate supervisor must be notified for assignment of the matter to a Deputy Title IX Coordinator with direct reporting to the Title IX Coordinator's immediate supervisor, and the Title IX Coordinator must refrain from involvement in the specific matter.

The following procedures apply to reports of sexual harassment as defined in this Manual. All steps taken during the application of grievance procedures should be documented. School administrators <u>must</u> call CRC before undertaking any of the following steps.

A.   **Initial Steps in Response to Allegations of Sexual Harassment**

1.    The Title IX Coordinator and Title IX Liaison must log the date, time and method of the report, as well as the person who received and transmitted the report.[4]

2.    The Title IX Coordinator and/or Deputy Title IX Coordinator, in conjunction with the school site Title IX Liaison, will assess the initial facts of the report.

3.    The District Title IX Coordinator (or designated Deputy Coordinator or Title IX Liaison) shall explain the process for filing a formal Complaint.

4.    The   Title IX Coordinator and/or designated Deputy Coordinator, in coordination with the Title IX Liaison, shall provide the Complainant with a copy of the formal Title IX Complaint form or refer the Complainant to the District's website to download a copy of the Complaint form.

---

[4] It is also advisable for any individual who makes a report of sexual harassment to log this information in their own records.

B. **Supportive Measures Offered to the Complainant and Respondent, As Needed, to Ensure Equal Access to the Educational Program or Activity**

Upon receiving a report of sexual harassment, the Title IX Coordinator shall promptly contact the Complainant (including the parent/guardian for students under age 18) to discuss the availability of supportive measures that are designed to ensure equal access the educational program, whether or not the Complainant intends to or actually files a formal Complaint.  If supportive measures are not provided to the Complainant, the Title IX Coordinator shall document the reasons why such a response was not clearly unreasonable in light of the known circumstances.

Supportive measures should also be offered to the Respondent if they are necessary to ensure equity in access to education programs or activities.  While a recipient is not obligated in every situation to offer supportive measures to a Respondent, if refusing to offer supportive measures to a Respondent (for instance, where a required proceeding under this Manual falls on a Respondent's final examination date results in a Respondent needing to reschedule the proceeding) would be clearly unreasonable in light of the known circumstances, such a refusal could also violate Title IX.

Supportive measures must be:
- Non-disciplinary, non-punitive
- Individualized
- Meant to restore or preserve equal access to educational programs and activities
- Implemented without unreasonably burdening the other party
- Designed to protect safety of parties or environment or deter sexual harassment
- Confidential to the extent that maintaining confidentiality would not impair the ability to provide the supportive measures

Supportive measures include, but are not limited to:
- Counseling
- Academic support, such as extensions of time or other course-related adjustments
- School campus escort services
- Safety plan
- Class schedule modifications
- Transportation accommodations
- Restrictions on contact between the parties
- School transfers

- Curriculum lessons that contain information about sexual harassment and bullying
- District Student Advocate
- Referrals to outside support agencies
- Employee job/office reassignments
- Referrals to Employee Assistance Program (EAP)

All supportive measures should be documented on the appropriate Student Case Management Forms and/or in the employee file, as well as in the Title IX case file.

C.   **Emergency Removals**

The Principal may institute an emergency removal of a student Respondent after an individualized safety and risk analysis determining that there is an immediate threat to the physical health or safety of any student or other individual.  The Principal must contact the Title IX Coordinator after providing notice to the Respondent of the emergency removal.  The principal must initiate a Threat Assessment Team (TAT) to review the determination.  The TAT process constitutes the Respondent's opportunity to challenge the emergency removal. Principals may contact the Mental Health Services Department at (305) 995-1020 for support as needed.  If a student with a disability receives an emergency removal under this section that, independently or combined with prior removals, amounts to a pattern of removals for more than **ten (10) days**, a manifestation determination must be conducted.

Employees may also be removed and placed on alternative assignment by the Office of Professional Standards or a Region Office, with or without a threat to the physical health or safety to a student.

V.   **Formal Grievance Process**

 A.   **Formal Complaints**

A formal Complaint may be filed with the Title IX Coordinator[5] in person, by mail, or by electronic mail:

155 N.E. 15th Street, Suite P104E,
Miami, FL  33132
(305)995-1580
(305) 995-2047 (facsimile)
crc@dadeschools.net

The formal Complaint must contain verification that the Complainant (or parent/guardian if under 18 years old) is the person filing the formal Complaint, such as a verifiable physical or digital signature.

When the Title IX Coordinator or designee receives a formal Complaint or signs a formal Complaint, she/he must make a substantive determination of whether the conduct alleged meets the definition of sexual harassment (quid pro quo, unwelcome conduct, or sexual assault, in a program or activity over which the School Board had substantial control over both the Respondent *and* the context in which the harassment occurred).

If the alleged conduct meets the definition of Title IX sexual harassment, the Title IX Coordinator will retain jurisdiction and assign it for investigation pursuant to this Manual.

The Title IX Coordinator may consolidate formal Complaints if the allegations of sexual harassment are against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one party against another party, where the allegations of sexual harassment arise out of the same facts or circumstances.

---

[5] If a Title IX Complaint involves allegations of sexual harassment by or involving the Title IX Coordinator, the Complainant should submit the formal Complaint to the Assistant Superintendent of Human Capital Management, who will designate another person to serve in the place of the Title IX Coordinator for the limited purpose of implementing the grievance process with respect to that formal Complaint.

If the conduct does not meet the definition of sexual harassment, the Title IX Coordinator shall return the matter to the Principal or Work Site Supervisor for processing under any other applicable School Board policies as set forth below.

It is a violation of School Board policy for a Complainant, Respondent and/or witnesses to knowingly make false statements or knowingly submit false information, including intentionally making a false report of sexual harassment or submitting a false Complaint form. The School Board will not tolerate such conduct which is a violation of the Code of Student Conduct for students and/or the Code of Ethics and/or Standards of Ethical Conduct for employees.

B.   **Notice of Allegations**

Upon receipt of a formal Complaint, the Title IX Coordinator shall provide written notice to all known parties (Complainants and Respondents), which includes:

- Notice of the grievance process, including the right to informal resolution (if agreed to by both parties) and the applicable standard of evidence (preponderance of the evidence)
- Notice of the allegations with sufficient time to prepare a response before any initial interview, at least **two (2)** days prior
- Sufficient details known at the time, including: the identities of the parties (if known), a detailed description of the incident, date and location of the incident (if known)
- A statement that the Respondent is presumed not responsible and that a determination regarding responsibility will be made at the conclusion of the grievance process
- Notice that the parties have the right to an advisor of their choice, who may be an attorney
- The rights of the students to receive interim supportive measures, if needed to ensure equity in access to educational programs or activities
- Notice of the presumption that the Respondent is not responsible until the investigation is concluded
- Applicable School Board Policies and Procedures alleged to have been violated
- Notice that parties may inspect and review evidence prior to the completion of the investigative report.
- A statement from the provision of the District's *Code of Student Conduct* and/or School Board Policy that prohibits knowingly making false statements or knowingly submitting false information (if any)
- Subsequent notice(s) as necessary if new allegations are discovered during the investigation

C.    **Advisors**

Parties (Complainants and Respondents) have the right to have an advisor of their choice to assist them throughout the process, including attending meetings and interviews.  An Advisor may be an attorney but is not required to be an attorney. An Advisor is someone permitted to accompany a party during the grievance process in addition to a parent/guardian, an employee's union representative, or a support person (i.e. paraprofessional) if needed to support an individual with a disability. The District is not responsible for providing the parties with Advisors, except for students in the District's post-secondary schools who are entitled to a live hearing and do not have an advisor.

D.    **Formal Complaint Dismissals**

1.    <u>**Mandatory Dismissals**</u>

The Title IX Coordinator **shall** dismiss a formal Complaint, or allegations therein, if the following conditions are <u>not</u> met:

   a.   the definition of sexual harassment,
   b.   against a person in the United States, and
   c.   occurring in one of the School Board's educational programs or activities, over which the School Board has substantial control of the program or activity and the Respondent.

The Title IX Coordinator shall provide written notice of a mandatory dismissal simultaneously to the parties, clearly stating the reasons for the dismissal.

The Title IX Coordinator shall refer allegations**, where a student is the Respondent**, that do not meet the definition of sexual harassment to the Principal. If any of the dismissed allegations meet the definition of discrimination or harassment based on another protected category (other than sexual harassment), the procedures outlined in School Board Policy 5517.02, *Discrimination/Harassment Complaint Procedures for Students* must be applied by the Principal.   If the dismissed allegations do not meet the definition of discrimination or harassment under any protected category (sexual harassment or any others), the Principal shall close it or investigate it in accordance with School Board Policies 5540, *Investigations Involving Students* and 5500, *Code of Student Conduct*, as applicable, once the **three (3)** day deadline to appeal the dismissal has passed.

Title IX Complaint allegations, **where an employee is the Respondent**, that do not meet the definition of sexual harassment but <u>do</u> meet the definition of discrimination or harassment under another protected category (other than sexual harassment), will be investigated by CRC pursuant to School Board Policies 1362.02, 3362.02, or 4362.02, *Discrimination and Harassment Complaint Procedures*. Any other Complaint allegations dismissed by the Title IX Coordinator shall be closed and/or referred for investigation pursuant to the *Personnel Investigative Model (PIM) Manual*, as applicable.

2. <u>**Discretionary Dismissals**</u>

The Title IX Coordinator **may** dismiss a formal Complaint or allegations therein if at any time during the investigation or hearing:

a. the Complainant informs the Title IX Coordinator in writing that the Complainant desires to withdraw the formal Complaint or allegations therein,
b. the Respondent is no longer enrolled in or employed by the District, or
c. specific circumstances prevent the school from gathering sufficient evidence to reach a determination, such as when the Complainant stops cooperating for an unreasonably long period.

The Title IX Coordinator shall provide written notice of a discretionary dismissal simultaneously to the parties, clearly stating the reasons for the dismissal.

**\*\*\*Under no circumstances should a formal Complaint be dismissed without consulting with the District's Title IX Coordinator.**

E. **Informal Resolution Process**

Informal Resolution Process Facilitators are available to assist parties who agree in writing to resolve formal Complaints through the informal resolution process. The goal of the informal resolution process is to stop inappropriate behavior and facilitate resolution through informal means, if possible. **This informal resolution process is not required as a prerequisite to the filing of a formal Title IX Complaint, cannot be offered before the filing of a formal Title IX Complaint, and is completely voluntary.** The option of informal resolution, if offered, remains available to the parties until a determination of responsibility or non-responsibility is made.

Both parties must agree in a signed writing to participate in the informal resolution process. <u>The informal resolution process **will not** be made available in cases involving allegations of sexual harassment of a student by an adult or employee.</u>

The Title IX Coordinator will offer an informal resolution process to both parties in cases where informal resolution is deemed appropriate. In doing so, the Title IX Coordinator will provide the parties a written notice[6] disclosing:

- The requirement that both parties provide voluntary and written consent to the informal resolution process
- That, prior to agreeing to resolution, any party has the right to withdraw from the information resolution process and resume the grievance process with respect to the formal Complaint
- That records that may be maintained or shared
- That the process and outcome must be kept confidential by both parties, except as may be required to effectuate the outcome
- That both parties will be asked to sign an agreement if a resolution is reached
- That the parties are precluded from resuming a formal Complaint arising from the same allegations once a resolution agreement is executed
- Other requirements of the informal resolution process as set forth below

Within **five (5) days** of receiving the signed consent of both parties to participate in the informal resolution process, the Informal Resolution Process Facilitator ("Facilitator") will contact both parties separately to begin the informal resolution process.  If a joint resolution conference is requested and/or deemed appropriate by the Title IX Coordinator, it will be held virtually unless otherwise agreed by the parties and approved by the Title IX Coordinator.  Resolution conferences will be scheduled for **one (1) business day** absent extenuating circumstances.

The parties may be accompanied by an Advisor of their choice for the informal resolution conference.  However, the Advisor may not participate directly in the discussions with the other party or the Facilitator, and may only communicate directly with the party whom they are accompanying upon a request by the party to  take a break and caucus with their Advisor.  **A party's failure to attend a jointly scheduled informal resolution conference will be treated as that party's decision to withdraw from the process and request that the matter be referred back to the grievance process.** Resolution conferences may be rescheduled however, if the party makes a reasonable request to reschedule that is agreeable to the other party, the Facilitator, and the Title IX Coordinator. Agreements to reschedule must be documented.

At the informal resolution conference, the Facilitator will act as a liaison between the parties, who will not communicate with one another unless specifically agreed otherwise. The goal of the informal resolution conference is to produce a resolution agreement that resolves the formal Title IX Complaint in its entirety. During the

---

[6] A Respondent must receive the Notice of Allegations prior to or with the informal resolution process notice.

conference, the parties are expected to participate in discussions in good faith, to consider offers or suggestions with an open mind, to work constructively toward a mutually acceptable resolution, and to implement a resolution agreement in good faith.

The informal resolution process will result in an informal resolution agreement drafted by the Facilitator and signed by both parties. This agreement shall contain a statement that the parties voluntarily agreed to the informal resolution process, the remedies agreed to by the parties and approved by the District, a statement that the parties agree to keep the discussions and agreement confidential, except as may be required to effectuate the outcome, and a statement that the resolution agreement is binding on the parties and fully resolves the formal Complaint. The resolution agreement must be signed by both parties in order to take effect.

Once a resolution agreement is reached, the Facilitator will transmit the agreement to the Title IX Coordinator, who will then notify the parties and applicable members of the Title IX Team that the formal Complaint has been resolved.

Informal Resolution Process Facilitators are to keep all aspects of the informal resolution process confidential during its pendency. This means that any notes taken by the Facilitator and/or any records or other documents offered or provided by either party to the Facilitator during this process will be kept in a separate file and will not be shared with the Title IX Team members assigned to investigate the formal Complaint, make a finding of responsibility or non-responsibility, or decide an appeal.

Appeals from an informal resolution process cannot be taken. If the resolution agreement is breached, corrective action may include, but not be limited to, dissolving the remaining provisions of the agreement, disciplining the breaching party, and/or reviving the grievance process.

There is no set time limit for an informal resolution process to be completed.  The informal resolution process is good cause for a delay of the investigation.  The grievance process and all related deadlines are suspended while the informal resolution process remains pending.

If one of the parties has requested to withdraw from the informal resolution process, the formal grievance process shall resume.

F.     **Investigations**

1.     **Timelines**

All investigations conducted pursuant to this Manual must be conducted in a reasonably prompt manner.  The timeline begins from the date when the Complainant requests an investigation by filing a formal Complaint or the Title IX Coordinator signs a formal Complaint.  Any temporary and limited delays in the investigatory process must be documented.

A Title IX investigation may only be delayed for documented good cause.  Good cause includes, but is not limited to, the absence of a party, absence of a party's advisor, concurrent law enforcement activity, or accommodations for language barriers and disabilities.

The District will seek to conclude the grievance process, including resolving any appeals, within ninety **(90) calendar days** of receipt of the formal Complaint. The informal resolution process may not be used by the Complainant or Respondent to unduly delay the investigation and determination of responsibility. The Title IX Coordinator will provide the parties with reasonable updates on the status of the grievance process.

2.     **Law Enforcement Investigations**

Allegations of sexual harassment may be investigated by law enforcement officials concurrently to a sexual harassment investigation that is conducted after the filing of a formal Title IX Complaint.  Depending on the circumstances, a law enforcement investigation may constitute good cause to delay a CRC investigation.  The Investigator/Title IX Liaison must contact law enforcement to determine whether a pending law enforcement investigation should delay the Title IX investigation.  The investigator must document the basis for the delay.

3.     **Notice of Rights**

Upon commencement of a formal Title IX investigation, Complainants and Respondents shall be provided with a Notice of Rights.  This notice informs parties of the following:

- Right to present witnesses, including fact and expert witnesses
- Right to present in inculpatory and exculpatory evidence
- Right to discuss allegations under investigation without restriction
- Right to gather and present relevant evidence without restriction
- Right to be accompanied to any related meeting or proceeding by an advisor of their choice, who may be, but is not required to be, an attorney[7]
- Right to written notice of the date, time, location, participants, and purpose of investigative interviews or other meetings, with sufficient time to prepare, no less than **two (2) days** in advance
- Right to inspect and review evidence and a draft of the investigative report before finalized

4.    **Notice of Investigative Interview**

Parties and witnesses should be interviewed as soon as possible but not before the Notice of Allegations and Notice of Interview are sent.  At least **two (2) days** prior to the interview or meeting, the parties shall be notified of the date, time and location of their interview pursuant to this manual.  The notice must also include who will be present for the interview. This notice must give sufficient time for the parties to prepare for the interviews.  Good faith requests to reschedule will be documented and considered by the investigator.  Any extensions of the time must be granted to the parties equally.

5**.**    **Interactions with FERPA**

The obligation to comply with Title IX regulations is not obviated or alleviated by the Family Educational Rights and Privacy Act (FERPA).  Consequently, information about other students may be shared with the parties and their parents/guardians, as well as Advisors and witnesses involved with a Title IX Complaint, without a FERPA waiver, provided that the information is being shared for a reason mandated by the Title IX regulations, as set forth in this Manual.

---

[7] For K-12 students, the participation of the Advisor is limited to accompanying the party to any meeting or interview, but not participating directly in the meeting or interview by asking questions or directing discussions to anyone but the party whom the Advisor is accompanying.  The Advisor's role shall be to advise the party privately upon request of the party to break or caucus with his or her Advisor.  For adult students, the Advisor's role is limited in the same way, except as set forth in Section G.2. related to live hearings.

6.    **Interviews and Investigation**

Investigators should schedule interviews with parties and witnesses as soon as possible after receiving the Complaint and giving proper notice to all parties.  Good cause delays must be documented.  A party's continued refusal to cooperate may result in dismissal of the Complaint or in the investigation report being completed without that party's input.  The burden of proof and of gathering evidence rests with the District, not on the parties.  Investigators must ensure the following:

a.  Investigators should interview the Complainant, Respondent and witnesses by asking questions relevant to the allegations and documenting their responses in writing.

b.  Interviewees shall be provided with a copy of their interview statement (questions and answers) to review and sign. The interview statement documented by the investigator shall be signed by the party or witness it was collected from and dated.  Refusals to sign shall be noted by the investigator and dated.

c.  If a party or a witness believes that something has not been properly documented by the investigator, they may append the original interview statement with an additional signed statement clarifying and/or correcting what has been documented by the investigator.

d.  During their interview, parties and witnesses may provide any evidence and/or name other witnesses who may have information relevant to the allegations.

e.  All evidence gathered during a Title IX investigation shall be documented as it is received.

f.  Every effort should be made by the investigator to verify and/or authenticate evidence.

g.  There shall be no prohibition on the parties to discuss the case or on gathering evidence.

h.  The investigator should make note of any information they attempt to but are unable to gather.

i.  Follow-up interviews may be conducted as needed with appropriate notice provided to the parties.

j.  Parties and witnesses shall be allowed to review the written record of their interview.

k.  Records of the interviews conducted, and evidence collected during an investigation, shall be maintained in the case file by the investigator.

l.  The District is not permitted to access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional acting in the professional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the party provides a district with voluntary, written consent to do so.

m. Investigators shall provide the parties with regular status updates on their case.

7.   **Refusals to Participate in Investigations or Cross-Examination**

A party or witness may refuse to participate in a Title IX investigation.   The investigation may continue, however, and could result in a dismissal or an outcome based on other available evidence.   The Decision-Maker cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's absence from the live hearing or refusal to answer cross- examination. However, in reaching a determination regarding responsibility, the Decision-Maker must not rely on any statement of a party or witness who does not submit to cross-examination or the written question and answer process.

8.   **Investigative Reports**

The investigative report is the comprehensive document drafted summarizing the investigation.   The investigative report should include:

- A description of the allegations

- A description of all written statements and results of interviews with parties and witnesses
- An assessment of credibility of the parties and witnesses (pointing out corroborating evidence or issues with credibility)
- Summary of the relevant evidence and other information collected (e.g. copies of text messages, emails, social media posts, videos, surveillance, etc.)
- Unsuccessful attempts to gather evidence and interview witnesses
- The investigative report should <u>not</u> include a finding made by the investigator

9.   **Review of Evidence and Draft Report by Parties**

a. Prior to the finalization of the investigative report, the evidence related to the allegations and a draft of the investigative report must be sent simultaneously to each party and their Advisor, if applicable.   The report may be sent in electronic form or hard copy.   The information sent should also include <u>all</u> evidence, including all inculpatory and exculpatory evidence, whether or not such evidence will be relied upon by the Decision-Maker.

b. The parties shall be allowed **10 calendar days** from receipt[8] of the draft report to provide a signed, written response to the investigator.  Neither party is required to submit a response.

c. Prior to finalizing the report, the investigator shall consider any written responses provided by the parties and amend the report as appropriate.

10. **Transmission to Decision-Maker**

The Title IX Coordinator shall transmit the Final Investigative Report to the Decision-Maker.  Parties shall receive a Notice of Appointment of Decision-Maker.  The investigator shall not make any recommendations to the Decision-Maker on what the findings should be.

G. **The Decision-Making Process**

District administrators identified by School Operations and the Office of Human Capital Management will serve as Decision-Makers.  The Decision-Maker shall issue a Final Determination Report after applying the procedures below. The Decision-Maker shall make a determination of responsibility or non-responsibility and recommend any disciplinary sanctions to be imposed, as well as any other remedies designed to restore or preserve equal access to the education program or activity.  The Decision-Maker may delay the issuance of the Final Determination Report for good cause.  Any extensions of the timeframes contained herein must be granted to the parties equally.

1. **Written Question and Answer Process for M-DCPS K-12 Programs**

Once the Title IX Coordinator transmits to the Final Investigative Report to the Decision-Maker, the Decision-Maker shall consider the contents of the report in accordance with the applicable standard of preponderance of the evidence.  Section G.2., entitled "Determinations in Adult and Career Technical Education Programs," provides specific procedures related to live hearings in the decision-making process applicable to the District's post-secondary programs.

---

[8] If the report is provided in electronic mail format or hand-delivery, the date of receipt is considered to be the date sent by electronic mail or hand-delivered.  The investigator should request a confirmation or signature of receipt, but failure of the party to confirm receipt will not negate the receipt date being logged as the date provided.  If the report is sent by mail, the date of receipt is considered to be the date mailed, plus **three (3) days** added.

Upon receipt of the Final Investigative Report, the parties, their parents/guardians, or their advisors should submit any written, relevant questions that they want asked of any other party or witness to the Decision-Maker within **three (3) days**. Questions submitted and answers to the questions must be posed in a respectful manner (e.g. without using profanity or irrelevant ad hominem attacks). Harassing or abusive questions and answers will not be tolerated. Questions and answers must be presented in numbered format. Duplicative questions are not permitted. The Decision-Maker must review the questions and reserves the right to exclude any question deemed irrelevant pursuant to the definition of "relevance" provided in this Manual. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are: (1) offered to prove that someone other than the respondent committed the conduct alleged by the Complainant, or (2) if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

The Decision-Maker will send the relevant questions to the other party for that party's written answers to be submitted within **five (5) days**. Each party (or parent/guardian for students under age 18) must sign their answers swearing or affirming that their statements are true and correct.

Upon receipt of both parties written and signed responses, the Decision-Maker will allow **two (2) days** for limited follow-up questions and **two (2) days** for written answers. The other requirements for initial questions and answers outlined above apply to follow-up questions and answers.

Only the relevant questions and answers will be considered by the Decision-Maker in reaching a final determination of responsibility or non-responsibility. The Decision-Maker must provide the parties with a written explanation of excluded evidence (including questions and answers) in the Final Determination Report.

The Decision-Maker shall use the Final Determination Report to render a decision on whether the Respondent is responsible for the conduct alleged in the Complaint. The Decision-Maker cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's refusal to answer questions. However, in reaching a determination regarding responsibility, the Decision-Maker must not rely on any statement of a party or witness who does not submit to the written question and answer process.

2. **Hearings for M-DCPS Adult and Career Technical Education Programs**

Live hearings are required for the decision-making portion of the Title IX process for allegations involving Adult and Career Technical Education Programs. The Title IX Coordinator will contact the parties with the date, time, and location (or format if virtual) of the hearing. Any good cause extensions of the time for the hearing must be granted to the parties equally.

At the hearing, the Decision-Maker shall permit each party's Advisor to ask the other party and any witnesses all relevant questions and follow up questions, including those which challenge credibility. Such cross-examination at the hearing must be conducted directly, orally, and in real time by the party's Advisor and never by a party personally. Questions and answers to the questions must be posed in a respectful manner (e.g. without using profanity or irrelevant ad hominem attacks). Harassing or abusive questions and answers will not be tolerated. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the complainant's prior sexual behavior are offered to prove that someone other than the respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent. Before a Complainant, Respondent, or witness answers a cross-examination or other question, the Decision-Maker must first determine whether the question is relevant and explain any decision to exclude a question as not relevant. Notwithstanding anything to the contrary in this Manual, the Decision-Maker shall not restrict the extent to which Advisors may participate in the hearings.

If a party does not have an Advisor present at the hearing, the District will provide, without fee or charge to that party, an advisor of the District's choice, who may be, but is not required to be, an attorney, to conduct cross-examination on behalf of that party. The Decision-Maker cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's absence from the live hearing or refusal to answer cross- examination. However, in reaching a determination regarding responsibility, the Decision-Maker must not rely on any statement of a party or witness who does not submit to cross-examination or the written question and answer process.

3. **Dissemination of Written Determinations**

The Decision-Maker will provide the Final Determination Report to the Title IX Coordinator, who will disseminate the written determination to the parties simultaneously, that contains:

a.  The allegations potentially constituting sexual harassment
b.  A description of the grievance process contained herein
c.  Findings of fact supporting the determination
d.  Conclusions regarding the application of School Board policies and/or the *District's Code of Student Conduct* to the facts
e.  A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility based on a preponderance of the evidence
f.  Any disciplinary sanctions imposed on the Respondent
g.  Whether remedies designed to restore or preserve equal access to the School Board's education program or activity will be provided to the Complainant, including continued supportive measures
h.  The School Board's procedures and permissible bases for the Complainant and Respondent to appeal

H.  **Appeal Procedures**

Requests for appeals may be made by either party and shall be submitted directly to the Title IX Coordinator within **three (3) days** of the date of the final determination.  The request for appeal will be forwarded to an Appellate Decision-Maker.  If no appeal is filed, and **three (3)** days have passed, the decision becomes final. **No disciplinary remedies may be imposed until after the appeal has been heard or the time period for appeal has expired.**

Designated District administrators shall serve as Appellate Decision-Makers.

1.  **Grounds for Appeal**
    A request for appeal of the final determination must include one of the three enumerated grounds for appeal along with a detailed, fact-specific explanation of the basis of the appeal:

    •   Procedural irregularities that affected the outcome of the matter, including dismissal of a Complaint;
    •   Newly discovered evidence that could affect the outcome of the matter; and/or
    •   A conflict of interest or bias which affected the outcome of the matter.

2.  **Appellate Decision-Making**

    •   If the basis for the appeal is newly discovered evidence, the appellate Decision-Maker may delegate to the investigator(s) for authentication or additional investigation as needed
    •   The non-appealing party must be given written notice of the appeal and a chance to respond to information asserted in an appeal

- The parties' written statements in support of, or challenging, the determination of responsibility must be submitted within **three (3) days** after the Title IX Coordinator provides notice to the non-appealing party of the appeal

3. **Notice of Appeal Outcome**

- The Notice of Appeal Outcome will include:
  o The findings by the Appellate Decision-Maker (whether the Decision-Maker's findings and conclusions remain unchanged or overturned);
  o The rationale for the result; and
  o A brief summary of the evidence on which the decision is based, as appropriate.
- The determination on appeal becomes final on the date the Appellate Decision-Maker provides the parties with the written determination of the results of the appeal

I. **Discipline**

Student discipline shall be issued in accordance with the applicable District *Code of Student Conduct.* Employee discipline shall be issued in accordance with the applicable collective bargaining agreement.

1. **Student Discipline**

If the Decision-Maker determines the student Respondent is responsible for violating this policy, the Final Determination Report will include any disciplinary sanctions the District imposes on the Respondent. The Title IX Coordinator will notify the school site Principal for implementation of the remedies.

A manifestation determination is required by IDEA when considering the exclusion of a student with a disability that constitutes a disciplinary change of placement. The manifestation determination must take place **within 10 school days** of any decision to change the placement of a child with a disability because of a violation of the District's *Code of Student Conduct.*

2.    **Employee Discipline**

If the Decision-Maker determines an employee Respondent is responsible for violating this policy, the Final Determination Report will include any disciplinary sanctions the District imposes on the Respondent. The Title IX Coordinator will forward the Final Determination Report to the Office of Professional Standards for implementation of appropriate remedies.

3.    **Remedies**

If a determination of responsibility for sexual harassment is made against the Respondent, the District will provide remedies to the Complainant. The remedies will be designed to restore preserve equal access to the District's education program or activity. Potential remedies include, but are not limited to, individualized services including supportive measures. Remedies may also be disciplinary or punitive in nature against the Respondent.

J.   **Retaliation**

School Board Policy, federal and state law prohibit retaliation, including but not limited to intimidation, threats, coercion or discrimination against any individual for purposes of interfering with the rights or privileges secured by Title IX or its implementing regulations because an individual has made a report or complaint, testified, assisted, participated, or refused to participate in any discrimination or harassment investigation, proceeding or hearing. Complaints alleging retaliation may be filed using the procedures outlined in this manual.

Retaliation against a person for making a report of sexual harassment, filing a formal Complaint, or participating in an investigation and or hearing is a serious violation of this policy that can result in the imposition of disciplinary sanctions and/other appropriate remedies.

Exercise of rights protected under the First Amendment of the United States Constitution do not constitute retaliation prohibited under this policy.

Charging an individual with a *Code of Student Conduct* violation for making a materially false statement in bad faith in the course of a grievance proceeding under this policy does not constitute retaliation.

K.   **Recordkeeping**

The District's Title IX Coordinator and all individuals responsible for receiving reports, applying formal Complaint procedures, and/or conducting investigations pursuant to this manual shall be responsible for maintaining records related to all Title IX Complaints received by the District for no less than seven (7) years.

These records include but are not limited to, all information, documents, electronically stored information (ESI), and electronic media created and/or received as part of the report, Complaint, or investigation. The information shall be retained immediately upon receipt of specific information and/or written notice that could lead to an investigation, formal Complaint, or potential litigation.

The information, documents, ESI, and electronic media retained may include public records and records exempt from disclosure under Federal and/or State law (e.g., student records).

## Anti-Discrimination Policy

The School Board of Miami-Dade County, Florida adheres to a policy of nondiscrimination in employment and educational programs/activities and strives affirmatively to provide equal opportunity for all as required by:

**Title VI of the Civil Rights Act of 1964** - prohibits discrimination on the basis of race, color, religion, or national origin.

**Title VII of the Civil Rights Act of 1964 as amended** - prohibits discrimination in employment on the basis of race, color, religion, gender, or national origin.

**Title IX of the Education Amendments of 1972** - prohibits discrimination on the basis of gender. M-DCPS does not discriminate on the basis of sex in any education program or activity that it operates as required by Title IX.  M-DCPS also does not discriminate on the basis of sex in admissions or employment.

**Age Discrimination Act of 1975** - prohibits discrimination based on age in programs or activities.

**Age Discrimination in Employment Act of 1967 (ADEA) as amended** - prohibits discrimination on the basis of age with respect to individuals who are at least 40 years old.

**The Equal Pay Act of 1963 as amended** - prohibits gender discrimination in payment of wages to women and men performing substantially equal work in the same establishment.

**Section 504 of the Rehabilitation Act of 1973** - prohibits discrimination against the disabled.

**Americans with Disabilities Act of 1990 (ADA)** - prohibits discrimination against individuals with disabilities in employment, public service, public accommodations and telecommunications.

**The Family and Medical Leave Act of 1993 (FMLA)** - requires covered employers to provide up to 12 weeks of unpaid, job-protected leave to eligible employees for certain family and medical reasons.

**The Pregnancy Discrimination Act of 1978** - prohibits discrimination in employment on the basis of pregnancy, childbirth, or related medical conditions.

**Florida Educational Equity Act (FEEA)** - prohibits discrimination on the basis of race, gender, national origin, marital status, or handicap against a student or employee.

**Florida Civil Rights Act of 1992** - secures for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status.

**Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA)** - prohibits discrimination against employees or applicants because of genetic information.

**Boy Scouts of America Equal Access Act of 2002** – No public school shall deny equal access to, or a fair opportunity for groups to meet on school premises or in school facilities before or after school hours, or discriminate against any group officially affiliated with Boy Scouts of America or any other youth or community group listed in Title 36 (as a patriotic society).

**Veterans** are provided re-employment rights in accordance with P.L. 93-508 (Federal Law) and Section 295.07 (Florida Statutes), which stipulate categorical preferences for employment.

**In Addition:**
School Board Policies **1362, 3362, 4362, and 5517** - Prohibit harassment and/or discrimination against students, employees, or applicants on the basis of race, color, ethnic or national origin, religion, marital status, disability, genetic information, age, political beliefs, sexual orientation, sex/gender, gender identification, social and family background, linguistic preference, pregnancy, citizenship status, and any other legally prohibited basis.  Retaliation for engaging in a protected activity is also prohibited.

**For additional information about Title IX or any other discrimination/harassment concerns, contact the U.S. Department of Education Asst. Secretary for Civil Rights or:**

**Office of Civil Rights Compliance (CRC)**
**Executive Director/Title IX Coordinator**
**155 N.E. 15th Street, Suite P104E**
**Miami, Florida 33132**
**Phone: (305) 995-1580 TDD: (305) 995-2400**
**Email: crc@dadeschools.net Website: https://hrdadeschools.net/civilrights**

Revised 07/2020

# Política Antidiscriminatoria

La Junta Escolar del Condado Miami-Dade, Florida se adhiere a una política antidiscriminatoria en el empleo y en programas / actividades educativas y se esfuerza de manera afirmativa por proporcionar oportunidades equitativas a todos según lo requiere:

**Título VI de la Ley de Derechos Civiles del 1964** – prohíbe la discriminación por motivo de raza, color, religión u origen nacional.

**Título VII de la Ley de Derechos Civiles del 1964 en su forma enmendada** – prohíbe la discriminación en el lugar de empleo por motivo de raza, color, religión, género u origen nacional.

**Título IX de las Enmiendas de la Educación del 1972** – prohíbe la discriminación por motivo de género. Las M-DCPS no discriminan por motivo de género en ningún programa o actividad de educación que opera según requiere el Título IX. Las M-DCPS tampoco discriminan por motivo de género en admisiones o empleo.

**Ley de Discriminación por motivo de Edad del 1975** – prohíbe la discriminación por motivo de edad en programas o actividades.

**Ley de Discriminación por motivo de Edad en el Lugar de Empleo del 1967 (ADEA) en su forma enmendada** – prohíbe la discriminación por motivo de edad con respecto a las personas que tienen por lo menos 40 años de edad.

**Ley de Igualdad Salarial del 1963 en su forma enmendada** – prohíbe la discriminación por motivo de género en el pago de salarios a mujeres y hombres que realicen labores de considerable igualdad en el mismo establecimiento.

**Sección 504 de la Ley de Rehabilitación del 1973** – prohíbe la discriminación de los discapacitados.

**Ley de Estadounidenses con Discapacidades del 1990 (ADA)** – prohíbe la discriminación contra personas con discapacidades en lugares de empleo, servicios públicos, acomodación pública y telecomunicaciones.

**La Ley de Ausencia Familiar y Médica del 1993 (FMLA)** – requiere que los empleadores cubiertos proporcionen hasta 12 semanas de baja sin pago con protección de empleo para empleados "elegibles" por ciertos motivos familiares y médicos.

**Ley de Discriminación por Embarazo del 1978** – prohíbe la discriminación en lugares de empleo por motivo de embarazo, parto o condiciones médicas relacionadas.

**Ley de Equidad en la Educación de la Florida (FEEA)** – prohíbe la discriminación contra estudiantes o empleados por motivo de raza, género, origen nacional, estado civil o discapacidad.

**Ley de Derechos Civiles de la Florida del 1992** – a toda persona dentro del estado, le garantiza la libertad de ser discriminado por motivo de raza, color, religión, sexo, origen nacional, edad, discapacidad o estado civil.

**Título II de la Ley de No Discriminación por Información Genética del 2008 (GINA)** – prohíbe la discriminación contra empleados o solicitantes por motivo de información genética.

**Ley de Acceso Equitativo para los Boy Scouts of America del 2002** – ninguna escuela pública debe negarse a ofrecer acceso equitativo o igualdad de oportunidad justa para que los grupos se reúnan en los planteles escolares o edificios escolares antes o después de las horas de clases, ni tampoco discriminar contra cualquier grupo de afiliación oficial con los Boy Scouts of America o cualquier otro grupo juvenil o comunitario enumerado en el Título 36 (como sociedad patriótica).

A los **veteranos** se les proporciona derechos de reempleo de acuerdo al P.L. 93-508 (Ley Federal) y Sección 295.07 (Estatutos de la Florida), que estipulan preferencias categóricas para el empleo.

**Además**:
**Las Políticas de la Junta Escolar 1362, 3362, 4362 y 5517** – Prohíben el acoso y/o la discriminación contra estudiantes, empleados o solicitantes por motivo de sexo, raza, color, origen étnico u origen nacional, religión, estado civil, discapacidad, información genética, edad, creencia política, orientación sexual, género, identificación de género, origen social y familiar, preferencia lingüística, embarazo, estado de ciudadanía y cualquier otro motivo prohibido por ley. La represalia por participar en una actividad que esté protegida también es prohibida.

Para más información sobre el Título IX o cualquier otra inquietud concerniente a la discriminación / el acoso, comuníquese con el Secretario Adj. para Derechos Civiles (Asst. Secretary for Civil Rights) del Departamento de Educación de los EE. UU. (U.S. Department of Education):

Office of Civil Rights Compliance (CRC)
*Oficina del Cumplimiento de Derechos Civiles*
**Executive Director/Title IX Coordinator**
*Director Ejecutivo / Coordinador de Título IX*
155 N.E. 15th Street, Suite P104E
Miami, Florida 33132
Teléfono: (305) 995-1580 TDD: (305) 995-2400
Correo electrónico: crc@dadeschools.net Sitio web: https://hrdadeschools.net/civilrights

Revisado 07/2020

**Règ Kont Diskriminasyon**

Komisyon Konsèy Lekòl Miami-Dade County, Florid aplike règ kont diskriminasyon nan anplwa ak pwogram/aktivite edikasyonèl e li fè efò pozitif pou ofri opòtinite egal pou tout moun nan:

**"Title VI of the Civil Rights Act of 1964" (Akò 1964 sou Dwa Sivil 'Title VI')** - entèdi diskriminasyon sou baz ras, koulè, relijyon, oubyen orijin nasyonal.

**"Title VII of the Civil Rights Act of 1964" (Akò 1964 sou Dwa Sivil 'Title VII') jan yo amande li** – entèdi diskriminasyon nan anplwa sou baz ras, koulè, relijyon, sèks (fi/gason) oubyen orijin nasyonal.

**"Title IX of the Education Amendments of 1972" (Amandman 1972 nan Edikasyon 'Title IX')** - entèdi diskriminasyon sou baz sèks (fi/gason). M-DCPS pa diskrimine sou baz sèks nan kèlkeswa pwogram edikasyon oubyen aktivite li opere jan Title IX mande l. M-DCPS pa diskrimine tou sou baz sèks nan admisyon oubyen anplwa.

**"Age Discrimination Act of 1975" (Akò 1975 Kont Diskriminasyon sou Laj)** - entèdi diskriminasyon baze sou laj nan pwogram oubyen aktivite.

**"Age Discrimination in Employment Act of 1967 (ADEA)" (Akò 1967 Kont Diskriminasyon sou Laj nan Anplwa) jan yo mande li** - entèdi diskriminasyon sou baz laj nan sa ki konsène moun ki gen omwen 40 an.

**"The Equal Pay Act of 1963" (Akò 1963 sou Egalite nan Salè) jan yo amande li** – entèdi diskriminasyon kont sèks (fi/gason) nan salè pou fi ak gason ki ap pèfòme sibstansyèlman travay egal nan menm etablisman an.

**"Section 504 of the Rehabilitation Act of 1973" (Seksyon 504 Akò 1973 sou Reyabilitasyon)** – entèdi diskriminasyon kont moun ki gen andikap.

**"Americans with Disabilities Act of 1990 (ADA)" (Akò 1990 sou Ameriken ki gen Andikap)** – entèdi diskriminasyon kont moun ki gen andikap nan anplwa, sèvis leta, akomodasyon piblik ak telekominikasyon.

**"The Family and Medical Leave Act of 1993 (FMLA)" (Akò 1993 sou Vakans Medikal ak Fanmi)** – mande pou anplwayè ki anba akò sa a bay jiska 12 semèn vankans san peye pou pwoteksyon travay pou anplwaye ki elijib pou sèten rezon familyal ak medikal.

**"The Pregnancy Discrimination Act of 1978" (Akò 1978 Kont Diskriminasyon nan Gwosès)** – Entèdi diskriminasyon nan anplwa sou baz gwosès, akouchman, oubyen kondisyon medikal ki gen rapò ak sa.

**"Florida Educational Equity Act (FEEA)" (Akò sou Egalite nan Edikasyon nan Florid)** – entèdi diskriminasyon sou baz ras, sèks (fi/gason), orijin nasyonal, kondisyon marital, oubyen andikap kont yon elèv oubyen yon anplwaye.

**"Florida Civil Rights Act of 1992" (Akò1992 sou Dwa Sivil nan Florid)** – asire pou tout moun anndan eta a gen libète kont diskriminasyon akoz ras, koulè, relijyon, sèks, orijin nasyonal, laj, andikap, oubyen kondisyon marital.

**"Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA)" (Akò 2008 'Title II' sou Absans Diskriminasyon nan Enfòmasyon Jenetik** - entèdi diskriminasyon kont anplwaye ak aplikan akoz enfòmasyon jenetik.

**"Boy Scouts of America Equal Access Act of 2002" (Akò 2002 sou Aksè Egal pou Eskout Gason nan Amerik la)** – Okenn lekòl leta pa dwe anpeche aksè egal, oubyen yon opòtitinite rezonab pou gwoup rankontre sou pwopriyete lekòl oubyen nan etablisman lekòl anvan oubyen aprè lè lekou, oubyen fè diskriminasyon kont kèlkeswa gwoup ki afiliye ofisyèlman avèk 'Boy Scouts of America', oubyen nenpòt gwoup jèn oubyen gwoup kominotè ki sou lis 'Title 36' (kòm yon sosyete patriyotik).

**Veteran** gen dwa pou rejwenn anplwa ann akò avèv P.L. 93-508 (Lwa Federal) ak Seksyon 295.07 (Lwa Florid), ki ensiste sou preferans kategorik pou anplwa.

**Anplis:**
**Règ Komisyon Konsèy Lekòl 1362, 3362, 4362, ak 5517** - Entèdi arasman e/oubyen diskriminasyon kont elèv anplwaye, oubyen aplikan sou baz sèks, ras, koulè, etnisite oubyen orijin nasyonal, relijyon, sitiyasyon marital, andikap, enfòmasyon jenetik, laj, opinyon politik, oryantasyon seksyèl, sèks fi/gason, idantifikasyon seksyèl, ran sosyal ak istwa familyal, preferans lengwistik, gwosès, kondisyon sitwayènte oubyen nenpòt lòt baz lalwa entèdi.

Pou plis enfòmasyon sou 'Title IX' oubyen nenpòt lòt kesyon sou diskriminasyon/arasman kontakte Asistan Sekretè pou Dwa Sivil Depatman Edikasyon oubyen:

Office of Civil Rights Compliance (CRC)
Executive Director/Title IX Coordinator
155 N.E. 15th Street, Suite P104E
Miami, Florida 33132
Phone: (305) 995-1580 TDD: (305) 995-2400
Email: crc@dadeschools.net Website: https://hrdadeschools.net/civilrights