UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:23-cv-23004-JB

JANE DOE, a minor, by and through
her mother and next friend,
MOTHER DOE,

      Plaintiffs,

v.

ACADEMIR CHARTER
SCHOOLS, INC. AND SUPERIOR
CHARTER SCHOOL SERVICES,
INC.

      Defendants.
_____/

**DEFENDANTS ACADEMIR CHARTER SCHOOLS, INC.'S
AND SUPERIOR CHARTER SCHOOL SERVICES, INC.'S
MOTION IN LIMINE ON PLAINTIFF'S CONSPIRACY THEORIES**

Defendants, Academir Charter Schools, Inc. (hereinafter "Academir"), and Superior Charter School Services, Inc. ("Superior") by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 26 and 27 and Federal Rules of Evidence 401, 402 and 403, respectfully submits this Motion in Limine and Incorporated Memorandum of Law and respectfully seek an order precluding Jane Doe (hereinafter "Plaintiff") from eliciting testimony, introducing evidence or making comments concerning any theory of a conspiracy or cover up attempt by the Defendants, and in support thereof, sets forth as follows:

**EXECUTIVE SUMMARY**

On August 9, 2023, Jane Doe, by and through her Mother and next friend filed a complaint asserting the following claims: deliberate indifference to sexual harassment; retaliation;

1

negligence; negligent failure to train; and negligent supervision, all based upon a single instance of alleged student-on-student sexual harassment between two five-year-old kindergarten students allegedly occurring on January 20, 2023 (hereinafter "Alleged Incident"). On the date of the Alleged Incident, Jane reported to three separate school employees that another student made a verbal comment of a sexual nature to her. Defendants responded immediately and notified both children's parents about the Alleged Incident. Importantly, when Jane reported the Alleged Incident to Defendants, she never alleged any physical touching, but only that another student said made inappropriate verbal comments to her.

When Jane returned from school on January 20, 2023 (which Mother Doe recorded on or around the following day), she told Mother Doe that she was kissed and licked by her classmate, the alleged 5-year-old perpetrator ("L.R.") in the classroom under the table. On January 21, 2023, Jane's parents sent a text message to Jane's kindergarten teacher, Ms. Chaudry, and for the first time asserted that Jane was physically touched. Ms. Chaudry met with Jane's parents on the next school day, which was Tuesday, January 24, 2023. On that same day both L.R. and Jane advised the school counselor that the incident was merely a verbal comment. At no time did Jane's parents ever report to the school that the incident was alleged to have occurred on more than one occasion.

Defendants immediately launched an investigation, which included a review of the classroom surveillance footage which confirmed that the children were constantly supervised and that no inappropriate contact occurred. Father Doe made a police report on January 25, 2023, which contained no reference to any Alleged Incident and merely stated that the father wanted L.R. removed from the class. Upset that the school would not remove L.R. from the school and would not disclose the surveillance, during that same week, Jane did not attend class Thursday and Friday

2

and Jane's parents withdrew Jane from Academir and moved her to another school. This action followed.

## **LEGAL STANDARD**

The purpose of a motion in limine is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *SFR Services, LLC v. Lexington Ins. Co.*, 2021 WL 322367, at *1 (M.D. Fla. 2021) (citing *Luce v. U.S.*, 469 U.S. 38, 40 n.2 (1984)). A motion in limine excludes evidence that is "clearly inadmissible for any purpose." *Id.* According to Federal Rule of Evidence 403 "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. A motion in limine presents a trial court with pretrial issues regarding admissibility of evidence that a party is likely to present at trial. *Stewart v. Hooters of Am., Inc.*, 2007 WL 1752843, at *1 (M.D. Fla. 2007). "The real purpose of a Motion in Limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial." *Id.*

A federal district court may make in limine rulings under its "inherent authority to manage the course of trials." *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984). "A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial." *Amegy Bank Nat. Ass'n v. DB Priv. Wealth Mortg., Ltd.*, No. 2:12-CV-243-FTM-38CM, 2014 WL 791505, at *1 (M.D. Fla. Feb. 24, 2014) (citations omitted). Fed. R. Evid. 402 of the Federal Rules of Evidence provides that evidence must be relevant to be admissible at trial. To this end, "relevant evidence" is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Fed. R. Evid. 401. Additionally, Fed. R. Evid. 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." A trial court's authority to rule in limine derives from its inherent authority to manage trials. *Luce*, 469 U.S. 38 at 41-42. "Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence." *Centre Courts Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2020 WL 496065, at *2 (S.D. Fla. 2020) "A district court may exclude relevant evidence under Rule 403 if 'its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence.'" *Id.* (citing FED. R. EVID. 403).

## PLAINTIFF'S ATTEMPTS TO ELICIT TESTIMONY REGARDING VARIOUS CONSPIRACY THEORIES

Throughout the litigation of this case, Plaintiff's counsel has attempted unsuccessfully, on numerous occasions, to elicit testimony from several witnesses that there was some sort of conspiracy theory on behalf of the Defendants to cover-up what happened to Jane. Jane's kindergarten teacher, Hira Chaudry, a former employee of Academir, testified during her deposition that when Jane initially told her what had occurred Jane specifically said "…L.R. told her that he wanted to lick the tetas and touch her cuca." *See* Exhibit A, Chaudry, Dep. Tr., 23: 2–3. However, despite the testimony solicited by Plaintiff's counsel, he continued throughout the course of litigation to attempt to get the witnesses to admit there was a conspiracy to cover up what happened to Jane. Plaintiff's counsel attempted to impose his narrative on all the witnesses, claiming they knew the subject incident was physical in an effort to cover up the truth. However, they all testified that it was merely verbal.

4

Jane's parents testified during their respective depositions that they believed there was some sort of conspiracy to cover-up what happened to Jane. First, during Father Doe's deposition, he was asked questions about the video surveillance from the classroom on the alleged date of loss. He was unable to view the footage due to the privacy concerns of the other children in the video, however he was specifically asked "And if the eight hours of video surveillance show that no bit of clothes were removed and no one was licked or touched, do you agree that this could be a mistake by your daughter?" See Exhibit B, Father Doe, Dep. Tr., 74: 19–22. To which he replied "…how would we know that they didn't modify what's being – the information being shown on the cameras?" See Exhibit B, Father Doe, Dep. Tr., 75: 2–4. Father Doe goes on to specifically allege that the school was hiding information from them when he testified "What I believe is that we do not trust the school because they have hidden the truth from us because they denied – because they didn't want to show us the cameras." See Exhibit B, Father Doe, Dep. Tr., 75: 11–14.

Additionally, when Father Doe was asked why the police report did not mention Jane being physically touched, despite body camera footage showing that he declined a police investigation, he claimed that the officer wrote an inaccurate and superficial report. See Exhibit B, Father Doe, Dep. Tr., 47: 24–25, 50: 6–15 (Father Doe testified "The police tried to address it as simply as possible. In the police report, they never mention sexual harassment. The police didn't mention sexual harassment which was the main reason I called the police. It was because of the sexual harassment. So why is it that sexual harassment is not included in the report?"). Father Doe also stated that he asked the police officer to conduct an official investigation, but the officer never did. Yet Father Doe was shown the body camera footage from the police officer wherein Father Doe himself said "no" when the officers asked if he wanted an official investigation to be conducted.

Furthermore, Mother Doe also tried to push the conspiracy narrative by testifying that when she saw a portion of the surveillance footage from the date of loss, she did not believe that the video footage was accurate. Specifically, she stated "…what warranty do I have that they didn't change the video to a different one? Or what warranty do I have that they didn't edit that video." See Exhibit C, Mother Doe, Dep. Tr., 56: 4–7. When asked what evidence Mother Doe has to prove that the video surveillance was inaccurate or edited she testified "I have no evidence." See Exhibit C, Mother Doe, Dep. Tr., 56: 18. It is clear that throughout the course of litigation, Plaintiff and her counsel have obtained no real concrete evidence that there was a conspiracy amongst the employees of the Defendants to cover up what happened to Jane. Therefore, any facts, evidence or testimony relating to the same should be excluded for the reasons stated below.

## ARGUMENT

Academir and Superior anticipate that Plaintiff and her counsel will attempt to argue before the members of the jury, without a scintilla of supporting evidence and for the sole purpose of confusing and misleading the jury, that all representatives on behalf of the Defendants participated in some sort of conspiracy to cover-up the alleged sexual assault of Jane Doe. The Parties disagree as to whether what occurred between Jane Doe and L.R. was verbal or physical; Plaintiff claims it was physical and Defendants allege it was reported to them by Jane as merely verbal. Both current and former employees of Academir have testified during their respective depositions that when Jane alerted them to the situation with L.R., she described the incident as merely verbal.[1] The employees also spoke to L.R. about the incident where he admitted that his actions with Jane were

---

[1] Jane's kindergarten teacher Ms. Hira Chaudry testified that Jane's physical education teacher Ms. Rosemarie Mortazavi told her that Jane reported to Ms. Mortazavi that L.R. said some sexually inappropriate things to Jane. See Exhibit A, Chaudry, Dep. Tr., 23: 18–23. Ms. Chaudry also testified that she brought Jane's former pre-kindergarten teacher Ms. Zoey Castellon to speak to Jane in Spanish and Jane told Ms. Castellon that L.R. did not touch her. See Exhibit A, Chaudry, Dep. Tr., 25: 3–10; 27: 15-17.

6

only verbal. Academir employees spoke to L.R.'s mother on the same day of the incident and she confirmed that the comments L.R. made were ones he had heard at home. However, once Jane Doe went home and spoke to her parents, she allegedly told them that L.R. had physically touched her.

When discussing whether the incident between Jane Doe and L.R. was physical or verbal, Academir and Superior anticipate that Plaintiff and her counsel will set forth an impermissible argument that all of Academir's employees and former employees that were lying about the incident being only verbal. Any facts, evidence or testimony relating to a conspiracy by the Academir employees does not have any tendency to make any fact more or less probable than it would without the evidence. FED. R. EVID. 401.

Plaintiff asserted claims of deliberate indifference, retaliation, negligence, negligent training and negligent supervision against Defendants. Any sort of evidence relating to a conspiracy on behalf of Academir's employees does not have any tendency to prove any causes of action that Plaintiff alleged in her complaint. FED. R. EVID. 401. Any probative value of this type of evidence if substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury. If Plaintiff and her counsel were permitted to present arguments relating to a possible conspiracy to cover-up what happened to Jane, it would be both unsupported by the record evidence and would only serve to confuse the issue and mislead the jury as that evidence does not prove any cause of action that Plaintiff and her counsel have alleged in the instant action.

The only instance that argument relating to a conspiracy or cover-up would be allowed is Plaintiff asserted a claim of fraud against the Defendants. However, Plaintiff has not alleged a cause of action for fraud in this case, which is required by the Federal Rules of Civil Procedure to

be plead with particularity. *See* FED. R. CIV. PRO. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").

Thus, Academir and Superior request that the Court enter an order finding that any facts, evidence or testimony concerning any theory of a conspiracy or cover up attempt by the Defendants shall be excluded from trial in the instant action as without merit or support by the record evidence and as unfairly prejudicial and confusing.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), we hereby certify that counsel for Defendants have conferred with counsel for Plaintiff and were unable to resolve the issues addressed herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via electronic mail delivery on October 25, 2024, to Kyle T. MacDonald, Esq., Derek Smith Law Group, PLLC, 701 Brickell Avenue, Suite 1310, Miami, FL 33131, at kyle@dereksmithlaw.com (Attorneys for Plaintiff) and Scott Yount, Esq. and Julie Marhefka, Esq., Garrison, Yount, Forte & Mulcahy, LLC, 601 Bayshore Blvd., Suite 800, Tampa, FL 33606 at syoung@garrisonyount.com; jmarhefka@garrisonyount.com  (Attorneys for Superior Charter School Services, Inc.)

**KELLEY KRONENBERG**
*/s/ Julie B. Karron*
**JULIE B. KARRON, ESQ.**
Fla. Bar No.:  14683
10360 West State Road 84
Fort Lauderdale, FL  33324
Telephone: (954) 370-9970
Facsimile: (954) 382-1988
Attorney for Academir
jkarron@kelleykronenberg.com

and

*/s/ Julie C. Marhefka* _____
Scott P. Yount, FBN: 0021352
Julie C. Marhefka, FBN: 1025567
Garrison, Yount, Forte & Mulcahy, L.L.C.
601 Bayshore Blvd., Suite 800
Tampa, Florida 33606
Phone: 813-275-0404
Fax: 813-275-0304
Email: syount@garrisonyount.com
Email: jmarhefka@garrisonyount.com
*Counsel for Superior Charter School Services, Inc.*