UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:23-cv-23004-JB

JANE DOE, a minor, by and through
her mother and next friend,
MOTHER DOE,

      Plaintiffs,

v.

ACADEMIR CHARTER
SCHOOLS, INC. AND SUPERIOR
CHARTER SCHOOL SERVICES,
INC.

      Defendants.
_____/

**DEFENDANTS ACADEMIR CHARTER SCHOOLS, INC.'S
AND SUPERIOR CHARTER SCHOOL SERVICES, INC.'S
MOTION IN LIMINE REGARDING STATEMENTS OF JANE DOE**

      Defendant, Academir Charter Schools, Inc. (hereinafter "Academir"), and Superior Charter School Services, Inc. ("Superior"), by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 26 and 27 and Federal Rules of Evidence 403, 801, 803 and 901, respectfully submit this Motion in Limine and Incorporated Memorandum of Law and seek an order precluding Jane Doe (hereinafter "Plaintiff") and her counsel from setting forth any facts, evidence or testimony regarding any and all of Plaintiff's statements to Mother Doe, including but not limited to the audio recording taken by Mother Doe that is referenced below, as well as Plaintiff's statements to Expert Greg Iannuzzi and his recordings of same, and in support thereof, set forth as follows:

1

1.	On August 9, 2023, Jane Doe, by and through her Mother and next friend filed a complaint asserting the following claims: deliberate indifference to sexual harassment; retaliation; negligence; negligent failure to train; and negligent supervision, all based upon a single instance of alleged student-on-student sexual harassment between two five-year-old kindergarten students allegedly occurring on January 20, 2023 (hereinafter "Alleged Incident"). On the date of the Alleged Incident, Jane reported to three separate school employees that another student made a verbal comment of a sexual nature to her. Defendants responded immediately and notified both children's parents about the Alleged Incident. Importantly, when Jane reported the Alleged Incident to Defendants, she never alleged any physical touching, but only that another student said made inappropriate verbal comments to her.

2.	When Jane returned from school on January 20, 2023 (which Mother Doe recorded on or around that day), she told Mother Doe that she was kissed and licked by her classmate, the alleged 5-year-old perpetrator ("L.R.") in the classroom under the table. **Exhibit A**, Mother Doe, Dep. Tr., Vol II, 14: 14-25; 18: 8-16. Defendants anticipate that Plaintiff will seek to introduce the English transcription of this recording as an exhibit in this case.

3.	It is undisputed that Plaintiff never received any medical treatment or mental health therapy. Instead, the only psychological professional that she saw was Plaintiff's retained testifying expert Greg Iannuzzi, M.D., who interviewed her and recorded that interview on May 25, 2023. Defendants anticipate that Plaintiff will attempt to play to the jury and introduce into evidence the transcription of the video recording, the actual video recording, and Plaintiff's expert report.

4.	Neither the recorded transcript of Jane Doe speaking with Mother Doe, nor the video or transcript of Dr. Iannuzzi's forensic interview are admissible in this matter, as they contain

inadmissible hearsay, with no applicable exceptions. Defendants request this Court to issue an in limine Order ruling them as inadmissible and prohibiting Plaintiff and her counsel from mentioning them to the jury.

### Jane's Statements to Mother Doe are Inadmissible

5.  Four days after the Alleged Incident, Plaintiff was questioned by Mother Doe in detail about the Alleged Incident, and Mother Doe recorded a portion of the conversation with Plaintiff.. During the recorded conversation, Mother Doe repeatedly asked Plaintiff multiple leading questions. This recorded conversation was then shown to Plaintiff's retained expert psychologist Greg Iannuzzi to try and bolster his opinions regarding the Alleged Incident and its effect on the Plaintiff.

6.  Defendants seek to exclude this recording from being introduced into evidence at trial as inadmissible hearsay pursuant to Federal Rule of Evidence 801. The audio recording is inadmissible hearsay as the recording contains out-of-court statements made by Plaintiff and Mother Doe that would be offered into trial for the truth of the matter asserted in the recording. As such, this audio recording should not be admitted into evidence at trial as it is inadmissible hearsay wherein no exception applies. Similarly, any testimony by Mother Doe as to what Jane told her during the recording, or an any other time, qualifies as inadmissible hearsay and must be excluded.

7.  If the Court were inclined to admit this audio recording despite the hearsay concerns, Defendant seeks to exclude the audio recording pursuant to Federal Rules of Evidence 403. FED. R. EVID. 403. Plaintiff's own retained expert Dr. Iannuzzi, who, by his own admission is not a treating provider, admits that the interview with Jane and Mother Doe did not purport to comply with any sort of protocol which would mitigate against the power of suggestion. **Exhibit B**, Iannuzzi, Dep. Tr., 31: 23-25; 32: 1-3. Dr. Iannuzzi also admits that Mother Doe asked the

Plaintiff leading questions throughout her recorded interview with the Plaintiff. See **Exhibit B**, Iannuzzi, Dep. Tr., 33: 4–8. Dr. Iannuzzi went on to explain and confirm that asking a child leading questions can drastically impact the child's memory. Dr. Iannuzzi stated in pertinent part:

> Q: In your professional experience, how do leading questions impact a five-year-old child's memory and recitation of events?
>
> A: Leading questions can, in some children, impact the core memory and, you know, effectively corrupt the memory in some children.
>
> Q: Effectively correct the what?
>
> A: The core memory of the incident.
>
> Q: And does that mean, Doctor, that the child can be led to believe that something happened that actually didn't happen?
>
> A: Yes. That's consistent with the literature on children's memory.
>
> See **Exhibit B**, Iannuzzi, Dep. Tr., 49: 4–16.
>
> A: If leading questions were used, yes-no questions, questions which posed information that she affirmed, then it may again corrupt the core memory. It may result in testimony that's vastly different.
>
> See **Exhibit B**, Iannuzzi, Dep. Tr., 53: 4–7.

8. Further, the statements by Plaintiff contained in the recording could be inaccurate due to the manner in which Mother Doe questioned Jane. Mother Doe asked Plaintiff leading questions that could have negatively impacted the Plaintiff's memory. See **Exhibit C** Audio Recording Transcript. Some of the examples of Mother Doe asking leading questions are evident in the transcript when she asked the following:

> "And what did you tell her? The truth, right? You always have to tell the truth."
> "Okay in the chairs and under the table, like you told me?"
> "But did he touch it, or did he lick it?"
>
> See **Exhibit C.**

4

9.     Thus, due to the clear inadmissible hearsay in Jane's recorded statement, and the inherent issues with authentication of the recording and the tainting of Jane's statements due to leading questions and lack of proper training by Mother Doe in asking questions, any probative value of the statement is outweighed by the prejudice. See FED. R. EVID. 901.

### Jane's Statements to Greg Iannuzzi, M.D. are Inadmissible

10.    Greg Iannuzzi, M.D. was retained by Plaintiff's counsel as a psychological expert to provide testimony for Plaintiff during trial. Dr. Iannuzzi plainly testified that is not a treating physician of Jane Doe. See **Exhibit B**, Iannuzzi Dep. Tr. 22-23. As a part of Dr. Iannuzzi's investigation, he conducted an in person forensic interview of Jane Doe on May 25, 2023.

11.    During Dr. Iannuzzi's investigation, he interviewed the Plaintiff about the Alleged Incident. When this occurred, the only people that were present were Plaintiff and her parents. Defendants and their counsel were not present for this interview as they were not informed that the interview was taking place and had no ability to conduct cross examination. As explained in detail below, Defendant seeks to exclude any facts, evidence or testimony regarding any and all statements that Plaintiff made to Dr. Iannuzzi regarding the Alleged Incident.

12.    Additionally, Dr. Iannuzzi admits that he was not made aware of evidence that Jane made conflicting reports to her teachers on the date of the alleged incident and he further admits that it is possible that if Jane was interviewed by school professionals and initially claimed she was never touched, that it is possible that a false memory was created at some point, leading to allegations of a physical touching. **Exhibit B**, Iannuzzi, Dep. Tr., 53: 19-25; 54: 1-6; 59: 13-25. To this end, Dr. Iannuzzi also admitted that in general, a child's earlier disclosures and more spontaneous disclosures are considered more reliable. **Exhibit B**, Iannuzzi, Dep. Tr., 54: 7-14.

13.     In addition to not being provided critical evidence that conflicted with Jane's purported version of events, Dr. Iannuzzi, despite his requesting same from Plaintiff's counsel, testified that he was never provided with a copy of the video surveillance footage from the classroom for the date of the Alleged Incident. This video disproves Plaintiff's claim that physical contact occurred on January 20, 2023. When asked if he would agree that a video such as the surveillance would be a critical piece of information in doing a forensic evaluation in this case to determine whether Jane was telling the truth, Dr. Iannuzzi admitted that the video would be helpful and that Plaintiff's counsel withheld it from the examiner. **Exhibit B**, Iannuzzi, Dep. Tr., 36: 8-25.

14.     Additionally, it is undisputed that Jane's first language is Spanish. During Dr. Iannuzzi's interview of Jane, she was not offered a Spanish interpreter and she specifically expressed an issue with not having the proper words to be able to use, which Dr. Iannuzzi, her interviewer, admits he interpreted to mean that she might not have the proper English words to use. **Exhibit B**, Iannuzzi, Dep. Tr., 46: 4-24. Thus, given Jane's young age and the fact that she was being questioned by a stranger in a language that she struggled with, the fact that she was not provided an interpreter further taints the reliability and completeness of her interview testimony.

15.     Finally, expert witnesses cannot serve as conduits for admitting into evidence otherwise inadmissible hearsay statements. See *Schoen v. State Farm*, 638 F. Supp. 3d 1323 (S.D. Ala. Nov. 1, 2022) (A party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony); *Linn v. Fossum*, 946 So. 2d 1032, 1037-38 (Fla. 2006) (holding that an expert's testimony "may not merely be used as a conduit for the introduction of the otherwise inadmissible evidence") (citing *Erwin v. Todd*, 699 So. 2d 275, 277 (Fla. 5th DCA 1997)); *Riggins v. Mariner Boat Works, Inc.*, 545 So. 2d 430,

432 (Fla. 2d DCA 1989) (recognizing a line of cases that "prohibits the use of expert testimony merely to serve as a conduit to place otherwise inadmissible evidence before a jury"). "When an expert's testimony acts as a conduit for inadmissible hearsay, the evidence is presented to the jury without affording the opposing party an opportunity to cross-examine and impeach the source of the hearsay." *Linn*, 946 So. 2d at 1038 (citing *Gerber v. Iyengar*, 725 So. 2d 1181, 1185 (Fla. 3d DCA 1998) (concluding that the consequence of allowing the expert's testimony to act as a conduit for inadmissible hearsay is that the "highly impeachable statement ... was presented for the jury's consumption without affording ... an opportunity to cross-examine")).

16.     Under Fed. R. Evid. 703, governing the permissible basis for an expert's opinion testimony, experts in some circumstances are able to provide opinions based on facts and data otherwise inadmissible, but the rule "is not an open door to all inadmissible evidence disguised as expert opinion*." United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987). "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Indus. Eng'g & Dev., Inc. v. Static Control Components*, Inc., No. 8:12-CV-691-T-24-MAP, 2014 WL 4986482, at *2 (M.D. Fla. Oct. 6, 2014) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013)).

17.     The audio recordings of Jane speaking with Mother Doe and Jane speaking with Dr. Iannuzzi contain clear hearsay and do not meet any of the hearsay exceptions, and Defendant therefore files this Motion in Limine to exclude any such statements made by Jane Doe.

## **LEGAL STANDARD**

The purpose of a motion in limine is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *SFR Services, LLC v. Lexington Ins. Co.*, 2021 WL 322367, at *1 (M.D. Fla. 2021) (citing *Luce v. U.S.*, 469 U.S. 38, 40 n.2 (1984)). A motion in limine excludes

evidence that is "clearly inadmissible for any purpose." *Id.* According to Federal Rule of Evidence 403 "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. A motion in limine presents a trial court with pretrial issues regarding admissibility of evidence that a party is likely to present at trial. *Stewart v. Hooters of Am., Inc.*, 2007 WL 1752843, at *1 (M.D. Fla. 2007). "The real purpose of a Motion in Limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial." *Id.*

A federal district court may make in limine rulings under its "inherent authority to manage the course of trials." *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984). "A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial." *Amegy Bank Nat. Ass'n v. DB Priv. Wealth Mortg., Ltd.*, No. 2:12-CV-243-FTM-38CM, 2014 WL 791505, at *1 (M.D. Fla. Feb. 24, 2014) (citations omitted). Fed. R. Evid. 402 of the Federal Rules of Evidence provides that evidence must be relevant to be admissible at trial. To this end, "relevant evidence" is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Additionally, Fed. R. Evid. 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." A trial court's authority to rule in limine derives from its inherent authority to manage trials. *Luce*, 469 U.S. 38 at 41-42. "Evidence is admissible if relevant, and evidence is relevant if it has any tendency to

prove or disprove a fact of consequence." *Centre Courts Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2020 WL 496065, at *2 (S.D. Fla. 2020) "A district court may exclude relevant evidence under Rule 403 if 'its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence.'" *Id.* (citing FED. R. EVID. 403).

## LEGAL ARGUMENT

### A. Hearsay is Inadmissible

Pursuant to Federal Rules of Evidence 802, hearsay is inadmissible in a court of law. FED. R. EVI. 802. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVI. 801.

In this case, the statements that Plaintiff made to Dr. Iannuzzi are out-of-court statements that are going to be offered for the truth of the matter asserted. FED. R. EVI. 801. As such, Plaintiff's statements are inadmissible hearsay wherein no exception applies, and all such evidence or testimony not based upon personal knowledge is inadmissible under the Federal Rules of Evidence. See Fed. R. Evid. 802; *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv.*, 556 F.3d 1232, 1243 (11th Cir. 2009) ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. . . . Hearsay is inadmissible unless it meets one of the exceptions to the hearsay rule.").

### B. Probative Value is Outweighed by Unfair Prejudice and Confusion of Issues

The hearsay in this matter it is also inadmissible under Rule 403 Fed. R. Evid. because whatever probative value it may have, is far outweighed by the danger of unfair prejudice and confusion of the issues. See *Allstate Ins. Co. v. James*, 845 F. 2d 315, 320 (11th Cir. 1988) (Under

rule 403 the trial court may exclude evidence, if, in its discretion, it determines that the probative value of the proffered information is substantially outweighed by the prejudice it will excite). Here, the probative value of admitting the hearsay statements of Jane Doe is questionable. As demonstrated above, the out-of-court statements were provided under questionable circumstance, leading questions were used, and the statements lack an overall trustworthiness. More importantly, however, is that the unfair prejudice to the Defendants would be severe. Defendants never had the opportunity to interview Jane at the time that she spoke with Dr. Iannuzzi and Mother Doe has made it crystal-clear that she is not going to permit her daughter to testify at trial See **Exhibit A**, Mother Doe, Dep. Tr., Vol II, 72: 7–13. Without having the opportunity to cross-examine Jane Doe, her hearsay statements would be received into evidence as unchallenged. This would be unfairly prejudicial to the Defendants. Therefore, any reference to such information is improper and should not be allowed.

### C. No Exceptions to Hearsay Apply

It is anticipated that Plaintiff may attempt to argue that the recorded statement of Jane and Mother Doe, and/or the recorded interview of Dr. Iannuzzi, somehow fall within a hearsay exception; however, these recordings are not subject to any exception to the hearsay rule. They do not qualify for the "present sense impression" exception of Rule 803(1), which is limited to "[a] statement describing or explaining an event or condition, made **while or immediately after** the declarant perceived it." Fed. R. Evid. 803(1) (emphasis added). "The idea of immediacy lies at the heart of the exception, thus, the time requirement underlying the exception is strict because it is the factor that assures trustworthiness." *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009) (quotations omitted). Immediacy is measured in seconds and minutes. See *Id*. at 156 ("given the clear language of the rule and its underlying rationale, courts consistently require substantial


contemporaneity"); 30C Fed. Prac. & Proc. Evid. § 7042 (2d ed.) ("Maybe today 'immediately after' should be measured roughly by the time it takes to locate a cell phone and text a friend or make an entry on facebook."). There is no foundation that any of the recordings of Jane were made while or immediately after the Alleged Incident. In fact, the interview and recording of same by Dr. Iannuzzi took place more than four months after the Alleged Incident, and the recording made by Jane's mother was made approximately four days after after the Alleged Incident. **Exhibit A**, Mother Doe, Dep. Tr., Vol I, 11: 16-25; 12: 1-6.

Additionally, these recordings do not meet the "then-existing mental, emotional, or physical condition" exception in Rule 803(3): A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will. Fed. R. Evid. 803(3)(d). Because the statement's contemporaneous nature is the guarantee of trustworthiness, statements indicative of reflection rather than spontaneity do not come within the exception. See, e.g., *United States v. Naiden*, 424 F.3d 718, 722 (11th Cir. 2005) (defendant's hearsay statement that he did not believe his online acquaintance to be fourteen years old was not admissible to show his then-existing state of mind in prosecution for enticing a child because statement was not made as immediate reaction to his communication with victim but after opportunity to reflect). Because the statements do not articulate a then-existing state of mind or emotional, sensory, or physical condition but rather convey a statement of memory or belief to prove the fact remembered, they are inadmissible hearsay.

Finally, the statements do not qualify under the residual hearsay exception of Rule 807. "Congress intended the residual hearsay exception to be used very rarely, and only in exceptional

circumstances, and it applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009) (internal citations omitted). Additionally, a party seeking to introduce hearsay under the residual exception must show that it made reasonable efforts to produce a live witness. See *United States v. Scrima*, 819 F.2d 996, 1001 (11th Cir. 1987) (in declining to apply residual exception, noting, "Obviously the defense sought to place the defendant's remarks before the jury without subjecting them to scrutiny of cross-examination. This is precisely what is forbidden by the hearsay rule."). For the reasons set forth herein, due to the unreliability of the child's statements due to leading questions; the amount of time that passed from the Alleged Incident to the statements, and the fact that the child made conflicting statements to school officials, which her own expert admits would be the most reliable; and the fact that the statements made to the expert were not made for medical treatment and were made for the purpose of bolstering plaintiff's lawsuit, the Plaintiff cannot establish the required exceptional guarantees of trustworthiness sufficient to admit hearsay evidence under Fed. R. Evid. 807.

Plaintiff cannot demonstrate any "exceptional circumstances" justifying the use of the residual hearsay exception, which the Eleventh Circuit has emphasized should be invoked rarely. See also, *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 5955699, at *5 (S.D. Fla. Feb. 2, 2005) ("This exception . . . is to be utilized only rarely, and is not to be taken as a 'broad license for trial judges to admit hearsay statements that do not fit within one of the other exceptions . . .'") (internal citation and quotation omitted). Nor can Plaintiff demonstrate the required "exceptional guarantees of trustworthiness" or "high degrees of probativeness." *Id*.

There are no "circumstantial guarantees of trustworthiness" equivalent to the enumerated hearsay exceptions, particularly due to the fact that Dr. Iannuzzi has admitted that the questioning

by Mother Doe did not follow a proper protocol and included leading questions that impact memory, and the interview by Dr. Iannuzzi took place over four months after the Alleged Incident and was conducted in English, during which Jane expressed difficulty finding words, and Dr. Iannuzzi further admitted that he was not given evidence which he would have considered to determine Jane's veracity. Fed R. Evid. 807. Nor would admitting these statements serve the "interests of justice," *Id*., as doing so would deprive Defendants of the opportunity for cross-examination, and there would be no assurance of reliability. See *Schoen v. State Farm*, 638 F. Supp. 3d 1323 (S.D. Ala. Nov. 1, 2022).

Thus, because Jane's purported statements are hearsay not subject to any exception, they must be excluded. See *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv*., 556 F.3d 1232, 1243 (11th Cir. 2009). ("Hearsay is inadmissible unless it meets one of the exceptions to the hearsay rule.").

### D. Leading Questions Impermissible

It has been well established through case law and the practice of psychology that leading questions can impact a person's memory. Federal Rule of Evidence 611(c) permits the use of leading questions on direct examination at trial for specific reasons. At the same time, the advisory committee notes also caution the use of leading questions. FED. R. EVID. 611(c). Specifically, the notes state that Rule 611(c) was created as an exception to the "…traditional view that the suggestive powers of the leading question are as a general proposition undesirable." FED. R. EVI. 611(c). Courts have held that the potential danger of using leading questions with a witness is that the questions "may supply a false memory." *U.S. v. McGovern*, 499 F.2d 1140 (1st Cir. 1974) (citing *U.S. v. Durham*, 319 F.2d 590, 592 (4th Cir. 1963)).

### E. Audio Recording of Jane Cannot Be Verified

13

There is no way to verify that the audio recording is what Mother Doe purports it to be, which is an audio recording of the Plaintiff with Mother Doe when Plaintiff came home from school on the date of loss. Specifically, there is no way to authenticate (1) the exact date and time the audio recording was taken, (2) whether or not there was a conversation before the recording wherein Mother Doe coached the Plaintiff and told her what to say once the recording started (3) whether or not the audio recording was altered or edited in any way and (4) the competency of the Plaintiff when the audio recording was taken.

Mother Doe was directly asked when she made the recording of her conversation with Jane and she testified that it occurred the afternoon after the counselor spoke with Jane. According to Academir's records, the counselor did not speak with Jane until four days after the Alleged Incident.

Defendants were never provided with any objective evidence of the date and time of the recording. Even when Mother Doe spoke about the recording, she did not explain how much time had passed between Plaintiff and Mother Doe arriving home from school and when the recording was taken. There also could have been conversations between Plaintiff and Mother Doe that could have impacted the Plaintiff's statements that were made during the audio recording. The Defendant was also not provided with a copy of the actual recording to see if the recording was altered or edited in any way. Lastly, when a child testifies at trial, it is common practice to first determine if the child is competent to testify by determining if the child understands the difference between telling the truth and telling a lie. However, according to the audio recording transcript that Defendant was provided, Mother Doe did not establish whether Plaintiff understood the difference between the truth and a lie.

Thus, the probative value of this audio recording is substantially outweighed by the danger of unfair prejudice since the audio recording cannot be properly authenticated pursuant to Federal Rules of Evidence 901. FED. R. EVID. 901.

## CONCLUSION

Accordingly, Defendants seek to exclude any facts, evidence or testimony regarding Plaintiff's statements to Mother Doe, including but not limited to, the audio recording, as well as Plaintiff's statements to Plaintiff's expert psychologist Greg Iannuzzi as all of Plaintiff's statements are inadmissible hearsay wherein no exception applies. The probative value of these audio recordings is substantially outweighed by the danger of unfair prejudice, and further, the audio recording of Jane and Mother Doe cannot be properly authenticated pursuant to Federal Rules of Evidence 901. FED. R. EVID. 901.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), we hereby certify that counsel for Defendants have conferred with counsel for Plaintiff and were unable to resolve the issues addressed herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via electronic mail delivery on October 25, 2024, to Kyle T. MacDonald, Esq., Derek Smith Law Group, PLLC, 701 Brickell Avenue, Suite 1310, Miami, FL 33131, at kyle@dereksmithlaw.com (Attorneys for Plaintiff) and Scott Yount, Esq. and Julie McHaffie, Esq., Garrison, Yount, Forte & Mulcahy, LLC, 601

Bayshore Blvd., Suite 800, Tampa, FL 33606 at syoung@garrisonyount.com; jmchaffie@garrisonyount.com (Attorneys for Superior Charter School Services, Inc.)

**KELLEY KRONENBERG**
*/s/ Julie B. Karron*
**JULIE B. KARRON, ESQ.**
Fla. Bar No.: 14683
10360 West State Road 84
Fort Lauderdale, FL 33324
Telephone: (954) 370-9970
Facsimile: (954) 382-1988
Attorney for Academir
jkarron@kelleykronenberg.com

and

*/s/ Julie C. Marhefka*
Scott P. Yount, FBN: 0021352
Julie C. Marhefka, FBN: 1025567
Garrison, Yount, Forte & Mulcahy, L.L.C.
601 Bayshore Blvd., Suite 800
Tampa, Florida 33606
Phone: 813-275-0404
Fax: 813-275-0304
Email: syount@garrisonyount.com
Email: jmarhefka@garrisonyount.com
*Counsel for Superior Charter School Services, Inc.*