UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JANE DOE, a minor, by and through her
mother and next friend, MOTHER DOE,

      Plaintiff,                                   CASE NO.: 1:23-cv-23004-JB

      v.

ACADEMIR CHARTER SCHOOLS, INC.,
and SUPERIOR CHARTER SCHOOL
SERVICES, INC.,

      Defendants.
_____/

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT AND FOR SANCTIONS**

Pursuant to FED. R. CIV. P. 72(b)(2), Plaintiff, JANE DOE ("Plaintiff" and/or "Jane"), by and through her undersigned counsel respectfully submits her objections to the Magistrate Judge's Report and Recommendation (the "Report") [D.E. 71], which recommends denial of Plaintiff's Motion for Default Judgment and for Sanctions. For the reasons set forth herein, Plaintiff requests that the Court reject the findings in the Report, dated October 17, 2024, and grant Plaintiff's Motion or, alternatively, impose appropriate sanctions commensurate with the severity of Defendants' misconduct. In support, Plaintiff states as follows:

**INTRODUCTION**

Plaintiff's objections arise from legal and factual errors in the Report that, if left uncorrected, would allow Defendants to avoid accountability for serious misconduct, including document fabrication, false testimony, and discovery violations. The recommendation to deny Plaintiff's Motion for Default Judgment and Sanctions stems from an incomplete evaluation of the record evidence and an insufficient application of the bad-faith standard for awarding sanctions

1

pursuant to the Court's inherent authority. These deficiencies were clearly erroneous or contrary to law, and if adopted by the Court, will result in undue prejudice to Plaintiff.

Specifically, Plaintiff's objections focus on (1) the Report's failure to address the uncontested forensic evidence of falsified metadata presented by Plaintiff's expert, Mr. Jim Stafford; (2) the improper reliance on Mr. Hasbun's lay testimony, despite his unequivocal corroboration of Mr. Stafford's findings regarding the discrepancies in the metadata; (3) the erroneous conclusion that Defendants properly supplemented or corrected their discovery responses, despite clear evidence to the contrary; (4) the misapplication of the legal standard for bad faith, which resulted in an improper evaluation of Defendants' discovery misconduct; and (5) the failure to fully consider Plaintiff's request for lesser sanctions under the Court's inherent authority.

For these reasons and those set forth below, Plaintiff respectfully requests that the Court correct these critical issues and grant the requested sanctions, or alternatively, impose lesser sanctions to remedy the significant harm caused.

## **LEGAL STANDARD**

A district court must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made and to matters of law. 28 U.S.C. § 636(b)(1)(C); *LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010). Once objections are received, the district court may "accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). Rule 72(a) requires, upon consideration of a timely objection, an order modifying or vacating a magistrate judge's order to the extent that the order "is clearly erroneous or is contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1326-27 (M.D. Fla. 2011).

## ARGUMENT

### I. Objection 1: The Report Fails to Address Material Evidence of Falsified Metadata

The Report's failure to address the most crucial forensic evidence in the case represents a significant oversight. Plaintiff's expert, Mr. Jim Stafford, conducted a detailed forensic analysis of the metadata associated with the Title IX policy documents produced by Defendants. D.E. 65-15. His findings demonstrated material inconsistencies between the properties of the Word documents produced by Defendants and the metadata that Defendants claimed to show the creation date of the documents.

Specifically, Mr. Stafford's analysis revealed substantial discrepancies in the line counts, word counts, character counts, and other characteristics, that were not only inconsistent with the documents produced by Defendants, but also had to have been the properties of a different document entirely. This objective set of data, which conclusively shows that the images of metadata produced by Defendants were falsified, was presented in Mr. Stafford's report and testimony at the evidentiary hearing:

**Comparison 1: TITLE IX POLICIES AND PROCEDURES.docx vs. Document Properties.docx**

| Attribute | TITLE IX POLICIES AND PROCEDURES.docx | Document Properties.docx | Discrepancy |
|---|---|---|---|
| Pages | 10 | 10 | None |
| Words | 2,995 | 3,150 | +186 |
| Characters | 17,707 | 17,957 | +250 |
| Paragraphs | 40 | 42 | +2 |
| Lines | 142 | 149 | +7 |
| File Size (kB) | 345 | 381 | +36 |

**Comparison 2: TITLE IX POLICIES AND PROCEDURES (1).docx vs. Document Properties.docx**

| Attribute | TITLE IX POLICIES AND PROCEDURES (1).docx | Document Properties.docx | Discrepancy |
|---|---|---|---|
| Pages | 13 | 10 | -3 |
| Words | 4,012 | 3,150 | -862 |
| Characters | 22,873 | 17,957 | -4,916 |
| Paragraphs | 53 | 42 | -11 |
| Lines | 190 | 149 | -41 |
| File Size (kB) | 352 | 381 | +29 |

In this regard, Mr. Stafford testified as follows:

> Q. And you also compared the properties in those images to the actual PDF and Word document files that you received. Is that correct?
>
> A. Yes, I did.
>
> Q. Did any of the files you received, whether PDF or a document, did any of them match those images?
>
> A. They did not.
>
> Q. What is the significance of that discrepancy?
>
> A. Well, you know, you had Word count. You had a character count. You had a paragraph count, you had pages, obviously, file size, that are all different. So, what that means is that the files that were presented are not the file that is represented in the screenshot.

*See* D.E. 65-15, p. 4; Exh. A at 52:24-53:12. Defendants failed to offer any explanation or testimony to disprove Mr. Stafford's analysis of the metadata in their Response or at the evidentiary hearing. Despite the clear significance of this forensic evidence, the Report makes no mention of it, and instead addresses only the separate and lesser issue of the creation date of the electronic files, stating Mr. Stafford testified that "none of the electronic files could support a creation date prior to May 9, 2024." *See* D.E. 71, p. 2. As previously outlined in Plaintiff's Reply, the issue of when the document was created is a distinct issue from the findings regarding the document characteristics, showing the document starkly differs in length, content, and file size. *See* D.E. 43, p. 12. The Report's failure to engage with this uncontroverted evidence in any manner constitutes clear error and cannot be overlooked.

While the Report correctly notes that Mr. Stafford did not testify "that the produced policy was a fabrication," Mr. Stafford could not, and should not reasonably be expected to, testify as to whether the Defendants fabricated the policy document—effectively the ultimate issue of fact in the evidentiary hearing. *See* D.E. 71, p. 2. Mr. Stafford had no personal knowledge or observations

regarding the manner in which the Defendants created the document nor the relevance of the document to the facts of the case. To testify otherwise would be improper, as "an expert witness may testify as to his opinion on an ultimate issue of fact, so long as the opinion is 'based on the personal observations of the witness.'" *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009) (quoting *Carter v. DecisionOne Corp. Through C.T. Corp. System*, 122 F.3d 997, 1005 (11th Cir. 1997)).

Mr. Stafford did, however, conclusively establish the document was falsified and that the images produced by the Defendants were not from the Title IX document they falsely represented it was derived from. *See* D.E. 65-15 at p. 5; Exh. A at 51:16-52:7, 53:17-54:22. The Report's failure to engage with this unchallenged forensic evidence, despite any evidence or reasonable explanation from the Defendants to rebut it, constitutes clear error. These issues warrant the rejection of the Report's findings.

## II.     Objection 2: The Report Improperly Relied on Mr. Hasbun's Lay Witness Testimony Despite His Corroboration of Mr. Stafford's Findings

The Report compounds the error by improperly relying on the testimony of Mr. Hasbun, a lay witness with no formal qualifications, to discount the conclusions of Plaintiff's forensic expert. Federal Rule of Evidence 701 requires that opinion testimony from a lay witness not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. CIV. P. 701. "[A] party may not evade the requirements for expert testimony, set forth in Rule 702, by proffering an expert witness as if he were a lay witness." *United States v. Blackburn*, 398 F. App'x 453, 466 (11th Cir. 2010) (quoting *United States v. Dulcio*, 441 F.3d 1269, 1275 (11th Cir. 2006)).

The Report erred in finding that "Defendants' competing forensic testimony gave at least a plausible explanation for the electronic properties of the Title IX policy document." *See* D.E. 71,

5

p. 7. While Mr. Hasbun may have experience in the field of information technology, he readily admitted that has no training in digital forensics:

> Q. And do you have any formal training in digital forensic[s]?
>
> A. Not in digital forensics, per se.
>
> Q. And you are not certified as a forensic examiner, are you?
>
> A. I am not.
>
> Q. Have you ever been qualified in a court of law to testify about metadata or any other computer forensic[s]?
>
> A. No, I have not.

Exh. A at 73:21-74-2. Nevertheless, the Report deems Mr. Hasbun's testimony as "forensic" and accepts it, although unqualified, as a basis for rendering the evidence presented on the electronic files as "inconclusive." *See* D.E. 71, p. 7.

Even if Mr. Hasbun's testimony is accepted as sufficient, despite his lack of qualifications, the Report nonetheless erred in overlooking Mr. Hasbun's failure to offer any opinion challenging the forensic evidence related to the document metadata. While Mr. Hasbun attempted to challenge the creation date of the documents in question, which is a separate and less relevant issue, he conceded Mr. Stafford's findings with respect to the discrepancies in the document characteristics—such as the line counts, word counts, and character counts—within the Title IX policies:

> Q. With that auto save feature that you just described, would that impact any of these characteristics such as character count, line count, paragraph count?
>
> A. They would not.
>
> Q. How do you know that? Is that based on your experience?
>
> A. So, I may not be a court-certified forensic computer examiner, but I am an electronic engineer. I am the type of person that we are called on to create

6

>     computers, so I have a lot of experience in how computers work at the byte
>     level.
>
> Q.  And in your experience working on computers up to the byte level, the auto
>     save features would not have affected any of those characteristics?
>
> A.  They would not.

Exh. A at 76:7-76-19. The Report ignores this critical admission and incorrectly concludes that Mr. Hasbun provided credible explanations for the discrepancies. *See* D.E. 71, p. 17. The Report's failure to recognize this significant deficiency in Mr. Hasbun's testimony and ultimate determination that the evidence presented was inconclusive was clearly erroneous or contrary to law. Given the objective nature of Mr. Stafford's analysis and the Defendants' failure to offer any meaningful explanation to contravene the findings, Plaintiff respectfully requests that the Court reject the Report's findings.

### III. Objection 3: The Report Made Erroneous Findings Regarding Defendants' Failure to Correct or Supplement their Discovery Responses and Withholding of Material Evidence

The Report incorrectly concluded that Defendants mitigated their discovery misconduct by properly supplementing their responses and producing documents, despite the record evidence demonstrating the opposite. As an initial matter, Defendants have never corrected or amended their false interrogatory responses [D.E. 65-3 and D.E. 65-5], which included blatant misrepresentations about the existence and content of their Title IX policies and procedures, past sexual harassment and Title IX complaints, and the handling of Title IX investigations. Nevertheless, the Report erroneously states that Defendants "made a mistake and subsequently supplemented their discovery to amend that mistake." *See* D.E. 71, p. 5. This finding is erroneous given the Defendants' failure to supplement their false statements.

In considering the Defendants' withholding of material documents, the Report concludes that Defendants' production of Title IX policy several days after the deposition of Ms. Bernal,

7

Defendants' Chief Operating Officer, was simply an oversight and that there was a lack of evidence to support any intentional withholding. D.E. 71, p. 5. While the Defendants did produce the Title IX policy document following Ms. Bernal's deposition, the Report fails to account for the continued withholding of documents and false sworn declarations by Defendants that occurred *after* the production of the Title IX policy.

On May 21, 2024, Defendants' corporate representatives signed declarations affirming that they had "conducted a diligent search" and "produced all documents responsive to Plaintiff's discovery requests, including all versions, drafts, and communications…" related to the Title IX policies. *See* D.E. 65-12; D.E. 65-13. Despite their sworn statements, Defendants continued to demonstrate their selective disclosure of material documents and information, including (1) on August 21, 2024—8 days before the close of discovery—producing new Title IX documents purported to have existed during the Plaintiff's enrollment, and (2) on September 17, 2024—after the expiration of the discovery deadline—producing 800 pages of new documents pertaining to student harassment, complaint reporting and investigation, and child abuse policies.

These documents were not produced as part of Defendants' continuing duty to supplement and were only produced as a result of Plaintiff's pursuit of her sanctions motion. The Report's attribution of the Defendants' misconduct as simple neglect fails to recognize that, absent Plaintiff's Motion, the Defendants would have likely never produced any of the documents received on August 21, 2024 and on September 17, 2024. As recognized by the Eleventh Circuit, any litigant in Plaintiff's position suffers undue prejudice when they must "vigorously attempt to pry . . . information from the deceitful party" and "winds up . . . consuming substantial resources to respond to and undo the victimizer's lies and distortions." *Forsberg v. Pefanis*, 634 F. App'x 676, 680 (11th Cir. 2015) (cleaned up). For these reasons, Plaintiff respectfully requests that the Court reject the Report's findings and issue sanctions pursuant to the Court's inherent authority.

**IV.     Objection 4: The Report Misapplied the Bad-Faith Standard in Evaluating Defendants' Misconduct**

The Report improperly concluded that Plaintiff failed to demonstrate the level of bad faith necessary to warrant sanctions pursuant to the Court's inherent authority. *See* D.E. 71, p. 7. Bad faith can be found where: (1) when fraud has been committed on the court; (2) when a party delays or disrupts the litigation, or hampers the enforcement of a court order; or (3) when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *See Mabinty Aluko v. Carnival Corp.*, No. 1:20-cv-21047, 2021 U.S. Dist. LEXIS 255714, at *21 (S.D. Fla. July 19, 2021). The Court's inherent authority to issue sanctions includes the "striking of frivolous pleadings or defenses, disciplining lawyers, punishing for contempt, assessment of attorneys' fees and costs, and outright dismissal of a lawsuit." *Id.* (citing *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1338 (S.D. Fla. 2007)).

In this case, the evidence overwhelmingly supports a finding of bad faith. Defendants engaged in multiple acts of misconduct, including fabricating metadata to backdate key documents, submitting false declarations, and producing critical documents after the close of discovery. If, for instance, Defendants had simply made a mistake and had not intentionally withheld evidence as the Report concludes, then they would have also produced the Fiscal Policies and Procedures document containing material information after Ms. Bernal's deposition. Instead, Defendants provided false sworn declarations affirming that they were not withholding evidence and yet withheld the Fiscal Policies and Procedures document for an additional three (3) months until August 21, 2024. *See* D.E. 65-12; D.E. 65-13. This issue of the non-production of this document was even raised in Plaintiff's Reply and was only ever finally addressed because of her Motion for Default Judgment and for Sanctions. *See* D.E. 43, p. 8. As the Eleventh Circuit described in addressing the misconduct of a litigant in withholding documents, "[t]his is not the

9

behavior of a party acting in good faith." *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1306 (11th Cir. 2020) (affirming district court's finding of bad faith that resulted in the issuance of an adverse inference instruction as a sanction).

Even absent consideration of the forensic evidence presented by Plaintiff, Defendants' repeated perjurious statements and concealment of information alone demonstrate a pattern of bad-faith conduct. Defendants failed to ever correct or supplement their false interrogatory responses, continued to withhold responsive documents even after their initial production of the Title IX policy, and made misrepresentations regarding their compliance with their discovery obligations in sworn declarations. These acts alone support a finding of bad faith as "perjury constitutes bad faith conduct that is vexatious to other litigants even if it has no practical effect." *See Elof Hansson Paper & Bd., Inc. v. Caldera*, No. 11-20495-CV, 2013 U.S. Dist. LEXIS 192131, at *47 (S.D. Fla. June 4, 2013) (citing *Bower v. Weisman*, 674 F. Supp. 109, 112 (S.D.N.Y. 1987)). These actions were not isolated incidents of negligence, and the Defendants' disregard for their obligations should not be overlooked in evaluating their conduct.

The Report incorrectly determined that these issues are matters of credibility that can be addressed during cross-examination at trial. *See* D.E. 71, p. 10. Defendants' misconduct, however, goes beyond credibility issues for the fact-finder, as it has impacted Plaintiff's ability to fairly present her case to a jury, including "obtaining information relevant to [her] claims, learning of the existence of other categories of discoverable information, and obtaining documents or information that could test the credibility of the witnesses." *Elof Hansson Paper & Bd., Inc. v. Caldera*, No. 11-20495-CV, 2013 U.S. Dist. LEXIS 192131, at *40-41 (S.D. Fla. June 4, 2013). The cumulative impact of Defendants' misconduct on the disposition of Plaintiff's claims—particularly in light of the unchallenged forensic evidence of document falsification—goes far beyond simple neglect and warrants reconsideration of the Report's bad-faith finding.

10

Accordingly, Plaintiff respectfully requests that the Court reject the Report's findings and issue sanctions against the Defendants.

## V. Objection 5: The Report Failed to Fully Consider Plaintiff's Request for Lesser Sanctions and Supporting Legal Authority

Even if it is determined that the sanction of default judgment was not warranted given the circumstances, the Report's refusal to consider appropriate lesser sanctions was erroneous or contrary to law. It is well-established that in exercising its inherent authority, Court may fashion a sanction that is "a direct response to the harm that the bad faith conduct" caused. *Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir. 1998). Plaintiff requested a range of lesser sanctions, including an adverse inference instruction, striking Defendants' summary judgment motions, and an award of attorneys' fees under the Court's inherent authority. These sanctions were directly tailored to the prejudice Plaintiff suffered as a result of Defendants' misconduct and should have been fully considered.

The Report improperly concluded that Plaintiff's request for lesser sanctions did not identify the basis for the sanctions and lacked any citations to legal authority. *See* D.E. 71, p. 11 ("the Court will not guess as to which basis Plaintiff meant to assert, nor will the Court make Plaintiff's argument for her…"). This conclusion can only be reached by looking solely to Plaintiff's supplemental filing and neglecting Plaintiff's Motion and Reply entirely, as Plaintiff did indeed identify the basis for the sanctions and provided legal authority to support her requests in her Motion and Reply. *See* D.E. 34; D.E. 43.

To the extent the Report indicates that Plaintiff's supplemental filing insufficiently addressed the justification for lesser sanctions, in briefing the issues, Plaintiff relied upon the instruction from the Court to "make a prejudice argument" and "supplement [her] request for alternative relief" in a supplemental brief, and she interpreted such instruction in good faith

11

accordingly. *See* Exh. A. at 133:5-6, 135:6-7. While Plaintiff may have misunderstood the Court's directive, the Report's conclusion that Plaintiff waived her arguments for lesser sanctions based solely on the material contained in the supplement warrants reconsideration of her requests.

### A. Adverse Inference Instruction

To address the fabrication of the Title IX policies and false testimony provided by Defendants, an adverse inference instruction is a necessary and appropriate remedy. Defendants' misconduct deprived Plaintiff of critical evidence, and without an adverse inference instruction, Plaintiff is severely disadvantaged in presenting her case.

The Report rejected Plaintiff's request for a jury instruction on the fabrication/falsification and, in reaching its decision, stated, "again, Plaintiff points the Court to no authority to support that relief." D.E. 71, p. 10. This finding fails to recognize Plaintiff's briefing and citations to authority contained in Plaintiff's Motion and Reply. *See* D.E. 34; D.E. 43. By means of example, in her Motion, Plaintiff specifically cited to *Bernal v. All Am. Inv. Realty, Inc.*, for the proposition of sanctions in the form of "instructing the jury on the party's spoliation and procurement of false evidence and its impact on the party's credibility." *See* D.E. 34, p. 18.; *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1301–1302 (S.D. Fla. 2007). An adverse inference instruction is not only warranted but necessary to level the playing field and remedy the harm caused by Defendants' actions. Accordingly, Plaintiff respectfully requests that her alternative relief in the form of a jury instruction be reconsidered by the Court.

### B. Denial of Defendants' Summary Judgment Motions

The Report also rejected Plaintiff's request for the denial of Defendants' summary judgment motions, despite the fact that those motions are premised on evidence that has been materially compromised by Defendants' misconduct. D.E. 71, pp. 8–9. While the Report finds that Plaintiff can raise these issues in responding to the motions, this effectively results in Defendants

benefiting from their misconduct and requires Plaintiff to continue expending her resources to fairly litigate her claims. As outlined in Plaintiff's supplemental filing, the withholding of documents and information are directly connected to Defendants' basis for requesting summary judgment. *See* D.E., pp. 3–5.

Defendants' bad faith and obstruction of the discovery process have already prejudiced Plaintiff's ability to adequately present her case to a jury. The sanction of the denial of Defendants' motions is a form of relief that is proportionate and uniquely tailored to the misconduct at issue. If the Court determines default judgment is not warranted, the denying consideration of Defendants' motions, at a minimum, allows the case to be resolved by a jury on the merits but does not permit Defendants to seek the disposition of Plaintiff's claims predicated on the falsified evidence and other discovery abuses. Accordingly, Plaintiff respectfully requests that the Court reject the Report's recommendations and deny the Defendants' summary judgment motions as a sanction for their use of falsified evidence and false testimony.

### C. Attorney's Fees Based on the Court's Inherent Authority

In addition to other lesser sanctions, Plaintiff specifically requested an award of attorney's fees and costs incurred in addressing the Defendants' misconduct pursuant to the Court's inherent authority. *See* D.E. 34, p. 18. The Report rejected this form of relief, determining that "Plaintiff does not, however, spend any effort briefing her entitlement to attorneys' fees or costs, and provides no authority substantiating her request." D.E. 71, p. 11.

However, this conclusion fails to recognize Plaintiff's arguments and legal authority contained in her Motion, which explicitly references the Court's inherent authority to impose sanctions, including an award of attorney's fees. *See* D.E. 34, p. 9. As recognized by the Supreme Court, "an assessment of attorney's fees is undoubtedly within a court's inherent power" to sanction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

13

Plaintiff respectfully submits that the Court's inherent authority to sanction parties for bad faith misconduct provides a sufficient legal basis for awarding attorneys' fees in this case. The Report's rejection of the request on this basis should be reconsidered given that Plaintiff would not have received any supplemental document production or material information pertinent to her claims absent her Motion.

The purpose of such an award is not merely punitive but also compensatory, ensuring that Plaintiff, as an innocent party to the misconduct, is not forced to bear the costs of litigation caused by the opposing party's actions. This form of sanctions directly advances the purposes behind a Court's inherent authority to regulate the conduct of litigants by maintaining the integrity of the judicial process, preventing abuse, and discouraging future misconduct. *See Glob. Life Techs. Corp. v. Medline Indus., Inc.*, CV-20-21240, 2024 U.S. Dist. LEXIS 132283, at *19 (S.D. Fla. July 26, 2024) (rejecting report and recommendation and awarding attorney's fees as a sanction for a party's misrepresentations).

By denying Plaintiff's request for attorneys' fees and costs, the Report effectively permits Defendants to benefit from their wrongdoing without any financial consequence. Plaintiff has incurred significant costs as a direct result of Defendants' misconduct. Absent the Defendants' non-compliance, Plaintiff would not have had to spend considerable time and resources uncovering and addressing Defendants' fraud. Given the clear causal link between Defendants' misconduct and Plaintiff's legal fees, an award of attorneys' fees is necessary to restore fairness to these proceedings. Accordingly, Plaintiff respectfully requests that the Court reconsider the Report's findings and award attorneys' fees in accordance with the Court's inherent authority.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court reject the Report and Recommendation, grant Plaintiff's Motion for Default Judgment and Sanctions, or,

14

alternatively, impose appropriate lesser sanctions, including an adverse inference instruction, striking Defendants' summary judgment motions, and awarding attorneys' fees pursuant to the Court's inherent authority.

| | |
|---|---|
| Dated:  Miami, Florida<br>          October 31, 2024, | **DEREK SMITH LAW GROUP, PLLC**<br>*Counsel for Plaintiff*<br><br>*/s/ Kyle T. MacDonald*<br>Kyle T. MacDonald, Esq.<br>Florida Bar No.: 1038749<br>Derek Smith Law Group, PLLC<br>520 Brickell Key Drive, Suite O-301<br>Miami, FL 33131<br>Tel: (305) 946-1884<br>Fax: (305) 503-6741<br>Kyle@dereksmithlaw.com |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on October 31, 2024, on all counsel of record identified on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Kyle T. MacDonald*
Kyle T. MacDonald, Esq.

## SERVICE LIST

**KELLY KRONENBERG**

Julie B. Karron, Esq.
Florida Bar No.: 1025196
KELLY KRONENBERG
10360 West State Road 84
Fort Lauderdale, Florida 33324
Phone: 954-370-9970
Fax: 954-382-1988
Email: jkarron@kellykronenberg.com

*Counsel for Defendant Academir Charter Schools, Inc.*

**GARRISON, YOUNT, FORTE & MULCAHY, LLC**

Scott P. Yount, Esq.
Florida Bar No.: 0021352
GARRISON, YOUNT, FORTE & MULCAHY, LLC
601 Bayshore Blvd., Suite 800
Tampa, Florida 33606
Phone: 813-275-0404
Fax: 813-275-0304

*Counsel for Defendant Superior Charter School Services, Inc.*