UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:23-cv-23004-JB

JANE DOE, a minor, by and through
her mother and next friend,
MOTHER DOE,

       Plaintiffs,

v.

ACADEMIR CHARTER
SCHOOLS, INC. AND SUPERIOR
CHARTER SCHOOL SERVICES,
INC.

       Defendants.
_____/

## PROPOSED JOINT PRETRIAL STIPULATION

Defendant, Academir Charter Schools, Inc. (hereinafter "Academir"), by and through undersigned counsel, and pursuant to this Court's Trial Order [D.E. 29] dated April 3, 2024 and Rule 16.1(e) of the Local Rules of the Southern District of Florida, respectfully submits this Joint Pretrial Stipulation, after having met on October 17, 2024 with counsel of Jane Doe (hereinafter "Plaintiff") and counsel for Superior Charter School Services, Inc. (hereinafter "Superior"), to discuss the preparation and contents of the Stipulation, hence, the parties through their respective counsel, state as follows:

### CONCISE JOINT STATEMENT OF THE NATURE OF THE ACTION

This case arises out of the alleged sexual assault of Jane Doe, a five-year old minor child, on January 20, 2023, at Academir Charter School West Primary Learning Center, a charter school operated and managed by the Defendants. Plaintiff alleges that a sexual assault was committed by

L.R., a fellow 5-year-old kindergarten student in the same class as Plaintiff. Defendants deny that the alleged assault was physical in nature Plaintiff has alleged that she was kissed on the mouth and had her breasts, genitals, and buttocks licked by L.R., without her consent and against her will, and that she reported the alleged assault to her physical education teacher, and was subsequently asked questions about the assault by her kindergarten teacher, former VPK teacher, and school counselor. Defendants contend that Plaintiff's reported allegations to her physical education teacher, her kindergarten teacher, her former VPK teacher and the school counselor were all reports of strictly verbal conduct and that Plaintiff denied any physical touching.

Plaintiff has asserted claims against Defendants under Title IX of the Education Amendments of 1972, a federal law that prohibits discrimination on the basis of sex, and under Florida law for negligence. Defendants deny Plaintiff's claims in their entirety.

Plaintiff has asserted a claim for deliberate indifference to sexual harassment under Title IX against Defendants on the basis that Defendants' response to her alleged sexual assault was clearly unreasonable in light of the known circumstances. Defendants deny Plaintiff's claims in their entirety and contend that they conducted a reasonable investigation, which included interviewing the children and school personnel and reviewing surveillance footage.

Plaintiff has asserted a claim for retaliation under Title IX on the basis that Defendants took an adverse action against her after reporting her alleged sexual assault. Defendants deny Plaintiff's claims in their entirety and contend that no adverse action was taken.

Plaintiff has asserted a claim for negligence under Florida law against Defendants on the basis that they failed to exercise reasonable care to prevent, investigate, remediate, and/or report Plaintiff's alleged sexual assault and that, as a result, the Defendants breached a legal duty owed

to her. Defendants deny Plaintiff's claims in their entirety and assert that Plaintiff is unable to demonstrate causation or damages.

Plaintiff has asserted a claim for negligent failure to train under Florida law against Defendants on the basis that they failed to adequately train their employees and agents to properly prevent or respond to sexual harassment, abuse, and/or bullying and that, as a result, the Defendants breached a legal duty owed to her. Defendants deny Plaintiff's claims in their entirety and contend that Plaintiff cannot establish evidence of such negligence and that the Plaintiff's claim fails for lack of an underlying common law tort recognized under Florida law.

Plaintiff has asserted a claim for negligent supervision under Florida law against Defendants on the basis that Defendants failed to adequately supervise students, including Plaintiff, in their care and that, as a result, the Defendants breached a legal duty owed to the Plaintiff. Defendants deny Plaintiff's claims in their entirety and contend that Plaintiff cannot demonstrate that Defendants inadequately trained any employee, and that Plaintiff's claim fails for lack of an underlying common law tort recognized under Florida law.

## THE BASIS OF FEDERAL JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367 as Plaintiff's Complaint is based on an alleged violation of Title IX of the Education Amendments of 1972. (hereinafter "Title IX") 28 U.S.C. § 1681.

Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action were committed in Miami-Dade County, Florida which is within the jurisdiction of the United States District Court for the Southern District of Florida.

## THE PLEADINGS RAISING THE ISSUES

a. Plaintiff's Complaint [D.E. 1]

    b. Defendant Academir's Answer and Affirmative Defenses [D.E. 8]

    c. Defendant Superior's Answer and Affirmative Defenses [D.E. 17]

## LIST OF ALL PENDING MOTIONS

a. Superior's Motion for Leave to Amend Answer and Affirmative Defenses [D.E. 51]

b. Academir's Motion for Summary Judgment [D.E. 57]

c. Superior's Motion for Summary Judgment [D.E. 64]

## CONCISE STATEMENT OF AGREED OR STIPULATED FACTS

a. This case arises out of an alleged sexual assault of Jane Doe, a five-year old minor child, on January 20, 2023, at Academir Charter School West in Miami, Florida.

b. Plaintiff's sexual assault was alleged to have been committed by L.R., a fellow 5-year-old kindergarten student in the same class as Plaintiff.

c. Plaintiff alleges that L.R. kissed her on the mouth and licked her breasts, genitals, and buttocks without the Plaintiff's consent and against her will.

d. According to Plaintiff's mother (hereinafter "Mother Doe"), when Mother Doe took the Plaintiff home from school, the Plaintiff allegedly reported the incident to her.

e. Academir's principal at the time of the alleged incident was Susie Bello (hereinafter "Ms. Bello").

f. Academir's principal at the time of the alleged incident was Melissa Valladares (hereinafter "Ms. Valladares").

g. Academir's secretary at the time of the alleged incident was Zoley Castellon (hereinafter "Ms. Castellon"), who was also Plaintiff's pre-kindergarten teacher the school year prior.

h. Plaintiff's kindergarten teacher at the time of the alleged incident was Hira Chaudry (hereinafter "Ms. Chaudry").

i. Plaintiff's physical education teacher at the time of the alleged incident was Rosemarie Mortazavi (hereinafter "Ms. Mortazavi").

j. After the Alleged Incident Mother Doe and Father Doe had a meeting with Ms. Valladares and Ms. Chaudry to discuss the alleged incident.

k. Mother Doe and Father Doe requested to see the video footage of the class on the date the alleged incident occurred and demanded that the children be separated.

l. Defendants denied Mother Doe and Father Doe's request to see the video footage and denied the request to separate the children into different classrooms.

m. Ms. Valladares and Ms. Chaudry stated they would review the video footage within the next day and would speak with Mother Doe and Father Doe afterwards.

n. On January 24, 2023, Academir's student counselor Ms. Stephanie Ruiz (hereinafter "Ms. Ruiz") allegedly questioned the Plaintiff about the details of the alleged incident. Defendants are not in possession of any notes taken by Ms. Ruiz regarding her interview of Plaintiff but contend that Ms. Ruiz completed a Student Case Management Student Services Form dated January 24, 2023.

o. On or around January 25, 2023, Ms. Bello advised Father Doe that she had reviewed the relevant security footage and that the footage showed nothing remarkable and the children's interaction was merely verbal.

p. On January 25, 2023, Father Doe met with Ms. Valladares.

q. On January 25, 2023, Father Doe contacted law enforcement and reported that he wanted L.R. removed, and wanted to see the surveillance footage from the classroom. While Father Doe advised the police of a physical touching of Jane, the police did not include any mention of an assault in the police report. .

r. Defendants did not contact law enforcement in response to Plaintiff's allegations, but did meet with the responding officers on January 25, 2023 following Father Doe's report.

s. Father Doe requested that law enforcement remove L.R. from the classroom, but they informed him that they lacked the authority to remove him and could not force Defendants to remove him.

t. On January 27, 2023, Mother Doe contacted Mr. Rolando Mir ("Mr. Mir"), the founder of Academir Charter Schools, Inc. and the founder and Chief Executive Officer of Superior Charter School Services, Inc., regarding Plaintiff's sexual assault allegations and requested to meet with Mr. Mir.

u. Mr. Mir agreed to meet with Plaintiff's parents on January 30, 2023, at 3:00 PM.

v. On January 30, 2023, Mother Doe went to the School campus for the meeting. Plaintiff contends that Mr. Mir did not appear the School campus for the meeting and Defendant contends that the meeting was supposed to take place at Mr. Mir's office.

w. Mother Doe contacted Mr. Mir via text message that afternoon, but did not receive a response from Mr. Mir until 7:34 PM, who stated that he had been in meetings all day and did not have his phone with him.

x. On January 31, 2023, Mother Doe and Father Doe contacted the Florida Department of Children and Families to report the Alleged Incident.

y. Defendants did not contact the Florida Department of Children and Families in response to Plaintiff's allegations.

z. On January 31, 2023, Mother Doe and Father Doe withdrew Plaintiff's enrollment at Academir and transferred her to another school.

aa. On January 31, 2023, Plaintiff was officially withdrawn from her enrollment with Academir.

## CONCISE STATEMENT OF DISPUTED FACTS

a. Whether Plaintiff's interaction with L.R. was strictly verbal or involved physical touching between the children.

b. Whether sexual conduct between Plaintiff and L.R., occurred on more than one occasion.

c. Whether Plaintiff's interaction with L.R. was reported by Plaintiff to Defendants as being strictly verbal or involving physical touching between the children.

d. Whether Plaintiff was subjected to harassment or discrimination while enrolled with Academir.

e. Whether Defendants had any actual knowledge or had reason to believe Plaintiff was subjected to harassment.

f. Whether Defendants exercised reasonable care to prevent Jane from the alleged sexual assault.

g. Whether Defendants' response (or lack thereof) to the reported harassment was clearly unreasonable in light of the known circumstances.

h. Whether as a result of deliberate indifference by Defendants, Plaintiff was subjected to harassment or caused to undergo harassment or made her vulnerable to it.

i. Whether the harassment and the Defendants' response interfered with Plaintiff's access to education opportunities or benefits.

j. Whether Defendants conducted an investigation in response to Plaintiff's alleged sexual assault.

k. Whether Defendants had policies or procedures in place regarding the handling of reported discrimination or sexual harassment, which were in place at the time of the alleged sexual assault.

l. Whether Defendants' investigation of Plaintiff's claims, and handling of Plaintiff's claims deviated from Defendants' policies and procedures.

m. Whether Defendants adequately implemented any policies or procedures in place regarding the handling of reported discrimination or sexual harassment, which were in place at the time of the alleged sexual assault.

n. Whether Defendants adequately trained its employees or agents regarding the handling of reported discrimination or sexual harassment.

o. Whether Defendants had policies or procedures in place regarding Title IX or the handling of Title IX complaints.

p. Whether Defendants' handling of Plaintiff's claims deviated from Defendants' policies and procedures.

q. To the extent they existed, when any of Defendants' Title IX policies and procedures were first implemented, the individuals responsible for creating them, the dates of any revisions made to them, and the individuals responsible for any such revisions.

r. Whether as a result of the reporting of the Alleged Incident, Plaintiff suffered an adverse action.

s. Whether Defendants took any adverse action against Plaintiff because of her or her parents' complaint of harassment of discrimination.

t. Whether Defendants breached their duty of care by failing to take reasonable steps to prevent or address the discrimination or harassment.

u. Whether Defendants' failure to act was the proximate cause of the alleged harm suffered by Plaintiff.

v. Whether Defendants failed to provide adequate training to employees to ensure they could properly address harassment and discrimination.

w. Whether the failure to adequately train staff directly contributed to the harm suffered by Plaintiff.

x. Whether Defendants' alleged lack of training caused foreseeable harm and damages to Plaintiff.

y. Whether Defendants failed to provide adequate supervision that could have prevented the alleged harm suffered by Plaintiff.

z. Whether the alleged harm experienced by Plaintiff was foreseeable and directly resulted from Defendants' failure to adequately supervise.

aa. Whether Plaintiff suffered physical, emotional, or educational harm as a result of the allegedly negligent conduct.

bb. Whether Plaintiff was denied any educational opportunity or benefit.

cc. Whether retaliatory conduct by Defendants occurred, and if so, whether there was a clear nexus between the retaliatory conduct and the Plaintiff's report of the Alleged Incident.

dd. Whether Plaintiff sustained any damages as a result of any acts or omissions of Defendants.

**CONCISE STATEMENT OF AGREED UPON APPLICABLE PRINCIPLES OF LAW**

I. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367.

II. Venue is proper in this Court.

III. Plaintiff was a "person" within the meaning of 20 U.S.C. § 1681(a).

IV. Academir was a recipient of federal financial assistance during the 2022-2023 school year for the purposes of Title IX.

V. An "appropriate person" means an official who has authority to address the alleged discrimination and to institute corrective measures on behalf of an entity for the purposes of Title IX.

## CONCISE STATEMENT OF DISPUTED ISSUES OF LAW

a. Whether Defendants had any actual notice or reason to believe that Plaintiff would be subjected to the Alleged Incident.

b. Whether L.R.'s conduct was foreseeable.

c. Whether Superior Charter School Services, Inc. is subject to Title IX obligations and whether they were recipients of federal funding.

d. Whether Defendants' conduct in responding to Plaintiffs' allegations constitutes deliberate indifference under Title IX.

e. Whether the knowledge possessed by the relevant school officials constitutes actual notice under Title IX.

f. Whether the alleged harassment experienced by Plaintiff was severe, pervasive, and objectively offensive under Title IX.

g. Whether Defendants had actual knowledge of L.R.'s behavior that constituted sexual harassment that so severe, pervasive and objectively offensive.

h. Whether the Alleged Incident was sufficiently severe, pervasive and objectively offensive to rise to the level of deliberate indifference or retaliation under Title IX.

i. Whether retaliatory conduct by Defendants occurred, and if so, whether there was a clear nexus between the retaliatory conduct and the Plaintiff's report of the Alleged Incident.

j.  Whether Defendants' failing to follow a Title IV policy constituted deliberate indifference.

k.  Whether Plaintiff was denied any educational opportunity or benefit as a result of the Alleged Incident.

l.  Whether Defendants could have taken any sort of steps to prevent the Alleged Incident.

m.  Whether there was deliberate indifference on the part of Defendants to known acts of student-on-student harassment.

n.  Whether there were any prior issues with Defendants' personnel that would rise to the level of negligent hiring or training.

o.  Whether Defendants' investigation conduct constituted deliberate indifferent to known acts of harassment by deciding not to remedy the alleged violation.

p.  Whether any actions taken by Defendants in response to Plaintiff's complaints constitute an adverse action.

q.  Whether the alleged facts are sufficient to establish a causal link between Plaintiff's protected activity and any adverse actions taken by Defendants.

r.  Whether the Alleged Incident rose to the level of severity, pervasiveness and objectivity necessary to demonstrate a systemic effect on Plaintiff's equal access to education.

s.  Whether Defendants owed Plaintiff a duty of care to ensure a safe and non-discriminatory learning environment.

t.  Whether Defendants had a duty to adequately train their employees on policies, procedures, and practices necessary to prevent and address harassment and discrimination.

u.  Whether Defendants had a duty to reasonably supervise students, including Plaintiff, to prevent foreseeable harm.

v.  Whether Defendants are jointly and severally liable for any damages suffered by Plaintiff.

w. Whether the effect on Plaintiff's ability to receive an education was real and demonstrable.

x. Whether Plaintiff suffered damages as a result of the actions or omissions of Defendants.

## LIST OF TRIAL EXHIBITS

The Parties' Joint Exhibit List is attached hereto as Exhibit "A".

## LIST OF TRIAL WITNESSES

The Parties' Joint Witness List is attached hereto as Exhibit "B".

## ANTICIPATED LENGTH OF TRIAL

The Parties anticipate 5-7 days of trial.

## ATTORNEYS FEES

Plaintiff respectfully submits an estimate for attorney's fees that may be properly allowable to the prevailing party in the case under Title IX and Florida law. Given the extensive nature of the litigation and substantial preparation for trial, Plaintiff estimates that the attorney's fees, if Plaintiff prevails, could reach a maximum of $975,000. This estimate is intended to reflect the complexity, duration, and resources expended in litigating Plaintiff's claims.

## CERTIFICATE OF SERVICE

We HEREBY CERTIFY that a copy of the foregoing was served via electronic mail delivery on November 1, 2024, all counsel of record

**DEREK SMITH LAW GROUP**
*/s/ Kyle T. MacDonald*
**KYLE T. MACDONALD, ESQ.**
Fla. Bar No.: 1038749
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Telephone: (305) 946-1884
Fax: (305) 503-6741
Kyle@dereksmithlaw.com


**KELLEY KRONENBERG**
*/s/ Julie B. Karron*
**JULIE B. KARRON, ESQ.**
Fla. Bar No.: 14683
10360 West State Road 84
Fort Lauderdale, FL  33324
Telephone: (954) 370-9970
Facsimile: (954) 382-1988
Attorney for Defendant, Academir
jkarron@kelleykronenberg.com


**GARRISON, YOUNT, FORTE & MULCAHY, LLC**
*/s/ Scott P. Yount, Esq.*
**SCOTT P. YOUNT, ESQ.**
Fla. Bar No.:  0021352
601 Bayshore Blvd., Suite 800
Tampa, FL  33606
Telephone: (813) 275-0404
Facsimile: (813) 275-0304
Attorney for Defendant, Superior
syount@garrisonyount.com